1   **CALLAHAN & BLAINE, APLC**
2     A Professional Law Corporation
    DANIEL J. CALLAHAN, Cal. Bar No. 91490
3   EDWARD SUSOLIK, Cal. Bar No. 151081
    BRETT E. BITZER, Cal. Bar No. 264736
4   3 Hutton Centre Drive, Ninth Floor
    Santa Ana, California 92707
5   Telephone:   (714) 241-4444
    Facsimile:   (714) 241-4445
6   Email:       bbitzer@callahan-law.com

7   **MEYER LAW GROUP LLP**
      A Limited Liability Partnership
8   BRENT D. MEYER, Cal. Bar No. 266152
    268 Bush Street #3639
9   San Francisco, California 94104
    Telephone:   (415) 765-1588
10  Facsimile:   (415) 762-5277
    Email:       brent@meyerllp.com

11  Attorneys for Plaintiff JULIE CARMEN TORRES,
12  Individually, and All Others Similarly Situated

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15

16  JULIE CARMEN TORRES, individually,      Case No.:
    and on behalf of all other similarly situated,
17                                          **CLASS ACTION COMPLAINT FOR:**
               Plaintiffs,
18                                          1.  VIOLATION OF CALIFORNIA BUSINESS
         v.                                     AND PROFESSIONS CODE §§ 17200 *ET*
19                                              *SEQ.* (UNFAIR BUSINESS PRACTICES)
    PHH MORTGAGE CORPORATION, a
20  New Jersey corporation; OCWEN LOAN      2.  BREACH OF CONTRACT
    SERVICING, LLC, a Delaware limited
21  liability; ROBERTSON,                   **DEMAND FOR JURY TRIAL**
    ANSCHUTZ, & SCHNEID, P.L., a Florida
22  professional limited liability company;
    ROBERTSON, ANSCHUTZ, SCHNEID &
23  CRANE LLC, a Florida limited liability
    company; RAS CRANE, LLC, a Florida
24  limited liability company; RAS BORISKIN,
    LLC, a Florida limited liability company;
25  and RAS CITRON, LLC, a New Jersey
    limited liability company,
26
27             Defendants.
28

- 1 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

**COMES NOW**, Representative Plaintiff Julie Carmen Torres, individually, and on behalf of other persons similarly situated and allege as follows:

**PRELIMINARY STATAEMENT**

1.      This is a class action pursuant to Federal Rule of Civil Procedure 23 seeking damages for breach of contract and interest thereon, disgorgement and restitution, penalties, injunctive and other equitable relief, and reasonable attorney's fees and cost pursuant to California Business & Professions Code §§ 6125, 6126, 6127.5, 6160, 17200 *et seq*., California Corporations Code §§ 13401, 13401.3, 17701.04, California Code of Civil Procedure § 1021.5, California Civil Code § 1717, California Rules of Professional Conduct 1.5.1, 5.4, and 7.1, and Federal Rule of Bankruptcy Procedure 3002.1.   The Representative Plaintiff brings this action on behalf of herself and all other persons similarly situated (hereinafter referred to as the "Class Members" or "Plaintiff Class") who filed a petition for relief under Title 11 of the United States Code in any District of California for the United States Bankruptcy Court and had: (a) a loan secured by property of the estate owned and/or serviced by the PHH Defendants; and/or (b) attorney's fees added to their loan balance for legal services performed by the Law Firm Defendants, at any time after April 17, 2016.

2.      The "Class Period" is designated as the time from April 17, 2016 through the date of trial and is based upon the allegation that Defendants' unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code §§ 1720-17208, as more fully described herein, have been ongoing and continuous during that time.

3.      During the Class Period, Defendants had a consistent policy of, among other things: (1) filing and prosecuting non-meritorious *Objections to Confirmation* to plans of reorganization in cases commenced under Title 11, Chapter 13 of the United States Code to "churn fees" and then add those attorney's fee to Class Members' loan balance; (2) failing to file notices required by Federal Rule of Bankruptcy Procedure 3002.1(c) in cases commenced under Title 11, Chapter 13 of the United States Code for post-petition fees, expenses, and charges and then adding those amounts to Class Members' loan balance; (3) failing to obtain a *Certificate of Registration* from the State Bar California pursuant to the California Professional Corporation

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

1   Act to practice law as a law corporation in the State of California and engaging in the

2   unauthorized practice of law; (4) authorizing and allowing attorneys not licensed to practice law

3   in California to file pleadings in each District of California for the United States Bankruptcy

4   Court; (5) filing false and misleading pleadings in each District of California for the United

5   States Bankruptcy Court regarding the corporate structure and employment of attorneys; (6)

6   sharing fees generated from the practice of law in California with non-attorneys and entities

7   owned and/or controlled by non-attorneys; and (7) sharing fees generated from the practice of

8   law in California with other law firms with the informed written consent of their clients.

9                                                    **PLAINTIFFS**

10          4.       Representative Plaintiff Julie Carmen Torres ("Plaintiff" or "Torres") is a natural

11   person domiciled in Richmond, California, and during the Class Period, was the obligor on a

12   promissory note secured by a deed of trust on residential real property in California that was

13   owned and/or serviced by the PHH Defendants (defined below).

14          5.       During the Class Period, Plaintiff was a person within the Class of persons further

15   described and defined herein.

16          6.       As used throughout this Complaint, the term "Class Members" and/or the

17   "Plaintiff Class" refers to the named Plaintiff as well as each and every person eligible for

18   membership in the class or persons further described and defined herein.  At all times herein

19   relevant, Plaintiff is/was a person within the class of persons further described and defined

20   herein.

21          7.       Plaintiff brings this action on behalf of herself and as a class action pursuant to

22   Federal Rule of Civil Procedure 23 on behalf of all persons similarly situated and proximately

23   damaged by the unlawful conduct of Defendants described herein.

24                                                    **DEFENDANTS**

25          8.       At all times herein relevant, Defendant PHH Mortgage Corporation ("PHH") was

26   a New Jersey corporation formed under the laws of the State of New Jersey.  Plaintiff is

27   informed, believes, and based thereon alleges that defendant PHH has its principal place of

28   business located at 1 Mortgage Way, Mount Laurel, New Jersey 08054.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

9.      At all times herein relevant, Defendant Ocwen Loan Servicing, LLC, a wholly-owned subsidiary of Ocwen Financial Corporation (collectively, "OCWEN") was a Delaware limited liability company formed under the laws of the State of Delaware.  Plaintiff is informed, believes, and based thereon alleges that defendant OCWEN has its principal place of business located at 1661 Worthington Avenue, Suite 100, West Palm Beach, Florida 33409.

10.      Plaintiff is informed, believes, and based thereon alleges that on or about June 6, 2019, OCWEN transferred to PHH all of its rights, title, and interest in promissory notes secured by real property, including but not limited to, the servicing rights for those accounts, in addition to the servicing rights for accounts that OCWEN did not have any interest in the promissory note secured by real property, and that OCWEN has merged its business operations with PHH. Defendants OCWEN and PHH shall hereinafter be referred to collectively as the "PHH Defendants" in this Complaint.

11.      At all times herein relevant, Defendant Robertson, Anschutz, & Schneid, P.L. ("RAS Law") was a Florida professional limited liability company formed under the laws of the State of Florida, and its principal place of business was located at 6409 Congress Avenue, Suite 100, Boca Raton, Florida 33487.

12.      At all times herein relevant, Defendant Robertson, Anschutz, Schneid & Crane LLC ("RASC Law") was a Florida limited liability company formed under the laws of the State of Florida, and its principal place of business was located at 6409 Congress Avenue, Suite 100, Boca Raton, Florida 33487.

13.      At all times herein relevant, Defendant RAS Crane, LLC ("RAS Crane") was a Florida limited liability company formed under the laws of the state of Florida, and its principal place of business located at 10700 Abbott's Bridge Road, Suite 170, Duluth, Georgia 30097.

14.      At all times herein relevant, Defendant RAS Boriskin, LLC ("RAS Boriskin") was a Florida limited liability company formed under the laws of the state of Florida, and its principal place of business was located at 900 Merchants Concourse LL-13, Westbury, New York 11590.

15.      At all times herein relevant, Defendant RAS Citron, LLC ("RAS Citron")

1  was a New Jersey limited liability company formed under the laws of the state of New Jersey,

2  and its principal place of business was located at 130 Clinton Road, Suite 202, Fairfield,

3  New Jersey, 07004.

4         Defendants RAS Law, RASC Law, RAS Crane, RAS Boriskin, and RAS Citron shall

5  hereinafter be referred to collectively as the "Law Firm Defendants" in this Complaint.

6         16.    At all times herein relevant, all Defendants, and each of them, were the agents,

7  servants, and/or employees of each and every other defendant.  Defendants carried out a joint

8  scheme, business plan, or policy in all respects pertinent hereto and all acts and omissions herein

9  complained of were performed within the course and scope of said employment, service, agency,

10 common scheme, plan, and/or policy.  Unless otherwise stated, each allegation as to one

11 Defendant is an allegation as to all Defendants.

12        17.    Defendants, and each of them, was the principal, agent (actual or ostensible),

13 co-conspirator, or employee of each other and in acting as such principal or within the course

14 and scope of such employment, agency, or conspiracy, took some part in the acts and omissions

15 hereinafter set forth by reason of which each Defendant is liable to Plaintiffs for the relief prayed

16 herein.

17                          **JURISDICTION AND VENUE**

18        18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)

19 because Plaintiff Torres is a citizen of a different state from each of the Defendants and the

20 amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

21        19.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b)

22 because each of Defendants' unlawful business practices alleged herein arose in and/or are

23 related to cases commenced under Title 11 of the United States Code.

24        20.    This Court has personal jurisdiction over all causes of action asserted herein

25 pursuant to the Due Process Clause of the United States Constitution because Defendants, and

26 each of them, have sufficient minimum contacts so as to render jurisdiction in California within

27 the traditional notions of fair play and substantial justice.

28        21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because this is

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

the District in which a substantial part of the events or omissions giving rise to the claims and causes of actions asserted herein occurred.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on behalf of herself and as a class action on behalf of the following Fee Churning Class:

> *All persons who filed a case under Title 11, Chapter 13 of the United States Code in the State of California in which the PHH Defendants filed an Objection to Confirmation asserting that the pre-petition arrearage amount set forth in the Chapter 13 Plan impermissibly attempted to modify the secured claim in violation of 11 U.S.C. §§ 1322(b)(2) or 1322(b)(5) at any time on or after April 17, 2016.*

23.    Plaintiff brings this action on behalf of herself and as a class action on behalf of the following Unauthorized Fee Class:

> *All persons who filed a case under Title 11, Chapter 13 of the United States Code in the State of California with a loan secured by a deed of trust on property of the estate serviced by the PHH Defendants in which the PHH Defendants failed to file timely the notice required by Federal Rule of Bankruptcy Procedure 3002.1(c) but added fees, expenses, and charges to the loan balance at any time on or after April 17, 2016.*

24.    Plaintiff brings this action on behalf of herself and as a class action on behalf of the following Unauthorized Practice of Law Class:

> *All persons that filed a case under Title 11 of the United States Code in the State of California in which the Law Firm Defendants received attorney's fees for representation of the PHH Defendants with a security interest in property of the estate at any time on or after April 17, 2016.*

25.    Defendants and their officers and directors are excluded from the Plaintiff Class.

26.    This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

> a.    <u>Numerosity</u>.  A class action is the only available method for the fair and efficient adjudication of this controversy.  The members of the Plaintiff Class are so numerous that joinder of all members is impractical, if not impossible, insofar as Plaintiff is informed, believes, and on that basis

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  alleges, that the total number of Class Members is, at least, in the hundred,
2  if not thousands of individuals.  Membership in the Class will be
3  determined by and upon analysis of the invoices remitted by the Law Firm
   Defendants, statements for loans serviced by the PHH Defendants,
4  pleadings filed in the United States Bankruptcy Court, and other records
   maintained by Defendants.

5      b.   <u>Commonality</u>.  Plaintiff and Class Members hare a community of interest
6           in that there are numerous common questions and issues of fact and law,
            which predominate over any questions and issues solely affecting
7           individual members, including but not limited to:

8      i.   Whether Defendants violated and/or continue to violate California
9           Business & Professions Code §§ 17200 *et seq*. by prosecuting non-
            meritorious objections to confirmation in cases filed under Title
10          11, Chapter 13 of the United States Code;

11     ii.  Whether Defendants violated and/or continue to violate California
12          Business & Professions Code §§ 17200 *et seq*., 11 U.S.C. § 101 *et
            seq*., and Federal Rules of Bankruptcy Procedure by adding fees,
13          expenses, and charges to the loan balance without timely filing and
14          serving the notice required by Federal Rule of Bankruptcy
            Procedure 3002.1(c) in cases filed under Title 11, Chapter 13 of
15          the United States Code;

16     iii. Whether the Law Firm Defendants violated and/or continue to
            violate California Business & Professions Code §§ 17200 *et seq*.
17          by practicing law as a foreign limited liability company in each
18          District of the United States Bankruptcy Court in the State of
            California in violation of applicable California law, including
19          California Corporations Code § 17701.04(e);

20     iv.  Whether the Law Firm Defendants violated and/or continue to
21          violate California Business & Professions Code §§ 17200 *et seq*.
            by authorizing attorneys not licensed law to practice law in
22          California to file pleadings in cases commenced under Title 11 of
            the United States Code in each District of the United States
23          Bankruptcy Court in the State of California in violation
24          applicable California law, including California Business &
            Professions Code § 6125;

25     v.   Whether the Law Firm Defendants violated and/or continue to
26          violate California Business & Professions Code §§ 17200 *et seq*.
            by sharing fees earned from legal services rendered in California
27          with non-attorneys in violation of applicable California law,
28          including California Rule of Professional Conduct 5.4;

- 7 -

1

2

3

4

      vi.     Whether the Law Firm Defendants violated and/or continue to violate California Business & Professions Code §§ 17200 *et seq.* by sharing fees earned from legal services rendered in California with other law firms in violation of applicable California law, including California Rule of Professional Conduct 1.5.1;

5

6

7

8

      vii.    Whether Defendants violated and/or continue to violate California Business & Professions Code §§ 17200 *et seq.* by make false and misleading statements in pleadings regarding their corporate structure and the affiliation of non-employee California attorneys in violation of applicable California law, including California Rule of Professional Conduct 7.1; and

9

10

11

12

      viii.   Whether PHH Defendants breached and/or continue to breach loan documents by seeking recovery of attorney's fee paid to the Law Firm Defendants for legal services rendered in California when the Law Firm Defendants are not duly licensed or authorized to practice law in the State of California.

13

14

15

16

   c.    <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Plaintiff Class.  Plaintiff and all members of the Plaintiff Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of California law and the United States Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*).

17

18

19

20

21

22

23

   d.    <u>Superiority of Class Action</u>.  Since the damages suffered by individual class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for class members to seek redress individually for the wrongful conduct alleged herein.  Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.  The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

24

25

26

27

28

   e.    <u>Adequacy of Representation</u>.  Plaintiff is an adequate representative of the Plaintiff Class, in that Plaintiff's claims are typical of those of the Plaintiff Class and Plaintiff has the same interest in the litigation of this case as Class Members.  Plaintiff is committed to vigorous prosecution of this case, and has retained competent counsel, experienced in litigation of this nature.  Plaintiff is not subject to any individual defenses unique from those conceivably applicable to the class as a whole.  Plaintiff anticipates no management difficulties in this litigation.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 8 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

**CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ*.**

27.     California Unfair Competition Law ("UCL") prohibits "unfair competition," which is defined by California Business and Professions Code § 17200 as including "any unlawful, unfair or fraudulent business act or practice."

28.     As the California Supreme Court has noted, the UCL's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike Inc., 27 Cal.4th 939, 949 (2002).  The UCL is broadly worded, leading the California Supreme Court to observe that the UCL "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." Barquis v. Merchants Collection Association, 7 Cal.3d 94, 112 (1972) (citations and internal quotation marks omitted). The UCL contains no express intent, knowledge, or negligence requirement, and therefore has been construed as "impos[ing] strict liability." Searle v. Wyndham Int'l, Inc., 102 Cal.App.4th 1327, 1333 (2002).

29.     "Because [California] Business and Professions Code Section 17200 is written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are unlawful, or unfair, or fraudulent." Podolsky v. First Healthcare Corp., 50 Cal.App.4th 632, 647 (1996).

30.     The unlawful prong of Section 17200 proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." People v. McKale, 25 Cal.3d 626, 632 (1979); see also Podolsky v. First Healthcare Corp., 50 Cal.App.4th at 647 ("Virtually any state, federal or local law can serve as the predicate for an action under Business and Professions Code section 17200."); Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-839 (1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.").

31.     The unfair prong of Section 17200 "provides an independent basis for relief"; in other words, "[i]t is not necessary for a business practice to be 'unlawful' in order to be subject to an action under the unfair competition law." Smith v. State Farm Mutual Auto. Ins. Co., 93

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Cal.App.4th 700, 718 (2001).  "In general the 'unfairness' prong 'has been used to enjoin

2  deceptive or sharp practices.'"  <u>South Bay Chevrolet v. Gen. Motors Acceptance Corp</u>., 72

3  Cal.App.4th 861, 887 (1999) (citations omitted).

4      32.    The courts of the State of California have adopted several tests for determining

5  whether a business act or practice is unfair: a business practice is unfair "when that practice

6  'offends an established public policy or when the practice is immoral, unethical, oppressive,

7  unscrupulous or substantially injurious.'"  <u>State Farm Fire & Casualty Co. v. Superior Court</u>, 45

8  Cal.App.4th 1093, 1102 (1996) (<i>quoting</i> <u>People v. Casa Blanca Convalescent Homes, Inc</u>., 159

9  Cal.App.3d 509, 530 (1984)).

10     33.    Another "test of whether a business practice is unfair involves an examination of

11  [that practice's] impact on its alleged victim, balanced against the reasons, justifications and

12  motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's

13  conduct against the gravity of the harm to the alleged victim."  <u>State Farm Fire & Casualty Co. v.</u>

14  <u>Superior Court</u>, 45 Cal.App.4th at 1103-04.

15     34.    It also is an unfair business practice when the defendant's conduct "threatens an

16  incipient violation of [a law], or violates the policy or spirit of [a law] because its effects are

17  comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

18  competition."  <u>Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co</u>., 20 Cal.4th 163, 187

19  (1999); <u>see also</u> <u>Scripps Clinic v. Superior Court</u>, 108 Cal.App.4th 917, 940 (2003).

20     35.    More recently, one Court of Appeal has fashioned a test for determining whether

21  a practice is unfair based upon Section 5 of the Federal Trade Commission Act (United States

22  Code, Title 15, Section 41 <i>et seq</i>.).  Under this test, "[a]n act or practice is unfair if [a] the

23  consumer injury is substantial, [b] is not outweighed by any countervailing benefits to consumers

24  or to competition, and [c] is not an injury the consumers themselves could reasonably have

25  avoided."  <u>Daugherty v. Am. Honda Motor Co., Inc</u>., 144 Cal.App.4th 824 (2006) (bracketed

26  letters added).

27     36.    The fraudulent prong of section 17200 "affords protection against the probability

28  or likelihood as well as the actuality of deception or confusion."  <u>Payne v. United Cal. Bank</u>, 23

- 10 -

1    Cal.App.3d 850, 856 (1972).  "The test is whether the public is likely to be deceived."  South

2    Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal.App.4th at 888.

3                            **FIRST CAUSE OF ACTION**
                          **UNFAIR BUSINESS PRACTICES**
4                **(California Business & Professions Code §§ 17200-17208)**

5                              (Against All Defendants)

6

7        37.    Plaintiff realleges and incorporates herein by this reference each of the allegations

8    set forth in Paragraphs 1 through 36 above as if the same were fully set forth at this point.

9        38.    There are standard-form plans of reorganization required for use in cases filed

10   under Title 11, Chapter of the United States Code in each of the Districts in California for the

11   United States Bankruptcy Court, and in each of these standard-form plans, there are specific

12   provisions that provide that the *Proof of Claim* and not the amount alleged in the plan control the

13   amount and classification of the pre-petition arrearage claims.

14       In the Northern District of California, Section 3.02 of the Standard-Form Chapter 13 Plan

15   provides as follows:

16           "*The proof of claim, not this plan or the schedules, shall determine the
             amount and classification of a claim unless the court's disposition of a
17           claim objection, valuation motion, adversary proceeding, confirmed plan,
             or lien avoidance motion affects the amount or classification of the claim,
18           consistent with section 1.03.*"

19

20   See **Exhibit A**, § 3.02.

21       In the Eastern District of California, Section 3.02 of the Standard-Form Chapter 13 Plan

22   provides as follows:

23           "*The proof of claim, not this plan or the schedules, shall determine the
             amount and classification of a claim unless the court's disposition of a
24           claim objection, valuation motion, or lien avoidance motion affects the
             amount or classification of the claim.*"
25

26   See **Exhibit B**, § 3.02.

27   ///

28   ///

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 11 -

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1     In the Central District of California, Class 2 of the Standard-Form Chapter 13 Plan

2  provides as follows:

3         "*The arrearage amount stated on a proof of claim controls over any*
          *contrary amount listed below.*
4

5  See **Exhibit C**, Class 2.

6     In the Southern District of California, Section 3.01 of the Standard-Form Chapter 13 Plan

7  provides as follows:

8         "*Unless otherwise ordered by the court, the amounts listed on a proof of*
          *claim or amended proof of claim filed before the filing deadline under*
9         *Bankruptcy Rule 3002(c) control over any contrary amounts listed below.*"
10

11  See **Exhibit D**, § 3.01.

12     39.     Notwithstanding that the standard-form plans of reorganization in each of the

13  Districts in California for the United States Bankruptcy Court specifically provide that the

14  amount of the pre-petition arrearage claim set forth in the *Proof of Claim* (Official Form 410)

15  controls over any amount alleged by the debtor in the plan, Defendants have engaged in a pattern

16  and practice of filing non-meritorious and frivolous *Objections to Confirmation* asserting that the

17  plans cannot be confirmed solely because the plan does not provide for exact amount of the its

18  pre-petition arrearage claim in violation of 11 U.S.C. §§ 1322(b)(2), (b)(5), and 1325(a)(1).

19     40.     For example, **Exhibit E** reflects a recent *Objection to Confirmation* filed by

20  Defendants in a case commenced by Plaintiff under Title 11, Chapter 13 of the United States

21  Code in the United States Bankruptcy Court for the Northern District of California consistent

22  with the pattern and practice identified in Paragraph 39 of this Complaint. Since this *Objection to*

23  *Confirmation* was non-meritorious, Plaintiff's counsel sent the following email to counsel for the

24  PHH Defendants requesting that the *Objection to Confirmation* be withdrawn immediately:

25     *Sean,*

26
       *On October 21, 2019, you filed an Objection to Confirmation [Dkt. No.*
27     *17] on behalf of U.S. Bank, N.A. in the above-referenced matter.  In the*
       *Objection, you assert that Debtor's Chapter 13 Plan does not comply with section*
28     *1322(b)(5) of the Bankruptcy Code because the Class 1 arrearage claim for U.S.*

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

*Bank, N.A. (PHH Mortgage) is listed at $14,048.46 in the Chapter 13 Plan, whereas the amount of the arrearage claim should be $16,726.96, although U.S. Bank, N.A. has yet to file a proof of claim confirming this amount.*

*Unfortunately, however, this Objection to Confirmation is without merit as Section 3.02 of the standard-form Chapter 13 Plan specifically provides that "[t]he proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim." As such, since the proof of claim and not Debtor's Chapter 13 Plan controls the amount and classification of the pre-petition arrearage claim in Class 1, Debtor does not have any obligation to amend the terms of her Chapter 13 Plan.*

*Further, in an effort to avoid unnecessary motion practice and hearings, and although not required to do so, on October 23, 2019, Debtor filed a First Amended Chapter 13 Plan [Dkt. No. 19] which specifically provided for the exact amount of the pre-petition arrearage claim of U.S. Bank, N.A. ($16,726.96) as asserted in the Objection to Confirmation.*

*As such, it is kindly requested that U.S. Bank, N.A. promptly withdraw the Objection to Confirmation [Dkt. No. 17], so that Debtor's First Amended Chapter 13 Plan [Dkt. No. 19] can proceed to confirmation without any further delay or expense.*

*Thank you in advance for your prompt attention to this matter.*

*Regards,*
*Brent*

**Exhibit F** (the "November 11th Email").

41.     Within thirty-one (31) minutes after receiving the November 11th Email, and without any opposition or resistance, PHH filed a *Notice of Withdrawal* of its *Objection to Confirmation*.  (See **Exhibit G**).  However, despite the tacit admission that its *Objection to Confirmation* was non-meritorious, on January 28, 2020, Defendants nevertheless filed a *Notice of Postpetition Mortgage Fees, Expenses, and Charges* (Official Form 410S2) seeking recovery of $500 from Plaintiff for filing the *Objection to Confirmation*.  (See **Exhibit H**).

42.     On February 17, 2020, Plaintiff filed a *Motion to Determine Allowance of Fees, Expenses, and Charges Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(e)* (the "FRBP 3002.1(e) Motion").  (See **Exhibit I**).  Defendants did not file any opposition to the relief requested in the FRBP 3002.1(e) Motion.  At the hearing, the Honorable Roger L. Efremsky of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   the United States Bankruptcy Court granted the FRBP 3002.1(e) Motion in its entirety,

2   disallowed all fees ($500) requested by Defendants for filing the non-meritorious *Objection to*

3   *Confirmation*, and awarded Plaintiff her reasonable attorney's fees and costs for prosecuting the

4   FRBP 3002.1(e) Motion pursuant to California Civil Code § 1717(a) (the "FRBP 3002.1(e)

5   Order"). (See **Exhibit J**). As of the date of this Complaint, the FRBP 3002.1(e) Order is a final

6   order, Defendants did not file a timely notice of appeal of the FRBP 3002.1(e) Order, and

7   Defendants have not remitted payment to Plaintiff for those attorney's fees and costs as required

8   by Paragraphs 5-6 of the FRBP 3002.1(e) Order.

9        43.    Plaintiff is informed, believes, and based thereon alleges that the PHH

10  Defendants compensate the Law Firm Defendants for professional services rendered in cases

11  commenced under Title 11, Chapter 13 of the United States Code consistent with the maximum

12  allowable "*Bankruptcy Attorney Fees*" established by Freddie Mae and Fannie Mae, which

13  provides for piecemeal attorney's fees for various actions, including filing an *Objection to*

14  *Confirmation*. (See **Exhibit K**). As a result, this compensation structure incentivizes the Law

15  Firm Defendants to undertake non-meritorious and frivolous actions, such as filing *Objections to*

16  *Confirmation* (similar to **Exhibit E**) in order to generate and churn attorney's fees, because other

17  than a *de minimis* fee ($150), the Law Firm Defendants are not compensated for actual time that

18  an attorney spends rendering a sound legal opinion that the PHH Defendants should not file and

19  prosecute an *Objection to Confirmation* in a particular matter.

20       44.    There is a pattern and practice of the Law Firm Defendants invoicing the PHH

21  Defendants for attorney's fees related to filing non-meritorious *Objections to Confirmation*

22  (**Exhibit H**, p. 5), the PHH Defendants paying these invoices in full, and the Law Firm

23  Defendants assisting the PHH Defendants in seeking to recover these attorney's fees from

24  borrowers, including Plaintiff, as recoverable under the applicable loan documents (**Exhibit H**).

25  Under this scheme, the Law Firm Defendants use a standard-form boiler plate *Objection to*

26  *Confirmation*, that is non-meritorious, in order to generate additional attorney's fees of at least

27  Five Hundred Dollars ($500) per case, and the PHH Defendants authorize and/or ratify this

28  unlawful conduct because the PHH Defendants ultimately add these attorney's fees to the loan

- 14 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

balance for unsuspecting Class Members.

45.     Plaintiff further brings this cause of action seeking equitable and statutory relief to stop Defendants' misconduct, as complained of herein, and to seek restitution of the amount Defendants acquired through the unfair, unlawful, and fraudulent business practices as described in detail herein.

46.     Defendants' knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-17208.  Specifically, the PHH Defendants authorized and allowed the Law Firm Defendants to prosecute frivolous and non-meritorious objections to confirmation to plans of reorganization in cases commenced under Title 11, Chapter 13 of the United States Code for the sole purpose to generate and churn attorney's fees, and then add those fees to the loan balance as purportedly authorized by the applicable loan documents.

47.     Defendants have clearly established a policy of accepting a certain amount of collateral damage, as represented by the damage to Plaintiff and Class Members herein alleged, as incidental to their business operation, rather than accept the alternative cost of fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as set forth in legislation and the judicial record.

**SECOND CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
**(California Business & Professions Code §§ 17200-17208)**

(Against Defendants Ocwen Loan Servicing, LLC and PHH Mortgage Corporation)

48.     Plaintiff realleges and incorporates herein by this reference each of the allegations set forth in Paragraphs 1 through 47 above as if the same were fully set forth at this point.

49.     Federal Rule of Bankruptcy Procedure 3002.1(c) provides, in pertinent part:

> Notice of Fees, Expenses, and Charges.  The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees,

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

expenses, or charges are incurred.

50.   Federal Rule of Bankruptcy Procedure 3002.1(i) provides, in pertinent part:

Failure to Notify.  If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:

(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

51.   Plaintiff is informed, believes, and based thereon alleges that the PHH Defendants (or their attorneys) have a pattern and practice of failing to file timely the notices required by Federal Rule of Bankruptcy Procedure 3002.1(c), but nevertheless, add post-petition fees, charges, and expenses to the loan balance as purportedly authorized by applicable loan documents for Class Members that filed a voluntary petition for relief under Title 11, Chapter 13 of the United States Code.

52.   Plaintiff further brings this cause of action seeking equitable and statutory relief to stop the PHH Defendants' misconduct, as complained of herein, and to seek restitution of the amount that the PHH Defendants acquired through the unfair, unlawful, and fraudulent business practices as described in detail herein.

53.   The PHH Defendants' knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-17208.  Specifically, the PHH Defendants attempt to recover and collect fees, charges, and expenses that are not authorized under the United States Bankruptcy Code and/or the Federal Rules of Bankruptcy Procedure based on non-compliance with Federal Rule of Bankruptcy Procedure 3002.1(c), and then add those fees to the loan balance of Class Members as purportedly authorized by applicable loan documents.

54.   Defendants have clearly established a policy of accepting a certain amount of collateral damage, as represented by the damage to Plaintiff and Class Members herein alleged,

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    as incidental to their business operation, rather than accept the alternative cost of fair, lawful,

2    and honest business practices, ordinarily borne by its responsible competitors and as set forth in

3    legislation and the judicial record.

4                                     **THIRD CAUSE OF ACTION**
5                                    **UNFAIR BUSINESS PRACTICES**
                       **(California Business & Professions Code §§ 17200-17208)**
6
7                                       (Against All Defendants)

8         55.    Plaintiff realleges and incorporates herein by this reference each of the allegations

9    set forth in Paragraphs 1 through 54 above as if the same were fully set forth at this point.

10        56.    California Corporations Code § 17701.04(e) provides, in pertinent part:

11             Nothing in this title shall be construed to permit a domestic or foreign
12             limited liability company to render professional services, as defined in
               subdivision (a) of Section 13401 and in Section 13401.3, in this state.
13

14        57.    California Corporations Code § 13401(a) provides, in pertinent part:

15             "Professional services" means any type of professional services that may be
               lawfully rendered only pursuant to a license, certification, or registration
16             authorized by the Business and Professions Code, the Chiropractic Act, or
               the Osteopathic Act.
17

18        58.    California Corporations Code § 13401.3 provides, in pertinent part:

19             As used in this part, "professional services" also means any type of
20             professional services that may be lawfully rendered only pursuant to a
               license, certification, or registration authorized by the Yacht and Ship
21             Brokers Act …

22        59.    California Business & Professions Code § 6125 provides, in pertinent part:

23             No person shall practice law in California unless the person is an active
24             licensee of the State Bar.

25        60.    California Business & Professions Code § 6127.5 provides, in pertinent part:

26             Nothing in Sections 6125, 6126 and 6127 shall be deemed to apply to the
27             acts and practices of a law corporation duly certificated pursuant to the
               Professional Corporation Act, as contained in Part 4 (commencing with
28             Section 13400) of Division 3 of Title 1 of the Corporations Code, and

                                          - 17 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

2

3

4

5

pursuant to Article 10 (commencing with Section 6160) of Chapter 4 of Division 3 of this code, when the law corporation is in compliance with the requirements of (a) the Professional Corporation Act; (b) Article 10 (commencing with Section 6160) of Chapter 4 of Division 3 of this code; and (c) all other statutes and all rules and regulations now or hereafter enacted or adopted pertaining to such corporation and the conduct of its affairs.

6

61.     California Business & Profession Code § 6160 provides, in pertinent part:

7

8

9

10

A law corporation is a corporation which is registered with the State Bar of California and has a currently effective certificate of registration from the State Bar pursuant to the Professional Corporation Act, as contained in Part 4 (commencing with Section 13400) of Division 3 of Title 1 of the Corporations Code , and this article.

11

62.     Plaintiff is informed, believes, and based thereon alleges that at all times herein

12

relevant, the Law Firm Defendants did not have any managing partner, equity partner, non-

13

equity partner, or other member of the limited liability company physically located in California

14

supervising the legal work performed by associate attorneys.  Further, at all times relevant

15

herein, the Law Firm Defendants did not employ a managing partner, equity partner, non-equity

16

partner, or other member of the limited liability company licensed to practice law in the State of

17

California.

18

63.     Plaintiff is informed, believes, and based thereon alleges that each of the law Firm

19

Defendants have each derived income from the unauthorized practice of law in the State of

20

California during the period of April 2016 to present (at a minimum), that none of the Law Firm

21

Defendants have filed any required income tax returns with the applicable taxing authorities for

22

the State of California for tax years 2016, 2017, 2018, or 2019, and that each of the Law Firm

23

Defendants have not remitted any applicable income taxes due and owing to the State of

24

California, including but not limited to, the Franchise Tax Board, for the period of April 2016 to

25

present (at a minimum), for all income earned and derived from the unauthorized practice of law

26

within the State of California.

27

64.     Plaintiff is informed, believes, and based thereon alleges that Defendant RAS

28

Law is a Florida professional limited liability company (P.L.) formed under the law of the State

CASE NO.

CLASS ACTION COMPLAINT

1    of Florida.

2        65.    Plaintiff is informed, believes, and based thereon alleges that at all times herein

3    relevant, Defendant RAS Law has not duly registered with the California Secretary of State to

4    transact business in the State of California.

5        66.    Plaintiff is informed, believes, and based thereon alleges that at all times herein

6    relevant, Defendant RAS Law was not a law corporation duly registered with the State Bar of

7    California to practice law in the State of California.

8        67.    Plaintiff is informed, believes, and based thereon alleges that at all times herein

9    relevant, Defendant RAS Law has not obtained a *Certificate of Registration* from the State Bar

10   California pursuant to the California Professional Corporation Act to practice law as a law

11   corporation in the State of California.

12       68.    Defendant RAS Law systematically and continuously practices law in the State of

13   California, and in particular, in each District in California of the United States Bankruptcy Court

14   on behalf of clients such as the PHH Defendants in violation of California law, including but not

15   limited to, California Corporations Code § 17701.04(e) and California Business & Professions

16   Code §§ 6125, 6127.5.

17       69.    For example, below is the caption of a pleading (**Exhibit L**) filed by Defendant

18   RAS Law identifying itself a professional limited liability company practicing law in California

19   in the United States Bankruptcy Court, Northern District of California:

---

1    Sean C. Ferry (SBN 310347)
     sferry@rasflaw.com
2    **ROBERTSON, ANSCHUTZ & SCHNEID, PL**
     7676 Hazard Center Drive, Suite 500
3    San Diego, CA 92108
     Telephone: (561) 241-6901 ext. 2036
4

5    Attorney for Champion Mortgage Company(Nationstar Mortgage LLC, DBA)

6              **UNITED STATES BANKRUPTCY COURT**

7        **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

8

9    **IN RE:**                          **CASE NO.: 19-41900**
                                          **CHAPTER 13**
10   **Hattie Pearl Lewis,**             **D.C. No. RAS - 1**

---

CASE NO.

CLASS ACTION COMPLAINT

A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM
CALLAHAN & BLAINE

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

70.     Plaintiff is informed, believes, and based thereon alleges that Defendant RASC Law is a Florida limited liability company (LLC) formed under the law of the State of Florida.

71.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RASC Law has not duly registered with the California Secretary of State to transact business in the State of California.

72.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RASC Law was not a law corporation duly registered with the State Bar of California to practice law in the State of California.

73.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RASC Law has not obtained a *Certificate of Registration* from the State Bar California pursuant to the California Professional Corporation Act to practice law as a law corporation in the State of California.

74.     Defendant RASC Law systematically and continuously practices law in the State of California, and in particular, in each District in California of the United States Bankruptcy Court on behalf of clients such as the PHH Defendants in violation of California law, including but not limited to, California Corporations Code § 17701.04(e) and California Business & Professions Code §§ 6125, 6127.5.

75.     For example, below is the caption of a pleading (**Exhibit M**) filed by Defendant RASC Law identifying itself a limited liability company practicing law in California in the United States Bankruptcy Court, Central District of California:

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Sean C. Ferry (CA SBN 310347)<br>Robertson, Anschutz, Schneid & Crane LLC<br>7676 Hazard Center Drive, Suite 500<br>San Diego, CA 92108<br>Telephone: (561) 241-6901 ext. 2036<br>Email: sferry@rasflaw.com | FILED & ENTERED<br><br>FEB 18 2020<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY may       DEPUTY CLERK |
| ☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION** | |

- 20 -

76.     Plaintiff is informed, believes, and based thereon alleges that Defendant RAS Crane is a Florida limited liability company (LLC) formed under the law of the State of Florida.

77.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Crane has not duly registered with the California Secretary of State to transact business in the State of California.

78.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Crane was not a law corporation duly registered with the State Bar of California to practice law in the State of California.

79.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Crane has not obtained a *Certificate of Registration* from the State Bar California pursuant to the California Professional Corporation Act to practice law as a law corporation in the State of California.

80.     Defendant RAS Crane systematically and continuously practices law in the State of California, and in particular, in each District in California of the United States Bankruptcy Court on behalf of clients such as the PHH Defendants in violation of California law, including but not limited to, California Corporations Code § 17701.04(e) and California Business & Professions Code §§ 6125, 6127.5.

81.     For example, below is the signature block of a pleading (**Exhibit N**) filed by Defendant RAS Crane identifying itself a limited liability company practicing law in California in the United States Bankruptcy Court, Central District of California:

required to be given and all papers required to be served in this case to creditors, any creditors committees, and any other parties-in-interest, be sent to and served upon the undersigned counsel and the following be added to the Court's Master Mailing List:

**RAS CRANE, LLC**
**10700 ABBOTT'S BRIDGE ROAD, SUITE 170,**
**DULUTH, GA 30097**

RAS Crane, LLC
Attorney for Secured Creditor
10700 Abbott's Bridge Road, Suite 170,
Duluth, GA 30097
Telephone: 470-321-7112

By: /s/Theron S. Covey
    Theron S. Covey, Esquire
    Email: tcovey@rasflaw.com

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

82.     Plaintiff is informed, believes, and based thereon alleges that Defendant RAS Boriskin is a Florida limited liability company (LLC) formed under the law of the State of Florida.

83.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Boriskin has not duly registered with the California Secretary of State to transact business in the State of California.

84.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Boriskin was not a law corporation duly registered with the State Bar of California to practice law in the State of California.

85.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Boriskin has not obtained a *Certificate of Registration* from the State Bar California pursuant to the California Professional Corporation Act to practice law as a law corporation in the State of California.

86.     Plaintiff is informed, believes, and based thereon alleges that members, officers, directors, partners, attorneys, and/or employees of Defendant RAS Boriskin systematically and continuously practice law in the State of California, and in particular, in each District in California of the United States Bankruptcy Court on behalf of clients such as the PHH Defendants in violation of California law, including but not limited to, California Corporations Code § 17701.04(e) and California Business & Professions Code §§ 6125, 6127.5.

87.     Plaintiff is informed, believes, and based thereon alleges that Defendant RAS Citron is a New Jersey limited liability company (LLC) formed under the law of the State of New Jersey.

88.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Citron has not duly registered with the California Secretary of State to transact business in the State of California.

89.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Citron was not a law corporation duly registered with the State Bar of California to practice law in the State of California.

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

90.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, Defendant RAS Citron has not obtained a *Certificate of Registration* from the State Bar California pursuant to the California Professional Corporation Act to practice law as a law corporation in the State of California.

91.     Plaintiff is informed, believes, and based thereon alleges that members, officers, directors, partners, attorneys, and/or employees of Defendant RAS Citron systematically and continuously practice law in the State of California, and in particular, in each District in California of the United States Bankruptcy Court on behalf of clients such as the PHH Defendants in violation of California law, including but not limited to, California Corporations Code § 17701.04(e) and California Business & Professions Code §§ 6125, 6127.5.

92.     As California Courts have consistently recognized, an unregistered corporation is not authorized to practice law within the State of California and cannot recover attorney's fees for legal services provided to clients.  See Cappiello, Hofmann & Katz v. Boyle, 105 Cal.Rptr.2d 147, 151-52 (2001) (*citing* Birbrower, Montalbano, Condon & Frank v. Superior Court, 17 Cal.4th 119, 127 (1998) ("[l]ike an unlicensed attorney, an unregistered corporation is barred from recovering compensation for any legal services it provides").

93.     Plaintiff is informed, believes, and based thereon alleges that the PHH Defendants knew or should have known that the Law Firm Defendants were not law corporations duly authorized to practice law in the State of California, but due to a pre-existing contractual relationship between the PHH Defendants and the Law Firm Defendants for legal services performed in states other than California, the PHH Defendants authorized and/or ratified the unlawful acts and conduct of the Law Firm Defendants because the PHH Defendants derived significant economic and non-economic benefits from the pre-existing contractual relationship and managing and interfacing with only a single law firm (the Law Firm Defendants).

94.     Plaintiff further brings this cause of action seeking equitable and statutory relief to stop Defendants' misconduct, as complained of herein, and to seek restitution of the amount Defendants acquired through the unfair, unlawful, and fraudulent business practices as described in detail herein.

CASE NO.

CLASS ACTION COMPLAINT

95.     Defendants' knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-17208.  Specifically, the PHH Defendants authorized and allowed the Law Firm Defendants to engage in the unauthorized practice of law in California, and then add those fees to the loan balance of Class Members as purportedly authorized by applicable loan documents in violation of California law.

96.     Defendants have clearly established a policy of accepting a certain amount of collateral damage, as represented by the damage to Plaintiff and Class Members herein alleged, as incidental to their business operation, rather than accept the alternative cost of fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as set forth in legislation and the judicial record.

### FOURTH CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICES
### (California Business & Professions Code §§ 17200-17208)

(Against Defendant Robertson, Anschutz, & Schneid, P.L.)

97.     Plaintiff realleges and incorporates herein by this reference each of the allegations set forth in Paragraphs 1 through 96 above as if the same were fully set forth at this point.

98.     California Business & Professions Code § 6125 provides, in pertinent part:

> No person shall practice law in California unless the person is an active licensee of the State Bar.

99.     In an effort to reduce payroll expenses and maximize profits, Defendant RAS Law implemented a scheme in which it opened a satellite office in California, hired several junior associates licensed to practice law in the State of California who effectively serve as "appearance" counsel for Defendant RAS Law's California operation, and then heavily rely on attorneys not licensed to practice law in California and other para-professionals located at the headquarters for Defendant RAS Law in Boca Raton, Florida to prepare and draft all relevant pleadings on behalf of the PHH Defendants filed in courts located within the State of California.

100.    In furtherance of the scheme set forth herein, Defendant RAS Law would utilize

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

attorneys not licensed to practice law in the State of California to make initial appearances in cases filed under Title 11 of the United States Code in California, file and withdraw pleadings in cases filed under Title 11 of the United States Code in California, file and withdraw notices required by Federal Rule of Bankruptcy Procedure 3002.1 in cases filed under Title 11 of the United States Code in California, and otherwise practice law in cases filed under Title 11 of the United States Code in California.

101.    For example, below is the signature block of a pleading (**Exhibit O**) filed by attorney Erin Elam, an associate attorney of Defendant RAS Law, withdrawing a pleading previously filed on behalf of a secured creditor (U.S. Bank, N.A.) in a case filed under Title 11, Chapter 13 of the United States Code in California in the United States Bankruptcy Court, Southern District of California:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

IN RE:                                                              **CASE NO.: 14-06974-CL13**
**Homer Martinez Palomino,**                                     **CHAPTER 13**
**Debtor.**

**Elena Vizcarra Palomino,**
**Joint Debtor.**

_____/

**NOTICE OF WITHDRAWAL**

**PLEASE TAKE NOTICE THAT,** on behalf of U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST ("Secured Creditor"), the undersigned hereby withdraws the following document:

**DE 50, Notice of Postpetition Mortgage Fees, Expenses, and Charges filed 8/15/2019.**

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/ Erin Elam
     Erin Elam, Esquire
     Email: eelam@rascrane.com

102.    In a further attempt to mislead the Court and other parties in interest, conspicuously absent from the caption of the *Notice of Withdrawal* (**Exhibit O**) was any identification of the law firm or attorneys that purportedly represented the secured creditor (U.S. Bank, N.A.) in violation of the Bankruptcy Local Rules for the Southern District of California.

CASE NO.

CLASS ACTION COMPLAINT

103.    Plaintiff is informed, believes, and based thereon alleges that attorney Erin Elam is not licensed to practice law in the State of California.

104.    The act of Erin Elam electronically filing the *Notice of Withdrawal* (**Exhibit O**) on behalf of secured creditor U.S. Bank, N.A. in the United States Bankruptcy Court, Southern District of California, San Diego Division constituted the unauthorized practice of law in the State of California in violation of California law, including but not limited to, California Business & Professions Code §§ 6125 and 6126.

105.    For example, below is the signature block of a pleading (**Exhibit P**) filed by attorney Can Guner, an associate attorney of Defendant RAS Law, making an initial appearance on behalf of a secured creditor (Reverse Mortgage Solutions, Inc.) in a case filed under Title 11, Chapter 13 of the United States Code in California in the United States Bankruptcy Court, Eastern District of California:

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

IN RE:                                                   CASE NO.: 18-20785
                                                         CHAPTER 13

Arthur William Lund,

    Debtor.

_____/

**REQUEST FOR SERVICE OF NOTICES**

    **PLEASE   TAKE   NOTICE   THAT,** on behalf of REVERSE MORTGAGE SOLUTIONS, INC. ("Secured Creditor"), and pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, the undersigned requests all notices given or required to be given and all papers required to be served in this case to creditors, any creditors committees, and any other parties-in-interest, be sent to and served upon the undersigned counsel and the following be added to the Court's Master Mailing List:

**ROBERTSON, ANSCHUTZ & SCHNEID, P.L.**
**BANKRUPTCY DEPARTMENT**
**6409 CONGRESS AVE., SUITE 100**
**BOCA RATON, FL 33487**

                  Robertson, Anschutz & Schneid, P.L.
                  Authorized Agent for Secured Creditor
                  6409 Congress Ave., Suite 100
                  Boca Raton, FL 33487
                  Telephone: 561-241-6901
                  Facsimile: 561-997-6909
                  By: /s/Can Guner
                  Can Guner, Esquire
                  Email: cguner@rasflaw.com

106.    In a further attempt to mislead the Court and other parties in interest, conspicuously absent from the caption of the *Request for Service of Notices* (**Exhibit P**) was any identification of the law firm or attorneys that purportedly represented the secured creditor

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

(Reverse Mortgage Solutions, Inc.) in violation of the Bankruptcy Local Rules for the Eastern District of California.

107.    Plaintiff is informed, believes, and based thereon alleges that attorney Can Guner is not licensed to practice law in the State of California.

108.    The act of Can Guner electronically filing the *Request for Service of Notices* (**Exhibit P**) on behalf of secured creditor Reverse Mortgage Solutions, Inc. in the United States Bankruptcy Court, Eastern District of California, Sacramento Division constituted the unauthorized practice of law in the State of California in violation of California law, including but not limited to, California Business & Professions Code §§ 6125 and 6126.

109.    For example, below is the signature block of a pleading (**Exhibit Q**) filed by attorney Madison Wilson, an associate attorney of Defendant RAS Law, withdrawing a *Proof of Claim* filed a secured creditor (Wilmington Savings Fund Society) in a case filed under Title 11, Chapter 13 of the United States Code in California in the United States Bankruptcy Court, Central District of California:

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

IN RE:                                CASE NO.: 2:16-BK-21633-WB
                                              CHAPTER 11
Alverna Stanley,
        Debtor.
_____/

NOTICE OF WITHDRAWAL

PLEASE TAKE NOTICE THAT, on behalf of WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR HILLDALE TRUST ("Secured Creditor"), the undersigned hereby withdraws the following document:

Proof of Claim, filed on March 30, 2018, as Claim 7-1 on the Claims Register.

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/Madison Wilson
Madison Wilson
Email: mwilson@rasflaw.com

110.    In a further attempt to mislead the Court and other parties in interest, conspicuously absent from the caption of the *Notice of Withdrawal* (**Exhibit Q**) was any identification of the law firm or attorneys that purportedly represented the secured creditor

(Wilmington Savings Fund Society) in violation of the Bankruptcy Local Rules for the Central District of California.

111.    Plaintiff is informed, believes, and based thereon alleges that attorney Madison Wilson is not licensed to practice law in the State of California.

112.    The act of Madison Wilson electronically filing the *Notice of Withdrawal* (**Exhibit Q**) on behalf of secured creditor Wilmington Savings Fund Society in the United States Bankruptcy Court, Central District of California, Los Angeles Division constituted the unauthorized practice of law in the State of California in violation of California law, including but not limited to, California Business & Professions Code §§ 6125 and 6126.

113.    As the California Supreme Court has expressly recognized, "[n]o one may recover compensation for services as an attorney at law in this state unless [the person] was at the time the services were performed a member of The State Bar." See Birbrower, Montalbano, Condon & Frank v. Superior Court, 17 Cal.4th 119, 127 (1998) (*citing* Hardy v. San Fernando Valley Chamber of Commerce, 99 Cal.App.2d 572, 576 (1950)).

114.    Plaintiff further brings this cause of action seeking equitable and statutory relief to stop Defendant RAS Law's misconduct, as complained of herein, and to seek restitution of the amount Defendant RAS Law acquired through the unfair, unlawful, and fraudulent business practices as described in detail herein.

115.    Defendant RAS Law knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-17208.  Specifically, Defendant RAS Law authorized and allowed associate attorneys of its firm, not licensed to practice law in the State of California, to file and withdraw pleadings in each District in California of the United States Bankruptcy Court on behalf of clients, including the PHH Defendants, and then allow the clients to add those fees to the loan balance of Class Members as purportedly authorized by the loan documents in violation of California law.

116.    Defendant RAS Law has clearly established a policy of accepting a certain amount of collateral damage, as represented by the damage to Plaintiff and Class Members herein alleged, as incidental to their business operation, rather than accept the alternative cost of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as

2   set forth in legislation and the judicial record.

3                                    **FIFTH CAUSE OF ACTION**
                                  **UNFAIR BUSINESS PRACTICES**
4                        **(California Business & Professions Code §§ 17200-17208)**

5
                            (Against Defendants Robertson, Anschutz, & Schneid, P.L.,
6                        Robertson, Anschutz, Schneid, & Crane LLC and RAS Crane, LLC)

7

8        117.    Plaintiff realleges and incorporates herein by this reference each of the allegations

9   set forth in Paragraphs 1 through 116 above as if the same were fully set forth at this point.

10       118.    California Rule of Professional Conduct 7.1 provides, in pertinent part:

11              A lawyer shall not make a false or misleading communication about the
12              lawyer or the lawyer's services.  A communication is false or misleading if
                it contains a material misrepresentation of fact or law, or omits a fact
13              necessary to make the communication considered as a whole not materially
                misleading.
14

15       119.    In an effort to conceal the fact that Defendant RAS Law was a professional

16   limited liability company (P.L.) formed under the law of the State of Florida and not duly

17   registered or authorized to practice law in the State of California, and in an effort to mislead the

18   Court and all other parties in interest, Defendant RAS Law employed a scheme in which its

19   corporate structure was strategically omitted from the caption page of pleadings filed in various

20   courts within the State of California.

21       120.    For example, in the caption of the *Objection to Confirmation of Debtor's Chapter*

22   *13 Plan of Reorganization* (**Exhibit R**), Defendant RAS Law included only its corporate name

23   "ROBERTSON, ANSCHUTZ & SCHNEID," but omitted any identification of its corporate

24   structure, and below is an example of Defendant RAS Law's misleading caption:

25   ///

26   ///

27   ///

28   ///

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

                                              - 29 -

Sean Ferry (SBN 310347)
sferry@raslaw.com
**ROBERTSON, ANSCHUTZ & SCHNEID**
7676 Hazard Center Drive, Suite 500
San Diego, CA 92108
Telephone: (561) 241-6901 Ext. 2036

Attorneys for Creditor
U.S. Bank National Association, As Trustee For C-
Bass Mortgage Loan Asset-Backed Certificates,
Series 2007-CB4

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

121.     In furtherance of the scheme alleged herein, attorney Sean Ferry has also filed numerous pleadings in each District in California of the United States Bankruptcy Court identifying himself as an attorney of Defendant RASC Law, although Sean Ferry is not an equity partner, non-equity partner, attorney, or employee of Defendant RASC Law.

122.     For example, below is the caption of a pleading (**Exhibit S**) filed by attorney Sean Ferry identifying himself as an attorney of Defendant RASC Law in the United States Bankruptcy Court, Northern District of California:

Sean C. Ferry (SBN 310347)
sferry@raslaw.com
Robertson, Anschutz, Schneid & Crane LLC
7676 Hazard Center Drive, Suite 500
San Diego, CA 92108
Telephone: (561) 241-6901 ext. 2036

Attorney for SELENE FINANCE LP

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| IN RE: | CASE NO.: 18-42204 |
|---|---|
| | CHAPTER 13 |
| **Anna C Alonzo,** | D.C. No. RAS - 1 |
| **aka Anna Cecilia Alonzo,** | |
| | **MOTION FOR RELIEF FROM** |
| Debtor, | **AUTOMATIC STAY** |

123.     In furtherance of the scheme alleged herein, attorney Sean Ferry has also filed numerous pleadings in each District in California of the United States Bankruptcy Court identifying himself as an attorney of Defendant RAS Crane, although Sean Ferry is not an equity partner, non-equity partner, attorney, or employee of Defendant RAS Crane.

CASE NO.

CLASS ACTION COMPLAINT

124.    For example, below is the signature block of a pleading (**Exhibit T**) filed by attorney Sean Ferry identifying himself as an attorney of Defendant RAS Crane in the United States Bankruptcy Court, Central District of California:

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

IN RE:                                                          CASE NO.: 2:14-bk-29768-SK
                                                                        CHAPTER 13
Royce Lamar Cobb and Nichole
Chaneece Pratt Cobb,

            Debtors.
_____/

NOTICE OF APPEARANCE AND REQUEST FOR SERVICE

PLEASE TAKE NOTICE THAT the undersigned counsel hereby appears on behalf of WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST ("Secured Creditor"). Pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, the undersigned requests all notices given or required to be given and all papers required to be served in this case to creditors, any creditors committees, and any other parties-in-interest, be sent to and served upon the undersigned counsel and the following be added to the Court's Master Mailing List:

RAS CRANE, LLC
10700 ABBOTT'S BRIDGE ROAD, SUITE 170
DULUTH, GA 30097

RAS Crane, LLC
Attorney for Secured Creditor
10700 Abbott's Bridge Road
Suite 170
Duluth, GA 30097
Telephone: 470-321-7112

By: /s/Sean Ferry
        Sean Ferry, Esquire
        Email: sferry@rasflaw.com

125.    In furtherance of the scheme alleged herein, attorney Theron Covey has filed numerous pleadings in each District in California of the United States Bankruptcy Court identifying himself as an attorney of Defendant RAS Crane, although Theron Covey is not an equity partner, non-equity partner, attorney, or employee of Defendant RAS Crane.

126.    For example, below is the caption of a pleading (**Exhibit U**) filed by attorney Sean Ferry identifying himself as an attorney of Defendant RAS Crane in the United States Bankruptcy Court, Central District of California:

///

///

///

///

///

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 31 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1
2
3
4
5
6
7
8
9
10
11
12
13

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

IN RE:                                                CASE NO.: 8:18-bk-14425-SC
                                                       CHAPTER 11
Wallace Raymond Steffen, Jr,

       Debtor.
_____/

**REQUEST FOR SERVICE OF NOTICES**

**PLEASE TAKE NOTICE THAT,** on behalf of USAA FEDERAL SAVINGS BANK

("Secured Creditor"), and pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure,

the undersigned requests all notices given or required to be given and all papers required to be

served in this case to creditors, any creditors committees, and any other parties-in-interest, be

sent to and served upon the undersigned counsel and the following be added to the Court's

Master Mailing List:

**RAS CRANE, LLC**
**BANKRUPTCY DEPARTMENT**
**10700 ABBOTT'S BRIDGE ROAD, SUITE 170**
**DULUTH, GA 30097**

RAS Crane, LLC
Authorized Agent for Secured Creditor
10700 Abbott's Bridge Road, Suite 170
Duluth, GA 30097
Telephone: 470-321-7112
Facsimile: 404-393-1425
By: /s/Theron S. Covey
Theron S. Covey, Esquire
Email: tcovey@rasflaw.com

14    127.    Plaintiff is informed, believes, and based thereon alleges that at all times herein

15 relevant, attorney Sean Ferry was a salaried employee of Defendant RAS Law.  Plaintiff is

16 further informed, believes, and based thereon alleges that attorney Sean Ferry was not an equity

17 partner, non-equity partner, attorney, or employee of Defendant RASC Law or Defendant RAS

18 Crane.

19    128.    Plaintiff is informed, believes, and based thereon alleges that at all times herein

20 relevant, attorney Theron Covey was a salaried employee of Defendant RAS Law.  Plaintiff is

21 further informed, believes, and based thereon alleges that attorney Theron Covey was not an

22 equity partner, non-equity partner, attorney, or employee of Defendant RASC Law or Defendant

23 RAS Crane.

24    129.    As set forth in detail in Paragraphs 64 through 69 of the Complaint, Defendant

25 RAS Law is not a law corporation duly authorized to transact business or practice law in the

26 State of California.

27    130.    As set forth in detail in Paragraph 70 through 75 of the Complaint, Defendant

28 RASC Law is not a law corporation duly authorized to transact business or practice law in the

CASE NO.
_____
CLASS ACTION COMPLAINT

State of California.

131.    As set forth in detail in Paragraph 76 through 81 of the Complaint, Defendant RAS Crane is not a law corporation duly authorized to transact business or practice law in the State of California.

132.    Defendants RAS Law made false and misleading statements in violation of California Rule of Professional Conduct 7.1 in each pleading that was filed in each District in California of the United States Bankruptcy Court when Defendant RAS Law identified itself solely as "ROBERTSON, ANSCHUTZ & SCHNEID," but omitted any identification of its corporate structure, as this scheme was designed to conceal the fact that Defendant RAS Law was a professional limited liability company (P.L.) formed under the law of the State of Florida and not duly registered or authorized to practice law in the State of California.

133.    Defendant RASC Law made false and misleading statements in violation of California Rule of Professional Conduct 7.1 in each pleading that was filed in each District in California of the United States Bankruptcy Court when Defendant RASC Law identified attorney Sean Ferry as an employee or attorney of RASC Law because as set forth in Paragraph 127 of the Complaint, attorney Sean Ferry is not an equity partner, non-equity partner, attorney, or employee of Defendant RASC Law.

134.    Defendant RASC Law made false and misleading statements in violation of California Rule of Professional Conduct 7.1 in each pleading that was filed in each District in California of the United States Bankruptcy Court when Defendant RASC Law identified attorney Theron Covey as an employee or attorney of RASC Law because as set forth in Paragraph 128 of the Complaint, attorney Theron Covey is not an equity partner, non-equity partner, attorney, or employee of Defendant RASC Law.

135.    Defendant RAS Crane made false and misleading statements in violation of California Rule of Professional Conduct 7.1 in each pleading that was filed in each District in California of the United States Bankruptcy Court when Defendant RAS Crane identified attorney Sean Ferry as an employee or attorney of RAS Crane because as set forth in Paragraph 127 of the Complaint, attorney Sean Ferry is not an equity partner, non-equity partner, attorney, or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

1   employee of Defendant RAS Crane.

2       136.   Defendant RAS Crane made false and misleading statements in violation of

3   California Rule of Professional Conduct 7.1 in each and every pleading that was filed in each

4   District in California of the United States Bankruptcy Court when Defendant RAS Crane

5   identified attorney Theron Covey as an employee or attorney of RAS Crane because as set forth

6   in Paragraph 128 of the Complaint, attorney Theron Covey is not an equity partner, non-equity

7   partner, attorney, or employee of Defendant RAS Crane.

8       137.   Defendant RAS Law made false and misleading statements in violation of

9   California Rule of Professional Conduct 7.1 in each pleading that was filed in each District in

10  California of the United States Bankruptcy Court when Defendant RAS Law identified itself as a

11  law corporation duly authorized to transact business or practice law in the States of California.

12      138.   Defendant RASC Law made false and misleading statements in violation of

13  California Rule of Professional Conduct 7.1 in each pleading that was filed in each District in

14  California of the United States Bankruptcy Court when Defendant RASC Law identified itself as

15  a law corporation duly authorized to transact business or practice law in the States of California.

16      139.   Defendant RAS Crane made false and misleading statements in violation of

17  California Rule of Professional Conduct 7.1 in each pleading that was filed in each District in

18  California of the United States Bankruptcy Court when Defendant RAS Crane identified itself as

19  a law corporation duly authorized to transact business or practice law in the States of California.

20      140.   Plaintiff further brings this cause of action seeking equitable and statutory relief

21  to stop Defendants RAS Law, RASC Law, and RAS Crane's misconduct, as complained of

22  herein, and to seek restitution of the amount Defendants RAS Law, RASC Law, and RAS

23  Crane's acquired through the unfair, unlawful, and fraudulent business practices as described in

24  detail herein.

25      141.   Defendants RAS Law, RASC Law, and RAS Crane's knowing conduct, as

26  alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in

27  California Business & Professions Code §§ 17200-17208.  Specifically, RAS Law, RASC Law,

28  and RAS Crane each filed numerous pleadings in each District in California of the United States

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 34 -

Bankruptcy Court containing false and misleading information pertaining to their corporate structures, their registration as law corporations authorized to transact business and practice law in the State of California, and falsely identifying attorneys as members of the law firm in violation of California law, including California Rule of Professional Conduct 7.1.

142.    Defendants RAS Law, RASC Law, and RAS Crane have clearly established a policy of accepting a certain amount of collateral damage, as represented by the damage to Plaintiff and Class Members herein alleged, as incidental to their business operation, rather than accept the alternative cost of fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as set forth in legislation and the judicial record.

### SIXTH CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICES
### (California Business & Professions Code §§ 17200-17208)

(Against Defendants Robertson, Anschutz, & Schneid, P.L., Robertson, Anschutz, Schneid, & Crane LLC, RAS Crane, LLC, RAS Boriskin, LLC, and RAS Citron, LLC)

143.    Plaintiff realleges and incorporates herein by this reference each of the allegations set forth in Paragraphs 1 through 142 above as if the same were fully set forth at this point.

144.    California Rule of Professional Conduct 5.4(a) provides, in pertinent part:

A lawyer or law firm shall not share legal fees directly or indirectly with a nonlawyer or with an organization that is not authorized to practice law.

145.    California Rule of Professional Conduct 5.4(b) provides, in pertinent part:

A lawyer shall not form a partnership or other organization with a nonlawyer if any of the activities of the partnership or other organization consist of the practice of law.

146.    California Rule of Professional Conduct 5.4(d) provides, in pertinent part:

A lawyer shall not practice with or in the form of a professional corporation or other organization authorized to practice law for a profit if:

(1)    a nonlawyer owns any interest in it, except that a fiduciary representative of a lawyer's estate may hold the lawyer's stock or other interest for a reasonable time during administration;

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

(2)    a nonlawyer is a director or officer of the corporation or occupies a position of similar responsibility in any other form of organization; or

(3)    a nonlawyer has the right or authority to direct or control the lawyer's independent professional judgment.

147.    Plaintiff is informed, believes, and based thereon alleges that at all time herein relevant, Defendant RAS Law shared legal fees generated through representation of clients (including the PHH Defendants) in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court with non-attorneys or with entities not authorized to practice law in California in violation of applicable California law, including California Rule of Professional Conduct 5.4(a).

148.    Plaintiff is informed, believes, and based thereon alleges that Defendant RAS Law formed a partnership with Defendants RASC Law, RAS Crane, RAS Boriskin, and/or RAS Citron, each of which are entities also not authorized to practice law in the State of California, and at all times herein relevant, shared legal fees generated through representation of clients (including the PHH Defendants) in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court with these entities in violation of applicable California law, including California Rule of Professional Conduct 5.4(b).

149.    Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, at least one (1) non-attorney owned an interest in Defendant RAS Law, at least one (1) non-attorney was a director of Defendant RAS Law, and at least one (1) non-attorney was an officer of Defendant RAS Law in violation of California law, including California Rule of Professional Conduct 5.4(d).

150.    Plaintiff is informed, believes, and based thereon alleges that Defendant RASC Law shared legal fees generated through representation of clients in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court with non-attorneys or with entities not authorized to practice law in California in violation of applicable California law, including California Rule of Professional Conduct 5.4(a).

151.    Plaintiff is informed, believes, and based thereon alleges that Defendant RASC Law formed a partnership with Defendants RAS Law, RAS Crane, RAS Boriskin, and/or RAS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

Citron, each of which are entities also not authorized to practice law in the State of California, and at all times herein relevant, shared legal fees generated through representation of clients (including the PHH Defendants) in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court with these entities in violation of applicable California law, including California Rule of Professional Conduct 5.4(b).

152. Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, at least one (1) non-attorney owned an interest in Defendant RASC Law, at least one (1) non-attorney was a director of Defendant RASC Law, and at least one (1) non-attorney was an officer of Defendant RASC Law in violation of California law, including California Rule of Professional Conduct 5.4(d).

153. Plaintiff is informed, believes, and based thereon alleges that Defendant RAS Crane shared legal fees generated through representation of clients in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court with non-attorneys or with entities not authorized to practice law in California in violation of applicable California law, including California Rule of Professional Conduct 5.4(a).

154. Plaintiff is informed and believes, and based thereon alleges that Defendant RAS Crane formed a partnership with Defendants RAS Law, RASC Law, RAS Boriskin, and/or RAS Citron, each of which are entities also not authorized to practice law in the State of California, and at all times herein relevant, shared legal fees generated through representation of clients (including the PHH Defendants) in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court with these entities in violation of applicable California law, including California Rule of Professional Conduct 5.4(b).

155. Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, at least one (1) non-attorney owned an interest in Defendant RAS Crane, at least one (1) non-attorney was a director of Defendant RAS Crane, and at least one (1) non-attorney was an officer of Defendant RAS Crane in violation of California law, including California Rule of Professional Conduct 5.4(d).

156. Plaintiff is informed and believes, and based thereon alleges that Defendant RAS

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Boriskin shared legal fees generated through representation of clients in cases filed under Title

2   11 of the United States Code in each District of California for the United States Bankruptcy

3   Court with non-attorneys or with entities not authorized to practice law in California in violation

4   of applicable California law, including California Rule of Professional Conduct 5.4(a).

5          157.   Plaintiff is informed and believes, and based thereon alleges that Defendant RAS

6   Boriskin formed a partnership with Defendants RAS Law, RASC Law, RAS Crane, and/or RAS

7   Citron, each of which are entities also not authorized to practice law in the State of California,

8   and at all times herein relevant, shared legal fees generated through representation of clients

9   (including the PHH Defendants) in cases filed under Title 11 of the United States Code in each

10  District of California for the United States Bankruptcy Court with these entities in violation of

11  applicable California law, including California Rule of Professional Conduct 5.4(b).

12         158.   Plaintiff is informed, believes, and based thereon alleges that at all times herein

13  relevant, at least one (1) non-attorney owned an interest in Defendant RAS Boriskin, at least one

14  (1) non-attorney was a director of Defendant RAS Boriskin, and at least one (1) non-attorney

15  was an officer of Defendant RAS Boriskin in violation of California law, including California

16  Rule of Professional Conduct 5.4(d).

17         159.   Plaintiff is informed and believes, and based thereon alleges that Defendant RAS

18  Citron shared legal fees generated through representation of clients in cases filed under Title 11

19  of the United States Code in each District of California for the United States Bankruptcy Court

20  with non-attorneys or with entities not authorized to practice law in California in violation of

21  applicable California law, including California Rule of Professional Conduct 5.4(a).

22         160.   Plaintiff is informed and believes, and based thereon alleges that Defendant RAS

23  Citron formed a partnership with Defendants RAS Law, RASC Law, RAS Crane, and/or RAS

24  Boriskin, each of which are entities also not authorized to practice law in the State of California,

25  and at all times herein relevant, shared legal fees generated through representation of clients

26  (including the PHH Defendants) in cases filed under Title 11 of the United States Code in each

27  District of California for the United States Bankruptcy Court with these entities in violation of

28  applicable California law, including California Rule of Professional Conduct 5.4(b).

- 38 -

CASE NO.

CLASS ACTION COMPLAINT

161.     Plaintiff is informed, believes, and based thereon alleges that at all times herein relevant, at least one (1) non-attorney owned an interest in Defendant RAS Citron, at least one (1) non-attorney was a director of Defendant RAS Citron, and at least one (1) non-attorney was an officer of Defendant RAS Citron in violation of California law, including California Rule of Professional Conduct 5.4(d).

**SEVEN CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
**(California Business & Professions Code §§ 17200-17208)**

(Against Defendants Robertson, Anschutz, & Schneid, P.L., Robertson, Anschutz, Schneid, & Crane LLC, RAS Crane, LLC, RAS Boriskin, LLC, and RAS Citron, LLC)

162.     Plaintiff realleges and incorporates herein by this reference each of the allegations set forth in Paragraphs 1 through 161 above as if the same were fully set forth at this point.

163.     California Rule of Professional Conduct 1.5.1(a) provides, in pertinent part:

Lawyers who are not in the same law firm shall not divide a fee for legal services unless:

(1)     the lawyers enter into a written agreement to divide the fee;

(2)     the client has consented in writing, either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable, after a full written disclosure to the client of: (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms that are parties to the division; and (iii) the terms of the division; and

(3)     the total fee charged by all lawyers is not increased solely by reason of the agreement to divide fees.

164.     As set forth in Paragraphs 148, 151, 154, 157, and 160, the Law Firm Defendants entered into a partnership to share legal fees generated through representation of clients in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court.

165.     Plaintiff is informed, believes, and based thereon alleges that the Law Firm Defendants did not enter into a written agreement to divide the fees generated through representation of clients in cases filed under Title 11 of the United States Code in each District

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 39 -

of California for the United States Bankruptcy Court.

166.    Plaintiff is informed, believes, and based thereon alleges the Law Firm Defendants did not provide any of their clients, including the PHH Defendants, with a full written disclosure of: (a) the fact that a division of fees will be made; (b) the identity of the lawyers or law firms that are parties to the division; and (c) the terms of the division.

167.    Plaintiff is informed, believes, and based thereon alleges the Law Firm Defendants have not obtained the written consent of their clients, including the PHH Defendants, authorizing the Law Firm Defendants to share legal fees amongst one another generated through representation of clients in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court.

168.    Plaintiff further brings this cause of action seeking equitable and statutory relief to stop the Law Firm Defendants' misconduct, as complained of herein, and to seek restitution of the amount the Law Firm Defendants acquired through the unfair, unlawful, and fraudulent business practices as described in detail herein.

169.    The Law Firm Defendants' knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-17208.  Specifically, the Law Firm Defendants entered into a partnership to share legal fees generated through representation of clients in cases filed under Title 11 of the United States Code in each District of California for the United States Bankruptcy Court, but did not enter into a written agreement regarding the division of fees, did not disclose any material terms of this partnership to their clients (including the PHH Defendants), and did not obtain the written consent from their clients (including the PHH Defendants), in violation of California law, including California Rule of Professional Conduct 1.5.1(a).

170.    The Law Firm Defendants have clearly established a policy of accepting a certain amount of collateral damage, as represented by the damage to Plaintiff and Class Members herein alleged, as incidental to their business operation, rather than accept the alternative cost of fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as set forth in legislation and the judicial record.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 40 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

## EIGHTH CAUSE OF ACTION
### BREACH OF CONTRACT

(Against Defendants Ocwen Loan Servicing, LLC and PHH Mortgage Corporation)

171.    Plaintiff realleges and incorporates herein by this reference each of the allegations set forth in Paragraphs 1 through 170 above as if the same were fully set forth at this point.

172.    On or about June 24, 2006, Plaintiff executed an *Adjustable Rate Note* in the principal amount of Five Hundred and Twenty Thousand Six Hundred Dollars ($520,000.00) with New Century Mortgage Corporation (predecessor in interest to the PHH Defendants) (the "Promissory Note"), a true and correct copy of which is attached hereto as **Exhibit V**.

173.    Pursuant to Section 7(e) of the Promissory Note, "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back from me all of its costs and expenses *in enforcing this Note* to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees." (**Exhibit V**, § 7(e)) (emphasis added).

174.    On or about June 24, 2006, Plaintiff executed a *Deed of Trust* and granted New Century Mortgage Corporation (predecessor in interest to the PHH Defendants) an interest in real property commonly 1120 Parkridge Drive, Richmond, California 94803 to secure those obligations under the Promissory Note, which was recorded on or about July 7, 2006 in the Recorder's Office for Contra Costa County as Document No. 2006-0215523-00 (the "Deed of Trust"), a true and correct copy of which is attached hereto as **Exhibit W**.

175.    Pursuant to Section 14 of the Deed of Trust, "Lender may charge Borrower fees for services performed in connection with Borrower's default, *for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument*, including, but not limited to, attorneys' fees, property inspection and valuation fees."  (**Exhibit W**, § 14) (emphasis added).

176.    As set forth in detail in Paragraphs 40 and 41 of the Complaint, the PHH Defendants filed and prosecuted a non-meritorious *Objection to Confirmation* (**Exhibit E**). Thereafter, once the non-meritorious *Objection to Confirmation* was withdrawn in its entirety

- 41 -

1  (**Exhibit G**), the PHH Defendants then sought recovery of all attorney's fees ($500) incurred in

2  filing and prosecuting the non-meritorious *Objection to Confirmation* as purportedly authorized

3  under the terms and conditions of the Promissory Note and Deed of Trust (**Exhibit H**).

4      177.    As set forth in detail in Paragraph 40 of the Complaint, the Honorable Roger L.

5  Efremsky determined that the *Objection to Confirmation* filed by the PHH Defendants was

6  without merit, that the PHH Defendants were not entitled to recover any attorney's fees or costs

7  related to the filing and prosecution of the non-meritorious *Objection to Confirmation* under the

8  terms of the Promissory Note, Deed of Trust, or applicable law, and that Plaintiff was the

9  "prevailing party" in the litigation and entitled to recovery her attorney's and costs pursuant

10  California Code of Civil Procedure § 1717(a).  See **Exhibit J**.

11      178.    As set forth in Paragraph 39 of the Complaint, the PHH Defendants have a pattern

12  and practice of filing non-meritorious *Objections to Confirmation* in cases commenced under

13  Title 11, Chapter 13 of the United States Code and then adding all attorney's fees and costs

14  related thereto to the loan balance of unsuspecting Class Members.

15      179.    As set forth in Paragraphs 56 through 93 of the Complaint, the Law Firm

16  Defendants have engaged in the unauthorized practice of law in the State of California because

17  each of the Law Firms Defendants have not obtained a *Certificate of Registration* from the State

18  Bar California pursuant to the California Professional Corporation Act to practice law as a law

19  corporation in the State of California.  As California Court have consistently recognized,

20  unregistered corporations, such as the Law Firm Defendants, are not authorized to practice law

21  within the State of California and cannot recover attorney's fees for the legal services provided

22  to their clients.  See Cappiello, Hofmann & Katz v. Boyle, 105 Cal.Rptr.2d 147, 151-52 (2001)

23  (*citing* Birbrower, Montalbano, Condon & Frank v. Superior Court, 17 Cal.4th 119, 127 (1998)

24  ("[l]ike an unlicensed attorney, an unregistered corporation is barred from recovering

25  compensation for any legal services it provides").

26      180.    Plaintiff is informed, believes, and based thereon alleges that each promissory

27  note secured by a deed of trust which is owned and/or serviced by the PHH Defendants contain

28  an attorney's fee clause remarkably similar to Section 7(e) of the Promissory Note and Section

CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CASE NO.

CLASS ACTION COMPLAINT

14 of the Deed of Trust, and the PHH Defendants have applied a uniform policy that all attorney's fees incurred in filing non-meritorious pleadings or charged by the PHH Defendants are recoverable under the applicable loan documents, irrespective of the actual language set forth in the particular attorney's fee clause for individual Class Members.

181.    The PHH Defendants breached the Promissory Note and the Deed of Trust for Plaintiff, and the applicable loan documents for each Class Member, when the PHH Defendants added attorney's fees and costs to the loan balance as purportedly authorized by the applicable loan documents for filing and prosecuting non-meritorious *Objections to Confirmation* in cases commenced under Title 11, Chapter 13 of the United States Code.

182.    The PHH Defendants also breached the Promissory Note and the Deed of Trust for Plaintiff, and the applicable loan documents for each Class Member, when the PHH Defendants added attorney's fees to the loan balance for legal services performed by the PHH Defendants in the State of California, since the Law Firm Defendants are not authorized to practice law within the State of California and cannot recover attorney's fees for the legal services provided to clients in the State of California.

183.    As a result of the PHH Defendants' breach of the Promissory Note and the Deed of Trust for Plaintiff, and the applicable loan documents for each Class Member, as alleged herein, Plaintiff and the Class Members have been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Representative Plaintiff, on behalf of herself and the proposed Plaintiff Class, prays for judgment and the following specific relief and against Defendants, and each of them, jointly and separately, as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Classes and/or any other appropriate subclasses pursuant to Federal Rule of Civil Procedure 23;

2.    That the Court declare, adjudge, and decree that Defendants violated California Business & Professions Code §§ 17200-17208;

3.    That the Court make an award to Plaintiff and Class Members of damages and/or

CASE NO.

CLASS ACTION COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    restitution for the amount of unlawful fees, costs, and expenses added to the loan balance that are

2    not recoverable under the applicable loan documents as a result of the unlawful business

3    practices and activities and breach of the loan agreements;

4          4.      That the Court order disgorgement and require Defendants to pay restitution to

5    Plaintiff and Class Members of all earnings, profits, compensation, and other monetary benefits

6    received by Defendants as a result of the unlawful business practices and activities pursuant to

7    California Business & Professions Code §§ 17200-17208;

8          5.      For statutory penalties in favor of Plaintiff and Class Members against

9    Defendants;

10         6.      For interest on the amount of all economic losses at the prevailing legal rate;

11         7.      For reasonable attorney's fees pursuant to California Civil Code § 1717(a) and/or

12   California Civil Code § 1021.5;

13         8.      For punitive damages in favor of Plaintiff and Class Members and against

14   Defendants in an amount that will punish it for its reprehensible conduct;

15         9.      That the Court permanently enjoin Defendants and order them to cease and desist

16   from unlawful activities in violation of California Business & Professions Code §§ 17200-17208

17   pursuant to California Business & Professions Code §§ 17203 and 17353;

18         10.     For costs of suit and such other and further relief as the Court may deem just and

19   proper under the circumstances.

20

21    Dated: June 16, 2020                          **CALLAHAN & BLAINE, APLC**
                                                    **MEYER LAW GROUP LLP**
22

23                                                  By: /s/ BRETT E. BITZER
                                                    _____
24                                                      Edward Susolik. Esq.
                                                        Brett E. Bitzer, Esq.
25                                                      Brent D. Meyer, Esq.
                                                        Attorneys for Plaintiff JULIE CARMEN
26                                                      TORRES, Individually, and All Other
                                                        Similarly Situated
27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 44 -

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff and the Plaintiff Class demand a jury trial as to all matters triable by a jury.

3

4   Dated: June 16, 2020                    **CALLAHAN & BLAINE, APLC**
                                           **MEYER LAW GROUP LLP**
5

6                                          By: /s/ BRETT E. BITZER
                                              _____
7                                             Edward Susolik. Esq.
                                              Brett E. Bitzer, Esq.
8                                             Brent D. Meyer, Esq.
                                              Attorneys for Plaintiff JULIE CARMEN
9                                             TORRES, Individually, and All Other
                                              Similarly Situated
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 45 -

CASE NO.

CLASS ACTION COMPLAINT

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

Name of Debtor:                                               Case No.

Last four digits of Soc. Sec. No.:
Last four digits of Soc. Sec. No.:

# CHAPTER 13 PLAN

### Section 1.  Notices

**1.01.   Notices.**

> **(a)      Use of this form is mandatory.**  The Bankruptcy Court of the Northern District of California requires the use of this local form chapter 13 plan in lieu of any national form plan.  Fed. R. Bankr. P. 3015.1.

> **(b)      Notice of specific plan provisions required by Fed.R.Bankr.P. 3015.1(c).**  Any nonstandard provision is in section 7 below.

> If the plan proposes to limit the amount of a secured claim based on a valuation of the collateral for the claim, this box must be checked [   ].

> If the plan proposes to avoid a security interest or lien, this box must be checked [   ].

> If there are nonstandard provisions, this box must be checked [   ].  A nonstandard provision will be given no effect unless this section indicates one is included in section 7 and it appears in section 7.

**1.02.   No alterations to form plan permitted.**  Other than to insert text into designated spaces, to expand tables to include additional items, or to change the plan title to indicate the date of the plan or that it is a modified plan, the preprinted text of this form shall not be altered.   No such alteration will be given any effect.

**1.03.   Valuation of collateral and lien avoidance.**  Unless otherwise provided in Section 7 below, as to non-governmental units, the confirmation of this plan will not limit the amount of a secured claim based on a valuation of the collateral for the claim, nor will it avoid a security interest or lien.  This relief requires a separate claim objection, valuation motion or adversary proceeding, or lien avoidance motion, with supporting evidence, that is successfully prosecuted in connection with the confirmation of this plan.  Determining the amount of secured and priority claims of governmental units, however, must be done in compliance with Fed.R.Bankr.P. 3012.

**1.04.   Confirmation of Plan.**  In the absence of a timely written objection, the plan may be confirmed without a hearing. It will be effective upon its confirmation.

### Section 2.  Plan Payments and Plan Duration

**2.01.   Monthly plan payments**.  To complete this plan, Debtor shall submit to the supervision and control of Trustee on a monthly basis the sum of $_____$ from future earnings.  This monthly plan payment is subject to adjustment pursuant to section 3.07(b)(5) below and it must be received by Trustee not later than the 20th day of each month beginning the month after the order for relief under chapter 13.  The monthly plan payment includes all adequate protection payments due on Class 2 secured claims.

**2.02.   Other payments.**  In addition to the submission of future earnings, Debtor will make payment(s) derived from property of the bankruptcy estate, property of Debtor, or from other sources, as follows: _____

_____

_____

_____.

2.03.    **Duration of payments.**  The monthly plan payments will continue for _____ months unless all allowed unsecured claims are paid in full within a shorter period of time.  If necessary to complete the plan, monthly payments may continue for an additional 6 months, but in no event may a plan be proposed and confirmed that exceeds 60 months.  This section is to be read in conjunction with section 3.14.

## Section 3. Claims and Expenses

### A.  Proofs of Claim

3.01.    With the exception of the payments required by sections 3.03, 3.07(b), 3.08(b), 3.10, and 4.01, a claim will not be paid pursuant to this plan unless a proof of claim is filed by or on behalf of a creditor, including a secured creditor.

3.02.    The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim unless the court's disposition of a claim objection, valuation motion, adversary proceeding, confirmed plan, or lien avoidance motion affects the amount or classification of the claim, consistent with section 1.03.

3.03.    Post-petition amounts due on account of a domestic support obligation, a loan from retirement or thrift savings plan, or an executory contract/unexpired lease being assumed, shall be paid by Debtor directly to the person entitled to such payments whether or not the plan is confirmed or a proof of claim has been filed.

### B.  Administrative Expenses

3.04.    **Trustee's fees.**  Pursuant to 28 U.S.C. § 586(e), Trustee shall retain up to 10% of plan payments, whether made before or after confirmation, but excluding direct payments by Debtor provided for by the plan.

3.05.    **Debtor's attorney's fees.**  Debtor's attorney was paid $_____ prior to the filing of the case.  Additional fees of $_____ shall be paid through this plan upon court approval.  Debtor's attorney will seek the court's approval by [*choose one*]: ❑ complying with General Order 35; or ❑ filing and serving a motion in accordance with 11 U.S.C. §§ 329 and 330, Fed. R. Bankr. P. 2002, 2016, and 2017 [if neither alternative is selected, the attorney shall comply with the latter].

3.06.    **Administrative expenses.**  In accordance with sections 5.02 and 5.03 below, $_____ of each monthly plan payment shall be paid on account of: (a) compensation due a former chapter 7 trustee; (b) approved administrative expenses; and (c) approved attorney's fees.  Approved administrative expenses shall be paid in full through this plan except to the extent a claimant agrees otherwise or 11 U.S.C. § 1326(b)(3)(B) is applicable.

### C.  Secured Claims

3.07.    **Class 1 includes all delinquent secured claims that mature after the completion of this plan, including those secured by Debtor's principal residence.**

**(a) Cure of defaults.**  All arrears on Class 1 claims shall be paid in full by Trustee.  The monthly installments specified in the table below as the "monthly arrearage dividend," in conjunction with the distribution scheme in section 5 of this plan, shall pay the arrears in full.

**(1)** Unless otherwise specified below, interest will accrue at the rate of 0%.

**(2)** The arrearage dividend must be applied by the Class 1 creditor to the arrears.  If this plan provides for interest on the arrears, the arrearage dividend shall be applied first to such interest, then to the arrears.

**(b) Maintaining payments.**  From plan payments received, Trustee shall make all post-petition monthly payments to the holder of each Class 1 claim whether or not this plan is confirmed or a proof of claim is filed.

**(1)** Unless sub-part (b)(1)(A)or(B) of this section is applicable, the amount of the post-petition monthly payment shall be the amount specified in the plan.

**(A)** If the amount specified in the plan is incorrect, the Class 1 creditor may demand the correct amount in its proof of claim. Unless and until an objection to such proof of claim is sustained, the trustee shall pay the payment amount demanded in the proof of claim.

**(B)** Whenever the post-petition monthly payment amount is adjusted in accordance with the underlying loan documentation, including changes resulting from an interest rate or escrow account adjustment, the Class 1 creditor shall give notice of payment change pursuant to Fed. R. Bankr. P. 3002.1(b). Notice of the change in a proof of claim is not sufficient.  Until and unless an objection to a notice of payment change is sustained, the trustee shall pay the amount demanded in the notice of payment change.

**(2)** If Debtor makes a partial plan payment that is insufficient to satisfy all post-petition monthly payments due each Class 1 claim, distributions will be made in the order such claims are listed in the table below.

**(3)** Trustee will not make a partial distribution on account of a post-petition monthly payment.

**(4)** If Debtor makes a partial plan payment, or if it is not paid on time, and Trustee is unable to make timely a post-petition monthly payment, Debtor may be obligated to pay a late charge.

**(5)** If the holder of a Class 1 claim files a notice of payment change in accordance with Fed.R.Bankr.P. 3002.1(b) demanding a higher or lower post-petition monthly payment, the plan payment shall be adjusted accordingly, without modification of the plan.

**(6)**  If the holder of a Class 1 claim gives Debtor and Trustee notice of post-petition fees, expenses, and charges in accordance with Fed. R. Bankr. P. 3002.1(c), Debtor may modify this plan if Debtor wishes to provide for such fees, expenses, and charges.

**(7)** Post-petition monthly payments made by Trustee and received by the holder of a Class 1 claim shall be applied as if the claim was current and no arrearage existed on the date the case was filed.

**(c) No claim modification and lien retention.**  Each Class 1 creditor shall retain its lien.  Other than to cure arrears, this plan does not modify Class 1 claims.

| Class 1 Creditor's Name/ Collateral Description | Amount of Arrears | Interest Rate on Arrears | Monthly Arrearage Dividend | Monthly Arrearage Dividend Start Date (Start Date will be a specific month/year during the plan) | Post-Petition Monthly Payment |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| | Totals:      $ | | | | $ |

### 3.08.   Class 2 includes all secured claims that are modified by this plan, or that have matured or will mature before the plan is completed.

**(a) Payment of claim.**  Subject to section 3.08(c), the "monthly dividend" payable to each Class 2A and 2B claim is a monthly payment sufficient to pay each claim in full with interest at the rate specified below.  If no interest rate is specified, a 5% rate will be imputed.

**(b) Adequate protection payments.**  Prior to confirmation and once a proof of claim is filed, Trustee shall pay on account of each Class 2(A) and 2(B) claim secured by a purchase money security interest in personal property an adequate protection payment if required by 11 U.S.C. § 1326(a)(1)(C).  The adequate protection payment shall equal the monthly dividend.  Adequate protection payments shall be disbursed by Trustee in connection with the customary disbursement cycle beginning the month after the case was filed.  If a Class 2 claimant is paid an adequate protection payment, that claimant shall not be paid a monthly dividend for the same month.

**(c) Claim amount.**  The amount of a Class 2 claim is determined by applicable nonbankruptcy law.  However, except as noted below, Debtor may reduce the claim amount to the value of the collateral securing it by complying with Section 1.03 above.

**(1) Class 2 claims that cannot be reduced based on value of collateral.** Debtor is prohibited from reducing a claim if the claim holder has a purchase money security interest and the claim either was incurred within 910 days of the filing of the case and is secured by a motor vehicle acquired for the personal use of Debtor, or was incurred within 1-year of the filing of the case and is secured by any other thing of value.  These claims must be included in Class 2(A).

**(2) Class 2 claims that may be reduced based on the value of their collateral** shall be included in Class 2(B) or 2(C) as is appropriate.

**(3) Class 2 claims secured by Debtor's principal residence.**  Except as permitted by 11 U.S.C. § 1322(c), Debtor is prohibited from modifying the rights of a holder of a claim secured only by Debtor's principal residence.

**(d) Lien retention.**  Each Class 2 creditor shall retain its existing lien on the property interest of the Debtor or the Estate until the earlier of: (a) payment of the underlying debt determined under nonbankruptcy law, or (b) completion of the plan and, unless not required by the bankruptcy court, entry of Debtor's discharge under 11 U.S.C. § 1328.

| Class 2(A)  Creditor's name and description of collateral | Purchase money security interest in personal property? YES/NO | Amount claimed by creditor | Value of creditor's interest in its collateral | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| Class 2(A) claims are not reduced based on value of collateral | | | | | |
| 1. | | | | | |
| 2. | | | | | |
| | | | | Total $ | |

| Class 2(B) Creditor's name and description of collateral | Purchase money security interest in personal property? YES/NO | Amount claimed by creditor | Value of creditor's interest in its collateral | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| Class 2(B) claims are reduced to an amount greater than $0 based on value of collateral | | | | | |
| 1. | | | | | |
| 2. | | | | | |
| | | | | Total $ | |

| Class 2(C) Creditor's name and description of collateral | Purchase money security interest in personal property? YES/NO | Amount claimed by creditor | Value of creditor's interest in its collateral | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| Class 2(C) are claims reduced to $0 based on value of collateral | | | | | |
| 1. | | | $0.00 | 0% | $0.00 |
| 2. | | | $0.00 | 0% | $0.00 |
| | | | | Total $ | $0.00 |

**3.09.    Class 3 includes all secured claims satisfied by the surrender of collateral.**

| Class 3 Creditor's Name/Collateral Description | Estimated Deficiency | Is Deficiency a Priority Claim? YES/NO |
|---|---|---|
| 1. | | |
| 2. | | |

**3.10.    Class 4 includes all secured claims paid directly by Debtor or third party.**  Class 4 claims are not in default and are not modified by this plan.  These claims shall be paid by Debtor or a third person whether or not a proof of claim is filed or the plan is confirmed.

| Class 4 Creditor's Name/Collateral Description | Monthly Contract Installment | Person Making Payment |
|---|---|---|
| 1. | | |
| 2. | | |

**3.11.    Bankruptcy stays.**

**(a)** Upon confirmation of the plan, the automatic stay of 11 U.S.C. § 362(a) and the co-debtor stay of 11 U.S.C. § 1301(a) are (1) terminated to allow the holder of a Class 3 secured claim to exercise its rights under non-bankruptcy law against its collateral; and (2) modified to allow the nondebtor party to an unexpired lease that is in default and rejected in section 4 of this plan to obtain possession of leased property, and to dispose of it under applicable law, and to exercise its rights against any nondebtor.

**(b)** Secured claims not listed as Class 1, 2, 3, or 4 claims are not provided for by this plan.  While this may be cause to terminate the automatic stay, such relief must be separately requested by the claim holder.

**(c)** If, after confirmation of the plan, the court grants a motion to terminate the automatic stay to permit a Class 1 or 2 claim holder to proceed against its collateral, unless the court orders otherwise, Trustee shall make no further payments on account of such claim and any portion of such claim not previously satisfied under this plan shall be satisfied as a Class 3 claim.  Any deficiency remaining after the creditor's disposition of its collateral shall be satisfied as a Class 7 unsecured claim subject to the filing of a proof of claim.

## D.  Unsecured Claims

**3.12.    Class 5 consists of unsecured claims entitled to priority pursuant to 11 U.S.C. § 507.**

**(a) Domestic support obligations entitled to priority pursuant to 11 U.S.C. § 507.**  These claims will be paid in full except to the extent the claim holder has agreed to accept less or 11 U.S.C. § 1322(a)(4) is applicable.  When the claim holder has agreed to accept less than payment in full or when 11 U.S.C. § 1322(a)(4) is applicable,  the claim holder and the treatment of the claim shall be specified in section 7, the Nonstandard Provisions.

**(b) Taxes, and other priority claims entitled to priority pursuant to 11 U.S.C. § 507.**  These claims will be paid in full except to the extent the claim holder has agreed to accept less.  When the claim holder has agreed to accept less than payment in full, the claim holder and the treatment of the claim shall be specified in section 7, the Nonstandard Provisions.

**(c) Estimate of priority claims pursuant to 11 U.S.C. § 507.**  Debtor estimates that all priority claims, not including those identified in section 7, total $_____.

**3.13.    Class 6 includes designated nonpriority unsecured claims**, such as co-signed unsecured debts, that will be treated differently than the other nonpriority unsecured claims provided for in Class 7.  The claim holder of each Class 6 claim and the treatment of each claim shall be specified in section 7, the Nonstandard Provisions.

**3.14.** **Class 7 consists of all other nonpriority unsecured claims** not provided for in Class 6.  These claims total approximately $_____.  Class 7 creditors shall be paid on a pro-rata basis by the Trustee from the funds remaining after the Trustee pays the administrative expenses and other claims provided for in this plan.  **[select one of the following options:]**

_____   **Percent Plan.** Class 7 claimants will receive no less than ___% of their allowed claims through this plan.

_____   **Pot Plan.** Class 7 claimants are estimated to receive ___% of their allowed claims through this plan.

This section is to be read in conjunction with section 2.03.

## Section 4.  Executory Contracts And Unexpired Leases

**4.01.** Debtor assumes the executory contracts and unexpired leases listed below.  Debtor shall directly pay all post-petition monthly lease or contract payments to the other party to the executory contract or unexpired lease.  Unless otherwise permitted under the Bankruptcy Code or Section 7 herein, pre-petition arrears shall be fully paid.  Trustee shall pay the monthly arrearage dividend specified in the table below.

| Name of Other Party to Executory Contract/ Unexpired Lease | Post-Petition Monthly Payment | Pre-petition Arrears | Monthly Arrearage Dividend |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| | | Total  $ | |

**4.02.** Debtor rejects the executory contracts and unexpired leases listed below.  Any executory contract or unexpired lease not listed in section 4.01 or section 4.02 is rejected.

| Name of Other Party to Executory Contract/Unexpired Lease | Description of Executory Contract/Unexpired Lease |
|---|---|
| 1. | |
| 2. | |

## Section 5.  Payment of Claims and Order of Distribution

**5.01.** After confirmation, payments by Trustee to holders of allowed claims and approved expenses will be made monthly.

**5.02.** **Distribution of plan payment by Trustee.**  Debtor's monthly plan payment must be sufficient to pay in full: **(a)** Trustee's fees; **(b)** post-petition monthly payments due on Class 1 claims; **(c)** the monthly dividend specified in section 3.06 for administrative expenses; and **(d)** the monthly dividends payable on account of Class 1 arrearage claims, Class 2 claims, and executory contract and unexpired lease arrearage claims.

If Debtor tenders a partial monthly plan payment to Trustee, Trustee shall pay, to the extent possible, such fees, expenses, and claims in the order specified in (a) through (d) above.  If the amount paid by Debtor, however, is insufficient to pay all dividends due on account of fees, payments, expenses, and claims within a subpart of section 5.02(a) through (d), no dividend shall be paid on account of any of the fees, payments, expenses, and claims within such subpart, except as permitted by section 3.07(b)(2) and (3).

Once a monthly plan payment, or a portion thereof, is not needed to pay a monthly dividend because a fee, expense, or claim is not allowed or has been paid in full, such plan payment shall be paid pro rata, based on claim balance, to holders of: **first**, section 3.06 administrative expenses; **second**, Class 1 arrearage claims, Class 2 claims, and executory contract and unexpired lease arrearage claims; **third**, Class 5 priority claims; **fourth**, Class 6 unsecured claims; and **fifth**, Class 7 unsecured claims.  Over the plan's duration, these distributions must equal the total dividends required by sections 3.04, 3.06, 3.07, 3.08, 3.12, 3.13, 3.14, and 4.01.

**5.03.** **Priority of payment among administrative expenses.** The portion of the monthly plan payment allocated in section 3.06 for administrative expenses, shall be distributed first to any former chapter 7 trustee up to the monthly amount required by 11 U.S.C. § 1326(b)(3)(B), and second, to holders of approved administrative expenses on a pro rata basis.

## Section 6.  Miscellaneous Provisions

**6.01.** **Vesting of property.** Property of the estate will revest in Debtor upon confirmation unless Debtor checks the following box: ☐ SHALL NOT REVEST.

If the property of the estate does not revest in Debtor, Trustee is not required to file income tax returns for the estate or insure any estate property. Upon dismissal or completion of this plan, all property shall revest in Debtor. Notwithstanding the revesting of property in Debtor, the court will retain its supervisory role post-confirmation to enforce Fed. R. Bankr. P. 3002.1 and provide any other relief necessary to effectuate this plan and the orderly administration of this case.

After the property revests in Debtor, Debtor may sell, refinance or execute a loan modification regarding real or personal property without further order of the court with the approval of Trustee.

**6.02.** **Remedies upon default.** If Debtor defaults under this plan, Trustee or any other party in interest may request appropriate relief by filing a motion pursuant to Local Bankruptcy Rule 9014-1, et seq. This relief may consist of, without limitation, dismissal of the case, conversion of the case to chapter 7, or relief from the automatic stay to pursue rights against collateral. This is without prejudice to Debtor's right to seek plan modification under 11 U.S.C. § 1329.

**6.03.** **Impermissible Provisions.** Notwithstanding any other term in this plan, Debtor does not seek through the confirmation and completion of this plan either a determination of the dischargability of any debt or the discharge of any debt that is non-dischargable as a matter of law in a Chapter 13 case under 11 U.S.C. § 1328(a).

## Section 7.  Nonstandard Provisions

Debtor may propose nonstandard provisions that modify the preprinted text of this form plan. All nonstandard plan provisions shall be set forth below, or on a separate page(s) appended to this plan. Each such provision shall be identified by a section number beginning with section 7.01 and indicate which section(s) of the form plan are modified by it. Nonstandard provisions placed elsewhere in the plan are void. The signatures below are certifications by Debtor and Debtor's attorney that this plan form has not been altered and that all nonstandard provisions are in section 7 and appended to this plan.

Dated: _____                    _____
                                           Debtor

                                           _____
                                           Debtor

Dated: _____                    _____
                                           Debtor's Attorney

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

Name of Debtor:                                              Case No.

Last four digits of Soc. Sec. No.:  XXX-XX-
Last four digits of Soc. Sec. No.:  XXX-XX-

# CHAPTER 13 PLAN

### Section 1.  Notices

**1.01.**    **Use of this form is mandatory.**  The Bankruptcy Court of the Eastern District of California requires the use of this local form chapter 13 plan in lieu of any national form plan. This Plan shall be filed as a separate document.

**1.02.**    **Nonstandard provisions.**  Any nonstandard provision is in section 7 below.  If there are nonstandard provisions this box must be checked ☐  A nonstandard provision will be given no effect unless this section indicates one is included in section 7 and it appears in section 7.

**1.03.**    **No alterations to form plan permitted.**  Other than to insert text into designated spaces, expand tables to include additional claims, or to change the plan title to indicate the date of the plan or that it is a modified plan, the preprinted text of this form shall not be altered.   No such alteration will be given any effect.

**1.04.**    **Valuation of collateral and lien avoidance requires a separate motion.**  Unless there is a nonstandard provision in section 7 requesting such relief, the confirmation of this plan will not limit the amount of a secured claim based on a valuation of the collateral for the claim, nor will it avoid a security interest or lien.  This relief requires a separate claim objection, valuation motion, or lien avoidance motion that is successfully prosecuted in connection with the confirmation of this plan.

**1.05.**    **Separate notice of confirmation hearing.**  You will receive a separate notice of the date, time, and location of a hearing to confirm this plan and of the deadline to object to its confirmation.  In the absence of a timely written objection, the plan may be confirmed without a hearing.  It will be effective upon its confirmation.

### Section 2.  Plan Payments and Plan Duration

**2.01.**    **Monthly plan payments**.  To complete this plan, Debtor shall submit to the supervision and control of Trustee on a monthly basis the sum of $ _____ from future earnings.  This monthly plan payment is subject to adjustment pursuant to section 3.07(b)(2) below and it must be received by Trustee not later than the 25th day of each month beginning the month after the order for relief under chapter 13.  The monthly plan payment includes all adequate protection payments due on Class 2 secured claims.

**2.02.**    **Other payments.**  In addition to the submission of future earnings, Debtor will make payment(s) derived from property of the bankruptcy estate, property of Debtor, or from other sources, as follows: _____
_____ .

**2.03.**    **Duration of payments.**  The monthly plan payments will continue for ____ months unless all allowed unsecured claims are paid in full within a shorter period of time.  If necessary to complete the plan, monthly payments may continue for an additional 6 months, but in no event shall monthly payments continue for more than 60 months.

### Section 3. Claims and Expenses

## A.  Proofs of Claim

**3.01.**    With the exception of the payments required by sections 3.03, 3.07(b), 3.10, and 4.01, a claim will not be paid pursuant to this plan unless a proof of claim is filed by or on behalf of a creditor, including a secured creditor.

**3.02.**    The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim unless

the court's disposition of a claim objection, valuation motion, or lien avoidance motion affects the amount or classification of the claim.

**3.03.** Post-petition amounts due on account of a domestic support obligation, a loan from retirement or thrift savings plan, or an executory contract/unexpired lease being assumed, shall be paid by Debtor directly to the person entitled to such payments whether or not the plan is confirmed or a proof of claim has been filed.

## B.  Administrative Expenses

**3.04.** **Trustee's fees.** Pursuant to 28 U.S.C. § 586(e), Trustee shall receive up to 10% of plan payments, whether made before or after confirmation, but excluding direct payments by Debtor on Class 4 claims, executory contracts and unexpired leases, and obligations of the kind described in section 3.03.

**3.05.** **Debtor's attorney's fees.** Debtor's attorney was paid $_____ prior to the filing of the case.  Subject to prior court approval, additional fees of $_____ shall be paid through this plan.  Debtor's attorney will seek the court's approval by [***choose one***]: [ ] complying with Local Bankruptcy Rule 2016-1(c); or [ ] filing and serving a motion in accordance with 11 U.S.C. §§ 329 and 330, Fed. R. Bankr. P. 2002, 2016, and 2017 [if neither alternative is selected, the attorney shall comply with the latter].

**3.06.** **Administrative expenses.** In accordance with sections 5.02 and 5.03 below, $_____ of each monthly plan payment shall be paid on account of: (a) compensation due a former chapter 7 trustee; (b) approved administrative expenses; and (c) approved attorney's fees.  Approved administrative expenses shall be paid in full through this plan except to the extent a claimant agrees otherwise or 11 U.S.C. § 1326(b)(3)(B) is applicable.

## C.  Secured Claims

**3.07.** **Class 1 includes all delinquent secured claims that mature after the completion of this plan, including those secured by Debtor's principal residence.**

**(a) Cure of defaults.** All arrears on Class 1 claims shall be paid in full by Trustee.  The equal monthly installment specified in the table below as the "arrearage dividend" shall pay the arrears in full.

**(1)** Unless otherwise specified below, interest will accrue at the rate of 0%.

**(2)** The arrearage dividend must be applied by the Class I creditor to the arrears.  If this plan provides for interest on the arrears, the arrearage dividend shall be applied first to such interest, then to the arrears.

**(b) Maintaining payments.** Trustee shall maintain all post-petition monthly payments to the holder of each Class 1 claim whether or not this plan is confirmed or a proof of claim is filed.

**(1)** Unless subpart (b)(1)(A) or (B) of this section is applicable, the amount of a post-petition monthly payment shall be the amount specified in this plan.

**(A)** If the amount specified in the plan is incorrect, the Class 1 creditor may demand the correct amount in its proof of claim.  Unless and until an objection to such proof of claim is sustained, the trustee shall pay the payment amount demanded in the proof of claim.

**(B)** Whenever the post-petition monthly payment is adjusted in accordance with the underlying loan documentation, including changes resulting from an interest rate or escrow account adjustment, the Class 1 creditor shall give notice of the payment change pursuant to Fed. R. Bankr. P. 3002.1(b).  Notice of the change shall not be given by including the change in a proof of claim.  Unless and until an objection to a notice of payment change is sustained, the trustee shall pay the amount demanded in the notice of payment change.

**(2)** If a Class 1 creditor files a proof of claim or a notice of payment change pursuant to Fed. R. Bankr. P. 3002.1(b) demanding a higher or lower post-petition monthly payment, the plan payment shall be adjusted accordingly.

**(3)** If Debtor makes a partial plan payment that is insufficient to satisfy all post-petition monthly payments due each Class 1 claim, distributions will be made in the order such claims are listed below.

**(4)** Trustee will not make a partial distribution on account of a post-petition monthly payment.

**(5)** If Debtor makes a partial plan payment, or if it is not paid on time, and Trustee is unable to make timely a post-petition monthly payment, Debtor's cure of this default shall include any late charge.

**(6)**  If the holder of a Class 1 claim gives Debtor and Trustee notice of post-petition fees, expenses, and charges pursuant to Fed. R. Bankr. P. 3002.1(c), Debtor shall modify this plan if Debtor wishes to provide for such fees, expenses, and charges.

**(7)**  Post-petition monthly payments made by Trustee and received by the holder of a Class 1 claim shall be applied as if the claim was current and no arrearage existed on the date the case was filed.

**(c) No claim modification and lien retention.**  Each Class 1 creditor shall retain its lien.  Other than to cure arrears, this plan does not modify Class 1 claims.

| Class 1 Creditor's Name/<br>Collateral Description | Amount of Arrears | Interest Rate on Arrears | Arrearage Dividend | Post-Petition Monthly Payment |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| | | Totals:  $ | | $ |

**3.08.**   **Class 2 includes all secured claims that are modified by this plan, or that have matured or will mature before the plan is completed.**

**(a) Payment of claim.**  Subject to section 3.08(c), the "monthly dividend" payable to each Class 2A and 2B claim is an equal monthly payment sufficient to pay each claim in full with interest at the rate specified below.  If no interest rate is specified, a 5% rate will be imputed.

**(b) Adequate protection payments.**  Prior to confirmation, Trustee shall pay on account of each Class 2(A) and 2(B) claim secured by a purchase money security interest in personal property an adequate protection payment if required by section 1326(a)(1)(C).  The adequate protection payment shall equal the monthly dividend.  Adequate protection payments shall be disbursed by Trustee in connection with the customary month-end disbursement cycle beginning the month after the case was filed.  If a Class 2 claimant is paid an adequate protection payment, that claimant shall not be paid a monthly dividend for the same month.

**(c) Claim amount.**  The amount of a Class 2 claim is determined by applicable nonbankruptcy law.  However, except as noted below, Debtor may reduce the claim amount to the value of the collateral securing it by filing, serving, setting for hearing, and prevailing on a motion to determine the value of that collateral.  If this plan proposes to reduce a claim based upon the value of its collateral, the failure to successfully prosecute a valuation motion in conjunction with plan confirmation may result in the denial of confirmation.

**(1) Class 2 claims that cannot be reduced based on value of collateral.** Debtor is prohibited from reducing a claim if the claim holder has a purchase money security interest and the claim either was incurred within 910 days of the filing of the case and is secured by a motor vehicle acquired for the personal use of Debtor, or was incurred within 1-year of the filing of the case and is secured by any other thing of value.  These claims must be included in Class 2(A).

**(2) Class 2 claims that may be reduced based on the value of their collateral** shall be included in Class 2(B) or 2(C) as is appropriate.

**(3) Class 2 claims secured by Debtor's principal residence.**  Except as permitted by 11 U.S.C. § 1322(c), Debtor is prohibited from modifying the rights of a holder of a claim secured only by Debtor's principal residence.

**(d) Lien retention.**  Each Class 2 creditor shall retain its existing lien until completion of the plan and, unless not required by Bankruptcy Court, entry of Debtor's discharge.

| Class 2  Creditor's name and description of collateral | Purchase money security interest in personal property? YES/NO | Amount claimed by creditor | Value of creditor's interest in its collateral | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| **Class 2(A) claims are not reduced based on value of collateral** | | | | | |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| | | | | Total $ | |

| Class 2(B) claims are reduced based on value of collateral | | | | | |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| | | | | Total $ | |

| Class 2(C) are claims reduced to $0 based on value of collateral | | | | | |
|---|---|---|---|---|---|
| 1. | | | $ 0.00 | 0 | $ 0.00 |
| 2. | | | $ 0.00 | 0 | $ 0.00 |
| | | | | Total $ | $ 0.00 |

**3.09.    Class 3 includes all secured claims satisfied by the surrender of collateral.**

| Class 3 Creditor's Name/Collateral Description | Estimated Deficiency | Is Deficiency a Priority Claim? YES/NO |
|---|---|---|
| 1. | | |
| 2. | | |

**3.10.    Class 4 includes all secured claims paid directly by Debtor or third party.**  Class 4 claims mature after the completion of this plan, are not in default, and are not modified by this plan.  These claims shall be paid by Debtor or a third person whether or not a proof of claim is filed or the plan is confirmed.

| Class 4 Creditor's Name/Collateral Description | Monthly Contract Installment | Person Making Payment |
|---|---|---|
| 1. | | |
| 2. | | |

**3.11.    Bankruptcy stays.**

**(a)** Upon confirmation of the plan, the automatic stay of 11 U.S.C. § 362(a) and the co-debtor stay of 11 U.S.C. § 1301(a) are (1) terminated to allow the holder of a Class 3 secured claim to exercise its rights against its collateral; (2) modified to allow the holder of a Class 4 secured claim to exercise its rights against its collateral and any nondebtor in the event of a default under applicable law or contract; and (3) modified to allow the nondebtor party to an unexpired lease that is in default and rejected in section 4 of this plan to obtain possession of leased property, to dispose of it under applicable law, and to exercise its rights against any nondebtor.

**(b)** Secured claims not listed as Class 1, 2, 3, or 4 claims are not provided for by this plan.  While this may be cause to terminate the automatic stay, such relief must be separately requested by the claim holder.

**(c)** If, after confirmation of the plan, the court grants a motion to terminate the automatic stay to permit a Class 1

or 2 claim holder to proceed against its collateral, unless the court orders otherwise, Trustee shall make no further payments on account of such claim and any portion of such claim not previously satisfied under this plan shall be satisfied as a Class 3 claim.  Any deficiency remaining after the creditor's disposition of its collateral shall be satisfied as a Class 7 unsecured claim subject to the filing of a proof of claim.

## D.  Unsecured Claims

**3.12.** **Priority claims.**  Class 5 consists of unsecured claims entitled to priority pursuant to 11 U.S.C. § 507, such as taxes, approved administrative expenses, and domestic support obligations.

(a) Priority claims other than domestic support obligations will be paid in full except to the extent the claim holder has agreed to accept less.  When the claim holder has agreed to accept less than payment in full, the claim holder and the treatment of the claim shall be specified in section 7, the Nonstandard Provisions.

(b) Priority claims that are domestic support obligation shall be paid in full except to the extent 11 U.S.C. § 1322(a)(4) is applicable.  When section 1322(a)(4) is applicable,  the claim holder and the treatment of the claim shall be specified in section 7, the Nonstandard Provisions.

(c)  Debtor estimates that all priority claims, not including those identified in section 7, total $ _____.

**3.13.** **Class 6 includes designated nonpriority unsecured claims**, such as co-signed unsecured debts, that will be treated differently than the other nonpriority unsecured claims provided for in Class 7.  The claim holder of each Class 6 claim and the treatment of each claim shall be specified in section 7, the Nonstandard Provisions.

**3.14.** **Class 7 consists of all other nonpriority unsecured claims** not provided for in Class 6.  These claims will receive no less than a _____% dividend.  These claims, including the under-collateralized portion of secured claims not entitled to priority, total approximately $ _____.

## Section 4.  Executory Contracts And Unexpired Leases

**4.01.**  Debtor assumes the executory contracts and unexpired leases listed below.  Debtor shall pay directly to the other party to the executory contract or unexpired lease, before and after confirmation of this plan and whether or not a proof of claim is filed, all post-petition monthly payments required by the lease or contract.  Unless a different treatment is required by 11 U.S.C. § 365(b)(1) and is set out in section 7, the Nonstandard Provisions, pre-petition arrears shall be paid in full.  Trustee shall pay the monthly dividend specified in the table below on account of those arrears.

**4.02.**  Any executory contract or unexpired lease not listed in the table below is rejected.

| Name of Other Party to Executory Contract/ Unexpired Lease | Post-Petition Monthly Payment | Pre-petition Arrears | Arrearage Dividend |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| | | Total  $ | |

## Section 5.  Payment of Claims and Order of Distribution

**5.01.**  After confirmation, payments by Trustee to holders of allowed claims and approved expenses will be made monthly.

**5.02.** **Distribution of plan payment.**

(a) At a minimum, each monthly plan payment must be sufficient to pay in full: (i) Trustee's fees; (ii) post-petition monthly payments due on Class 1 claims; (iii) the monthly dividend specified in section 3.06 for administrative expenses; and (iv) the monthly dividends payable on account of Class 1 arrearage claims, Class 2 claims, and executory contract and unexpired lease arrearage claims.

(b) If the amount paid by Debtor is insufficient to pay all of the minimum dividends required by section 5.02(a), Trustee shall pay, to the extent possible, such fees, payments, expenses, and claims in the order specified in section 5.02(a)(i) through (iv).  If the amount paid by Debtor is insufficient to pay all dividends due on account of fees, payments, expenses, and claims within a subpart of section 5.02(a), no dividend shall be paid on account of any of the fees, payments, expenses, and claims within such subpart except as permitted by section 3.07(b)(3).

(c) Each month, if funds remain after payment of all monthly dividends due on account of the fees, payments, expenses, and claims specified in section 5.02(a)(i) through (iv), the remainder shall be paid pro rata, first to holders of Class 1 arrearage claims, Class 2 claims, and executory contract and unexpired lease arrearage claims; second to Class 5 priority claims; third to Class 6 unsecured claims; and fourth to Class 7 unsecured claims.

(d) Over the plan's duration, distributions must equal the total dividends required by sections 3.04, 3.06, 3.07, 3.08, 3.12, 3.13, 3.14, and 4.01.  The case may be dismissed if Debtor's plan payments are or will be insufficient to pay these dividends.

**5.03.**   **Priority of payment among administrative expenses.**   The portion of the monthly plan payment allocated in section 3.06 for administrative expenses, shall be distributed first to any former chapter 7 trustee up to the monthly amount required by 11 U.S.C. § 1326(b)(3)B), and second to holders of approved administrative expenses on a pro rata basis.

## Section 6.  Miscellaneous Provisions

**6.01.**   **Vesting of property.**   Property of the estate [**choose one**] shall ☐ shall not ☐ revest in Debtor upon confirmation of the plan.  In the event the case is converted to a case under Chapters 7, 11, or 12 of the Bankruptcy Code or is dismissed, the property of the estate shall be determined in accordance with applicable law.

**6.02.**   **Debtor's duties.**   In addition to the duties imposed upon Debtor by the Bankruptcy Code, the Bankruptcy Rules, and applicable nonbankruptcy law, the court's Local Bankruptcy Rules impose additional duties on Debtor, including without limitation, obtaining prior court authorization prior to transferring property or incurring additional debt, maintaining insurance, providing Trustee copies of tax returns, W-2 forms, 1099 forms, and quarterly financial information regarding Debtor's business or financial affairs, and providing Trustee not later than the 14 days after the filing of the case with the Domestic Support Obligation Checklist for each domestic support obligation and a Class 1 Checklist and Authorization to Release Information for each Class 1 claim.

**6.03.**   **Post-Petition claims.**   If a proof of claim is filed and allowed for a claim of the type described in 11 U.S.C. § 1305(a), this plan may be modified to provide for such claim.

**6.04.**   **Remedies upon default.**   If Debtor defaults under this plan, or if the plan will not be completed within six months of its stated term, not to exceed 60 months, Trustee or any other party in interest may request appropriate relief by filing a motion and setting it for hearing pursuant to Local Bankruptcy Rule 9014-1.  This relief may consist of, without limitation, dismissal of the case, conversion of the case to chapter 7, or relief from the automatic stay to pursue rights against collateral.

## Section 7.  Nonstandard Provisions

Debtor may propose nonstandard provisions that modify the preprinted text of this form plan.  All nonstandard plan provisions shall be on a separate piece of paper appended to this plan.  Each nonstandard provision shall be identified by a section number beginning with section 7.01 and indicate which section(s) of the form plan are modified by the nonstandard provision.  Nonstandard provisions placed elsewhere are void.  The signatures below are certifications by Debtor and Debtor's attorney that this plan form has not been altered and that all nonstandard provisions are in section 7.

Dated:                                     /s/
                                          _____
                                          Debtor                                    *(Debtor's printed name)*

Dated:                                     /s/
                                          _____
                                          Debtor                              *(Joint debtor's printed name, if applicabl*

Dated:                                     /s/
                                          _____
                                          Debtor's Attorney

# EXHIBIT C

| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| ☐ *Debtor appearing without attorney*<br>☐ *Attorney for Debtor* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  \*\*SELECT DIVISION\*\***

| List all names (including trade names) used by Debtor within the last 8 years.<br><br>In re: | CASE NUMBER:<br>CHAPTER 13 |
|---|---|
| | **CHAPTER 13 PLAN**<br><br>☐ Original<br>☐ 1st Amended\*<br>☐ 2nd Amended\*<br>☐ ___ Amended\*<br>\*list below which sections have been changed:<br><br><br>[FRBP 3015(b); LBR 3015-1] |
| | **11 U.S.C. SECTION 341(a) CREDITORS' MEETING:**<br>Date:<br>Time:<br>Address:<br><br><br>**PLAN CONFIRMATION HEARING: [LBR 3015-1(d)]**<br>Date:<br>Time:<br>Address: |
| Debtor(s). | |

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure.  "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## Part 1: PRELIMINARY INFORMATION

**TO DEBTOR (the term "Debtor" includes and refers to both spouses as Debtors in a joint bankruptcy case):** This Chapter 13 Plan (Plan) sets out options that may be appropriate in some cases, but the presence of an option in this Plan does not indicate that the option is appropriate, or permissible, in your situation. A Plan that does not comply with local rules and judicial rulings may not be confirmable.  You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

**TO ALL CREDITORS:**  This Plan is proposed by Debtor and your rights may be affected by this Plan. Your claim may be reduced, modified, or eliminated.  You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

***PLEASE NOTE THAT THE PROVISIONS OF THIS PLAN MAY BE MODIFIED BY ORDER OF THE COURT.***

If you oppose this Plan's treatment of your claim or any provision of this Plan, you or your attorney must file a written objection to confirmation of the Plan at least 14 days before the date set for the hearing on confirmation. However, the amounts listed on a proof of claim for an allowed secured or priority claim control over any contrary amounts listed in the Plan. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. *See* FRBP 3015. In addition, you must file a timely proof of claim in order to be paid under any plan. *See* LBR 3015-1 and FRBP 3002(a).

Defaults will be cured using the interest rate set forth below in the Plan.

**The following matters may be of particular importance to you:**

***Debtor must check one box on each line to state whether or not this Plan includes each of the following items. If an item is checked as "Not included," if both boxes are checked, or neither box is checked, the item will be ineffective if set out later as a provision in this Plan.***

1.1   **Valuation of property and avoidance of a lien on property of the bankruptcy estate, set out in Class 3B and/or Section IV (11 U.S.C. § 506(a) and (d)):**
☐ **Included**   ☐ **Not included**

1.2   **Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section IV (11 U.S.C. § 522(f)):**
☐ **Included**   ☐ **Not included**

1.3   **Less than full payment of a domestic support obligation that has been assigned to a governmental unit, pursuant to 11 U.S.C. §1322(a)(4).  This provision requires that payments in Part 2 Section I.A. be for a term of 60 months:**
☐ **Included**   ☐ **Not included**

1.4   **Other Nonstandard Plan provisions, set out in Section IV:**
☐ **Included**   ☐ **Not included**

**ALL CREDITORS ARE REQUIRED TO FILE A PROOF OF CLAIM IN ORDER TO HAVE AN ALLOWED CLAIM, EXCEPT AS PROVIDED IN FRBP 3002(a).**    A Debtor whose Plan is confirmed may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

Regardless of whether this Plan treats a claim as secured or unsecured, any lien securing such claim is not avoided other than as provided by law or order of the court.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                          Page 2                                    **F 3015-1.01.CHAPTER13.PLAN**

## Part 2: PLAN TERMS

Debtor proposes the following Plan terms and makes the following declarations:

### Section I.  PLAN PAYMENT AND LENGTH OF PLAN

A. Monthly Plan Payments will begin 30 days from the date the bankruptcy petition was filed.  If the payment due date falls on the 29th, 30th, or 31st day of the month, payment is due on the 1st day of the following month (LBR 3015-1(k)(1)(A)).

   Payments by Debtor of:

   $_____ per month for months 1 through _____ totaling $_____.

   $_____ per month for months _____ through _____ totaling $_____.

   $_____ per month for months _____ through _____ totaling $_____.

   $_____ per month for months _____ through _____ totaling $_____.

   For a total plan length of _____ months totaling $_____.

B. Nonpriority unsecured claims.

   The total amount of estimated non-priority unsecured claims is $_____.

   1. Unless otherwise ordered by the court, after Class 1 through Class 4 creditors are paid, allowed nonpriority unsecured claims that are not separately classified (Class 5) will be paid *pro rata* per the option checked below. If both options below are checked, the option providing the largest payment will be effective.

      a. ☐ **"Percentage" plan:** _____% of the total amount of these claims, for an estimated total payment of $_____.

      b. ☐ **"Residual" plan:** The remaining funds, after disbursements have been made to all other creditors provided for in this Plan, estimated to pay a total of $ _____ and _____% to claims in Class 5. The amount distributed to Class 5 claims may be less than the amount specified here depending on the amount of secured and priority claims allowed.

   2. Minimum Plan payments.  Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least the greater of the following amounts:

      a. the sum of $_____, representing the liquidation value of the estate in a hypothetical Chapter 7 case under 11 U.S.C. § 1325(a)(4), or

      b. if Debtor has above-median income and otherwise subject to 11 U.S.C. § 1325(b), the sum of $_____, representing all disposable income payable for 60 months under the means test.

C. Income tax refunds.  Debtor will provide the Chapter 13 Trustee with a copy of each income tax return filed during the Plan term within 14 days of filing the return and, unless the Plan provides 100% payment to nonpriority unsecured creditors (Class 5), will turn over to the Chapter 13 Trustee all federal and state income tax refunds received for the term of the plan. The Debtor may retain a total of $500 of the sum of the federal and state tax refunds for each tax year. Income tax refunds received by the debtor and turned over to the Chapter 13 Trustee or directly turned over to the Chapter 13 Trustee by the taxing authorities do not decrease the total amount of payments stated in Section I.A., above. The refunds are pledged to the plan in addition to the amounts stated in Section I.A. and can be used by the Chapter 13 Trustee to increase the percentage paid to general unsecured creditors without further order of the Bankruptcy Court.

D. In the event that secured creditor(s) file a Notice of Postpetition Fees and Costs pursuant to FRBP 3002.1(c), the Chapter 13 Trustee is authorized, but not required, to commence paying those charges 90 days after that notice is filed, unless within that time the Debtor contests those charges by filing a motion to determine payment under FRBP 3002.1(e) or agrees to pay those charges by filing a motion to modify this Plan.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                          Page 3                                          **F 3015-1.01.CHAPTER13.PLAN**

E.  Debtor must make preconfirmation adequate protection payments for any creditor that holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in this Plan.  Debtor must make preconfirmation adequate protection payments and preconfirmation lease payments to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Each adequate protection payment or preconfirmation lease payment will accrue beginning the 30th day from the date of filing of the case.  The Chapter 13 Trustee must deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured creditor(s) at the next disbursement or as soon as practicable after the payment is received and posted to the Chapter 13 Trustee's account.  The Chapter 13 Trustee will collect his or her statutory fee on all receipts made for preconfirmation adequate protection payments or preconfirmation lease payments.

F.  Debtor must not incur debt greater than $1,000 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

G.  The Chapter 13 Trustee is authorized to disburse funds after the date Plan confirmation is announced in open court.

H.  Debtor must file timely all postpetition tax returns and pay timely all postconfirmation tax liabilities directly to the appropriate taxing authorities.

I.  Debtor must pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the bankruptcy petition.

J.  If the Plan proposes to avoid a lien of a creditor, the Chapter 13 Trustee must not disburse any payments to that creditor on that lien until the Plan confirmation order is entered.

K.  Debtor must pay all required ongoing property taxes and insurance premiums for all real and personal property that secures claims paid under the Plan.

**Section II.  ORDER OF PAYMENT OF CLAIMS; CLASSIFICATION AND TREATMENT OF CLAIMS:**

Except as otherwise provided in this Plan, the Chapter 13 Trustee must disburse all available funds for the payment of claims as follows:

**A.  ORDER OF PAYMENT OF CLAIMS:**

**1st**  If there are Domestic Support Obligations, the order of priority will be:

(a)  Domestic Support Obligations and the Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(b)  Administrative expenses (Class 1(a)) until paid in full;

If there are no Domestic Support Obligations, the order of priority will be:

(a)  The Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(b)  Administrative expenses (Class 1(a)) until paid in full.

**2nd**  Subject to the 1st paragraph, *pro rata* to all secured claims and all priority unsecured claims until paid in full except as otherwise provided in this Plan.

**3rd**  Non-priority unsecured creditors will be paid *pro rata* except as otherwise provided in this Plan.  No payment will be made on nonpriority unsecured claims until all the above administrative, secured and priority claims have been paid in full unless otherwise provided in this Plan.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                      Page 4                                      **F 3015-1.01.CHAPTER13.PLAN**

B.   CLASSIFICATION AND TREATMENT OF CLAIMS:

| CLASS 1 | | | |
|---|---|---|---|
| **ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507** | | | |

Class 1 claims will be paid in full pro rata.  Any treatment that proposes to pay claims in Class 1(a) or 1(b) less than in full must be agreed to in writing by the holder of each such claim and specifically addressed in Section IV.D.

Unless otherwise ordered by the court, the claim amount stated on a proof of claim, and the dollar amount of any allowed administrative expense, controls over any contrary amount listed below.

| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | TOTAL PAYMENT |
|---|---|---|---|
| **a.   Administrative Expenses** | | | |
| (1)   Chapter 13 Trustee's Fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | |
| (2)   Attorney's Fees | | | |
| (3)   Chapter 7 Trustee's Fees | | | |
| (4)   Other | | | |
| (5)   Other | | | |
| **b.   Other Priority Claims** | | | |
| (1)   Internal Revenue Service | | 0.00% | |
| (2)   Franchise Tax Board | | 0.00% | |
| (3)   Domestic Support Obligation | | 0.00% | |
| (4)   Other | | 0.00% | |
| **c.   Domestic Support Obligations that have been assigned to a governmental unit and are not to be paid in full in the Plan pursuant to 11 U.S.C. §1322(a)(4) (this provision requires that payments in Part 2 Section I.A. be for a term of 60 months)** *(specify creditor name)*: | | | |
| | | 0.00% | 0.00% |
| | | 0.00% | 0.00% |

☐  See attachment for additional claims in Class 1.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                    Page 5                          **F 3015-1.01.CHAPTER13.PLAN**

| CLASS 2 |
|---|

**CLAIMS SECURED SOLELY BY PROPERTY THAT IS DEBTOR'S PRINCIPAL RESIDENCE
ON WHICH OBLIGATION MATURES <u>AFTER</u> THE FINAL PLAN PAYMENT IS DUE**

*Check one.*

☐   None.  *If "None" is checked, the rest of this form for Class 2 need not be completed.*

☐   Debtor will maintain and make the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. Unless otherwise ordered by the court, these payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure the prepetition arrearages, if any, on a listed claim through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated.

The arrearage amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | POST-PETITION PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
|  |  |  | 0.00% |  |  | ☐ Trustee<br>☐ Debtor |
|  |  |  | 0.00% |  |  | ☐ Trustee<br>☐ Debtor |
|  |  |  | 0.00% |  |  | ☐ Trustee<br>☐ Debtor |

☐ See attachment for additional claims in Class 2.

| CLASS 3A |
|---|

**UNIMPAIRED CLAIMS TO BE PAID DIRECTLY BY DEBTOR**

*Check one.*

☐   **None.** *If "None" is checked, the rest of this form for Class 3A need not be completed.*

☐   Debtor will make regular payments, including any preconfirmation payments, directly to the following creditors in accordance with the terms of the applicable contract (Include Creditor Name and Last 4 Digits of Account Number):

_____
_____
_____ .

The claims of these creditors are unimpaired under the plan.

☐ See attachment for additional claims in Class 3A.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                   Page 6                    **F 3015-1.01.CHAPTER13.PLAN**

| CLASS 3B |
|---|

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE BIFURCATED AND PAID IN FULL DURING THE TERM OF THIS PLAN.**

*Check one.*

☐   **None.** *If "None" is checked, the rest of this form for Class 3B need not be completed.*

☐   Debtor proposes:

**Bifurcation of Claims - Dollar amounts/lien avoidance**.  Except as provided below regarding bifurcation of claims into a secured part and an unsecured part, the claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

(a)   <u>Bifurcated claims - secured parts</u>:  Debtor proposes that, for the purposes of distributions under this Plan, the dollar amount of secured claims in this Class 3B should be as set forth in the column headed "Secured Claim Amount."  For that dollar amount to be binding on the affected parties, either

(i)   Debtor must obtain a court order granting a motion fixing the dollar amount of the secured claim and/or avoiding the lien, or

(ii)   Debtor must complete and comply with Part 2 Section IV.C., so that the Plan itself serves as such a motion; the "Included" boxes must be checked in Part 1 Paragraphs 1.1 and/or 1.2 (indicating that this Plan includes valuation and lien avoidance, and/or avoidance of a judicial lien or nonpossessory, nonpurchase-money lien in Section IV.C.); and this Plan must be confirmed - if any one of those conditions is not satisfied, then the claim will not be bifurcated into a secured part and an unsecured part pursuant to this sub-paragraph.

(b)   <u>Bifurcated claims - unsecured parts</u>:  Any allowed claim that exceeds the amount of the secured claim will be treated as a nonpriority unsecured claim in Class 5 below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|---|
| | | | | 0.00% | | |
| | | | | 0.00% | | |

☐  See attachment for additional claims in Class 3B.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                        Page 7                              **F 3015-1.01.CHAPTER13.PLAN**

| CLASS 3C |
|---|

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE PAID IN FULL DURING THE TERM OF THIS PLAN (WITHOUT BIFURCATION), INCLUDING CURE OF ARREARS, IF APPLICABLE.**

*Check all that apply.*

☐  **None.** *If "None" is checked, the rest of this form for Class 3C need not be completed.*

☐  Debtor proposes to treat the claims listed below as fully secured claims on the terms set forth below.  These claims will not be bifurcated.  The claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

| IMPAIRED CLAIMS PAID THROUGH THE PLAN BY THE TRUSTEE | | | | | |
|---|---|---|---|---|---|
| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
| | | | 0.00% | | |

| CURE AND MAINTAIN CLAIMS |
|---|

☐  Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | ONGOING PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| | | | 0.00% | | | ☐ Trustee<br>☐ Debtor |

☐ See attachment for additional claims in Class 3C.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                     Page 8                          **F 3015-1.01.CHAPTER13.PLAN**

| CLASS 3D |
|---|

**SECURED CLAIMS EXCLUDED FROM 11 U.S.C. §506**

*Check one.*

☐ **None.** *If "None" is checked, the rest of this form for Class 3D need not be completed.*

☐ The claims listed below were either:

1. Incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of Debtor, or

2. Incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under this Plan with interest at the rate stated below.  The claim amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| | | | 0.00% | | |
| | | | 0.00% | | |
| | | | 0.00% | | |

☐ See attachment for additional claims in Class 3D.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                        Page 9                                        **F 3015-1.01.CHAPTER13.PLAN**

| CLASS 4 |
|---|

**OTHER CLAIMS ON WHICH THE LAST PAYMENT ON A CLAIM IS DUE
AFTER THE DATE ON WHICH THE FINAL PLAN PAYMENT IS DUE,
WHICH ARE PROVIDED FOR UNDER 11 U.S.C. §1322(b)(5)**

*Check one.*

☐   None.  *If "None" is checked, the rest of this form for Class 4 need not be completed.*

☐   Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below.  Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | ONGOING PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| | | | 0.00% | | | ☐ Trustee<br>☐ Debtor |
| | | | 0.00% | | | ☐ Trustee<br>☐ Debtor |
| | | | 0.00% | | | ☐ Trustee<br>☐ Debtor |

☐   See attachment for additional claims in Class 4.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                        Page 10                                **F 3015-1.01.CHAPTER13.PLAN**

| CLASS 5A |
|---|
| **NON-PRIORITY UNSECURED CLAIMS NOT SEPARATELY CLASSIFIED** |
| Allowed nonpriority unsecured claims not separately classified must be paid pursuant to Section I.B. above. |

**SEPARATE CLASSIFICATION:**

***Check all that apply if Debtor proposes any separate classification of nonpriority unsecured claims.***

☐ **None.** *If "None" is checked, the rest of this form for Class 5 need not be completed.*

| CLASS 5B |
|---|

☐ **Maintenance of payments**. Debtor will maintain and make the contractual installment payments on the unsecured claims listed below on which the last payment is due after the final Plan payment. The contractual installment payments will be disbursed by Debtor.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|
|  |  | 0.00% |  |  |
|  |  | 0.00% |  |  |

| CLASS 5C |
|---|

☐ **Other separately classified nonpriority unsecured claims.**

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT TO BE PAID ON THE CLAIM | INTEREST RATE | ESTIMATED TOTAL AMOUNT OF PAYMENTS |
|---|---|---|---|---|
|  |  |  | 0.00% |  |
|  |  |  | 0.00% |  |

☐ See attachment for additional claims in Class 5.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                        Page 11                                **F 3015-1.01.CHAPTER13.PLAN**

| CLASS 6 |
|---|

**SURRENDER OF COLLATERAL**

*Check one.*

☐ **None.** *If "None" is checked, the rest of this form for Class 6 need not be completed.*

☐ Debtor elects to surrender to each creditor listed below the collateral that secures the creditor's claim. Debtor requests that upon confirmation of the Plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. §1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Class 5 above.

| Creditor Name: | Description: |
|---|---|
| | |
| | |

☐ See attachment for additional claims in Class 6.

| CLASS 7 |
|---|

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Any executory contracts or unexpired leases not listed below are deemed rejected.

*Check one.*

☐ **None.** *If "None" is checked, the rest of this form for Class 7 need not be completed.*

☐ The executory contracts and unexpired leases listed below are treated as specified (*identify the contract or lease at issue and the other party(ies) to the contract or lease*):

**Creditor Name:** _____

**Description:** _____

☐ Rejected        ☐ Assumed; cure amount (if any): $_____, to be paid over _____ months

**Creditor Name:** _____

**Description:** _____

☐ Rejected        ☐ Assumed; cure amount (if any): $_____, to be paid over _____ months

**Payments to be cured within _____ months of filing of the bankruptcy petition. All cure payments will be made through disbursements by the Chapter 13 Trustee.**

☐ See attachment for additional claims in Class 7.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

April 2019                                    Page 12                         **F 3015-1.01.CHAPTER13.PLAN**

## Section III.  PLAN SUMMARY

| | |
|---|---|
| CLASS 1a | |
| CLASS 1b | |
| CLASS 1c | |
| CLASS 2 | |
| CLASS 3B | |
| CLASS 3C | |
| CLASS 3D | |
| CLASS 4 | |
| CLASS 5A | |
| CLASS 5C | |
| CLASS 7 | |
| SUB-TOTAL | |
| CHAPTER 13 TRUSTEE'S FEE (Estimated 11% unless advised otherwise) | |
| TOTAL PAYMENT | |

## Section IV.  NON-STANDARD PLAN PROVISIONS

☐  **None.**  *If "None" is checked, the rest of Section IV need not be completed.*

**Pursuant to FRBP 3015(c), Debtor must set forth all nonstandard Plan provisions in this Plan in this separate Section IV of this Plan and must check off the "Included" box or boxes in Paragraphs 1.1, 1.2, 1.3 and/or 1.4 of Part 1 of this Plan.  Any nonstandard Plan provision that does not comply with these requirements is <u>ineffective</u>.**  A nonstandard Plan provision means any Plan provision not otherwise included in this mandatory Chapter 13 Plan form, or any Plan provision deviating from this form.

**The nonstandard Plan provisions seeking modification of liens and security interests address only those liens and security interests known to Debtor, and known to be subject to avoidance, and all rights are reserved as to any matters not currently known to Debtor.**

☐  A.  <u>Debtor's Intent to File Separate Motion to Value Property Subject to Creditor's Lien or Avoid Creditor's Lien [11 U.S.C. § 506(a) and (d)]</u>.  Debtor will file motion(s) to value real or personal property of the bankruptcy estate and/or to avoid a lien pursuant to 11 U.S.C § 506(a) and (d), as specified in **Attachment A**.

☐  B.  <u>Debtor's Intent to File Separate Motion to Avoid Creditor's Judicial Lien or Nonpossessory, Nonpurchase Security Interest [11 U.S.C. § 522(f)]</u>.  Debtor will file a Motion to avoid a judicial lien or nonpossessory, nonpurchase-money security interest, on real or personal property of the bankruptcy estate listed below pursuant to 11 U.S.C § 522(f).  If the court enters an order avoiding a lien under 11 U.S.C. § 522(f), the Chapter 13 Trustee will not pay any claim filed based on that lien as a secured claim.

**Name of Creditor Lienholder/Servicer:** _____

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** _____

_____

**Name of Creditor Lienholder/Servicer:** _____

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** _____

_____

☐  See attachment for any additional liens and security interests to be avoided by separate 11 U.S.C. § 522(f) motion.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                            Page 13                                    **F 3015-1.01.CHAPTER13.PLAN**

☐ C.   <u>Debtor's Request in this Plan to Modify Creditor's Secured Claim and Lien</u>.  Debtor proposes to modify the following secured claims and liens in this Plan <u>without</u> a separate motion or adversary proceeding - this Plan will serve as the motion to value the collateral and/or avoid the liens as proposed below.  **To use this option, Debtor must serve this Plan, LBR Form F 3015-1.02.NOTICE.341.LIEN.CONFRM and all related exhibits as instructed in that form. Note: Not all Judges will grant motions to value and/or avoid liens through this Plan. Please consult the specific Judge's Instructions/Procedures on the court's website for more information.**

---

### DEBTOR'S REQUEST TO MODIFY CREDITOR'S SECURED CLAIM AND LIEN

**TO CREDITOR LIENHOLDER/SERVICER** _____

_____

☐   Real property collateral (street address and/or legal description or document recording number, including county of recording):

_____
(*attach page with legal description of property or document recording number as appropriate*).

☐   Other collateral (*add description such as judgment date, date and place of lien recording, book and page number*):

_____

☐   11 U.S.C. § 522(f) – Debtor seeks avoidance of your lien(s) on the above described collateral effective immediately upon issuance of the order confirming this Plan.

☐   11 U.S.C. § 506(a) and (d) – Debtor seeks avoidance of your lien(s) on the above described collateral that will be effective upon the earliest to occur of either payment of the underlying debt determined under nonbankruptcy law or one of the following:

(*check all that apply and see LBR Form F 4003-2.4.ORDER.AFTERDISCH*):

☐   (1)  discharge under 11 U.S.C. § 1328, or

☐   (2)  Upon completion of all Plan payments.

Value of collateral:  ..................................................................................$_____
Liens reducing equity (to which subject lien can attach):
       $_____ + $_____ + $_____ = $_____)
Exemption (only applicable for lien avoidance under 11 U.S.C. § 522(f)): ……………($_____)

**Wherefore, Debtor requests that this court issue an order granting the foregoing property valuation and/or lien avoidance of the above-listed creditor on the above-described collateral in the form <u>Attachment B, C and/or D</u> to this Plan, as applicable.  (*Debtor must use and attach a separate Attachment B, C and/or D which are also mandatory court forms for modification of each secured claim and lien.*)**

Amount of remaining secured claim (negative results should be listed as $-0-): ..........$_____

*Note:* See other parts of this Plan for the proposed treatment of any remaining secured claim (generally Class 3).

---

☐   See attachment(s) for additional request(s) to modify secured claims and liens by this Plan.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                              Page 14                       **F 3015-1.01.CHAPTER13.PLAN**

☐  D.  **Other Non-Standard Plan Provisions (*use attachment, if necessary*):**

## V. REVESTING OF PROPERTY

Property of the bankruptcy estate will not revest in Debtor until a discharge is granted or the case is dismissed or closed without discharge.  Revesting will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law. After confirmation of this Plan, the Chapter 13 Trustee will not have any further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs.  Prior to any discharge or dismissal, Debtor must seek approval of the court to purchase, sell, or refinance real property.

**By filing this document, the Attorney for Debtor, or Debtor if not represented by an attorney, also certify(ies) that the wording and order of the provisions in this Plan are identical to those contained in the Central District of California Chapter 13 Plan other than any nonstandard Plan provisions included in Section IV.**

Date: _____

_____
Attorney for Debtor

_____
Debtor 1

_____
Debtor 2

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                    Page 15                          **F 3015-1.01.CHAPTER13.PLAN**

# ATTACHMENT A to Chapter 13 Plan/Confirmation Order
## (11 U.S.C. §§ 506: valuation/lien avoidance by separate motion(s))

☐ **None.** *If "None" is checked, the rest of this Attachment A need not be completed.*

**1. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 2nd Lien on 123 Main St.): _____
        _____

**2. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 3rd Lien on 123 Main St.): _____
        _____.

**3. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 4th Lien on 123 Main St.): _____
        _____.

**4. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 2nd Lien on 456 Broadway): _____
        _____.

**5. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 3rd Lien on 456 Broadway): _____
        _____.

**6. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 4th Lien on 456 Broadway): _____
        _____.

**7. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 2nd Lien on 789 Crest Ave.): _____
        _____.

**8. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 3rd Lien on 789 Crest Ave.): _____
        _____.

**9. Creditor Lienholder/Servicer:** _____.
        **Subject Lien** (*e.g.*, 4th Lien on 789 Crest Ave.): _____
        _____.

*(Attach additional pages for more liens/provisions.)*

**CERTIFICATION:** I have prepared this attachment (including any additional pages) for use by the Chapter 13 Trustee. I certify under penalty of perjury under the laws of the United States of America that the information provided in this attachment is accurate to the best of my knowledge after reasonable inquiry, and I acknowledge that the Chapter 13 Trustee has no duty to verify the accuracy of that information.

Executed on (*date*) _____

*Printed Name* _____   *Signature*: _____

☐ Attorney for Debtor or ☐ Debtor appearing without attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                Page 16                                **F 3015-1.01.CHAPTER13.PLAN**

# EXHIBIT D

CSD 1300  [12/01/17]

**United States Bankruptcy Court**
**Southern District of California**

Debtor(s):                                                    Case Number: _____

☐ Check if this is an amended plan, and list below the
   sections of the plan that have been changed.

_____

_____

**Mandatory Chapter 13 Plan**
**Dated:** _____

| Part 1: | Notices |
|---|---|

**To All Parties in Interest:**

> **The court has provided guidelines for use of this form that can be found in CSD 1300A.**

> **This plan does not provide for avoidance of a lien which impairs an exemption. This must be sought by separate motion.**

**To Debtors:**

> **In some places this form provides you with options. You should carefully consider whether you need to elect among the options. If you do, you should carefully consider which option is appropriate.**

> *In the following notice to creditors, you must check each box that applies.*

**To Creditors:**

> **Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.**

> You should read this plan carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

> If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation in accordance with Southern District of California Local Bankruptcy Rule 3015-5 within 7 days after the filing of the Notice of Meeting of Creditors Held and Concluded. Untimely objections may not be considered. Any such objections must be noticed for hearing at least 28 days after filing the objection. The Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015(f). In addition, you may need to file a timely proof of claim in order to be paid under any plan.

> The following matters may be of particular importance. *Debtors must check one box on each line to state whether or not the plan includes each of the following items.  If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.*

| 1.1 | A limit on the amount of a secured claim, set out in § 3.2, which may result in a partial payment or no payment at all to the secured creditor | ☐ Included ☐ Not included |
|---|---|---|
| 1.2 | Nonstandard provisions, set out in Part 9 | ☐ Included ☐ Not included |

CSD 1300 (12/01/17)        **Debtor(s)** _____        **Case Number** _____

| Part 2: | Plan Payments and Length of Plan |
|---|---|

**2.1 Regular payments.**

Debtor(s) will make regular payments to the trustee as follows:

*Complete one.*

$ _____        per month for 36 months (Applicable commitment period for below median debtor(s))

$ _____        per month for 60 months (Applicable commitment period for above median debtor(s))

$ _____        per month _____ months (Despite applicable commitment period of 36 months, debtor(s) seek additional time to cure secured or priority arrearages or to make necessary payments to meet the liquidation test specified in § 5.2.2.)

**2.2 Irregular payments.**

Debtor(s) will change the payment amount at different time periods as follows:

| $ | | per | | from | | to | |
|---|---|---|---|---|---|---|---|

*Insert additional payments as needed.*

**2.3 Manner of payments.**

Regular payments must be made directly to the trustee from future earnings unless the court issues an earnings withholding order. Any other manner of payment must be specified by checking the box below.

☐ Other (specify method of payment): _____ .

CSD 1300 (12/01/17)          Debtor(s) _____          Case Number _____

**2.4 Income tax issues.**

*Check all that apply.*

☐ Debtor(s) will retain any federal or state tax refunds received during the plan term.

☐ Debtor(s) will supply the trustee with a copy of each federal and state tax return filed during the plan term within 14 days of filing the return.

☐ Debtor(s) will turn over to the trustee all federal and state income tax refunds, other than earned income or child care tax credits, received during the plan term.

☐ Debtor(s) will supply the trustee with federal and state tax returns filed during the plan term and will turn over to the trustee a portion of any federal and state income tax refunds received during the plan term as specified below.

**Debtor(s) must not change their withholding exemptions during the plan term unless there is an appropriate change in circumstances and will timely pay all post-confirmation tax liabilities directly to the appropriate taxing authority as they become due.**

**2.5 Additional payments.**

*Check one. If neither box is checked, "None" applies.*

☐ **None.** *If "None" is checked, the rest of § 2.5 need not be completed or reproduced.*

☐ Debtor(s) will make additional payment(s) to the trustee from other sources, as specified below. Describe the source, estimated amount, and date of each anticipated payment.

_____

_____

_____

**2.6 The total amount of estimated payments to the trustee provided for in §§ 2.1 through 2.5 is**
$ _____ .

**Part 3:     Treatment of Secured Claims**

CSD 1300 (12/01/17)        Debtor(s) _____        Case Number _____

**3.1 Maintenance of payments and cure of any default.**

*Check one. <u>If neither box is checked, "None" applies.</u>*

☐ **None.** *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*

☐ The debtor(s) will maintain the contractual installment payments on the claims listed below, with any changes required by the applicable contract, and cure any default in payments on the secured claims listed below. The allowed claim for any arrearage amount will be paid under the plan, with interest, if any, at the rate stated. Unless otherwise ordered by the court, the amounts listed on a proof of claim or amended proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below. A tardily filed proof of claim will be disallowed unless it is estimated below or unless the debtor(s) brings a motion to allow the claim. If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease and all secured claims based on that collateral will no longer be treated by the plan. The final column includes only payments disbursed by the trustee rather than by the debtor.

| Name of creditor with last 4 digits of account number | Collateral | Amount of arrearage | Interest rate on arrearage (if applicable) | Monthly plan payment on arrearage | Estimated total payments by trustee |
|---|---|---|---|---|---|
|  |  | $ | % | $ | $ |
|  |  | $ | % | $ | $ |
|  |  | $ | % | $ | $ |

*Insert additional claims as needed.*

**3.2 Request for valuation of security and claim modification.**

**To determine the proper valuation of real estate secured claims, the debtor(s) must timely file a motion in accordance with Local Bankruptcy Rule 3015-8 in addition to including the creditor in this section of the plan. No such motion is necessary for valuation determinations for personal property secured claims.**

The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 5 of this plan unless the claim is entitled to priority status, in which case it will be provided in Part 4. If the amount of a creditor's secured claim is listed below as having no value, the creditor's allowed claim will be treated in its entirety as an unsecured claim under Part 5 of this plan. Unless otherwise ordered by the court, the amount of the creditor's total claim listed on the proof of claim controls over any contrary amounts listed in this paragraph.

The holder of any claim listed below as having value in the column headed *Amount of secured claim* will retain the lien until the earlier of the following events as applicable to the particular secured creditor: 1) payment of the underlying debt determined under nonbankruptcy law; 2) discharge under 11 U.S.C. § 1328, or 3) completion of payments under the plan if the debtors(s) are not entitled to a discharge. After the date applicable to termination of the lien, it will be released by the creditor unless the claim is a nondischargeable claim owed to a governmental entity. See Local Bankruptcy Rule 3015-8.

CSD 1300 (12/01/17)          Debtor(s) _____          Case Number _____

*Check one.* <u>*If neither box is checked, "None" applies.*</u>

☐   **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*

**The remainder of this paragraph will be effective only if the applicable box in Part 1 of this plan is checked.**

☐   The debtor(s) request that the court determine the value of the secured claims to be treated in the manner below. For each non-governmental secured claim listed below, the debtor(s) state that the value of the secured claim should be as stated below in the column headed *Amount of secured* claim. For secured claims of governmental units, unless otherwise ordered by the court pursuant to a claim objection, the amounts listed in proofs of claim filed in accordance with the Bankruptcy Rules control over any contrary amounts listed below. For each listed secured claim, the controlling amount of the claim will be paid in full under the plan with interest at the rate stated below.

### 3.2.1 Identify creditor and collateral.

| Name of creditor with last 4 digits of account number | Estimated amount of creditor's allowed secured claim | Collateral | Value of collateral | Amount of claims senior to creditor's allowed secured claim |
|---|---|---|---|---|
|  | $ |  | $ | $ |
|  | $ |  | $ | $ |
|  | $ |  | $ | $ |

*Insert additional claims as needed.*

### 3.2.2 Treatment of creditor.

| Name of creditor with last 4 digits of account number | Amount of allowed secured claim | Interest rate as provided by law | Monthly payment to creditor | Estimated total of monthly payments |
|---|---|---|---|---|
|  | $ | % | $ | $ |
|  | $ | % | $ | $ |
|  | $ | % | $ | $ |

*Insert additional claims as needed.*

CSD 1300 (12/01/17)          Debtor(s) _____          Case Number _____

## 3.3 Secured claims excluded from 11 U.S.C. § 506.

*Check one. <u>If neither box is checked, "None" applies.</u>*

☐ **None.** *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*

☐ The claims listed below were either:

(1) secured by real estate and matured pre-petition;

(2) secured by real estate and will mature during the term of the plan;

(3) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s); or

(4) incurred within 1 year of the petition date and secured by a purchase money security interest in any other property of value.

These claims will be paid in full under the plan with interest at the rate stated below. Unless otherwise ordered by the court, the claim amount stated on a proof of claim or modification of a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) controls over any contrary amount listed below. The final column includes only payments disbursed by the trustee rather than by the debtor.

| Name of creditor with last 4 digits of account number | Collateral | Amount of claim | Interest rate | Monthly payment | Estimated total payments |
|---|---|---|---|---|---|
| | | $ | % | $ | $ |
| | | $ | % | $ | $ |
| | | $ | % | $ | $ |
| | | $ | % | $ | $ |

*Insert additional claims as needed.*

**3.4 Surrender of collateral to secured creditors.**

*Check one. <u>If neither box is checked, "None" applies.</u>*

☐ **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*

☐ The debtor(s) elect to surrender to each creditor listed below the collateral that secures the creditor's claim. The stays under 11 U.S.C. § 362(a) and § 1301 will terminate with respect to the surrendered property on the effective date of the plan without the requirement of any further order. The stays will otherwise remain in effect. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 5 below.

| Name of creditor with last 4 digits of account number | Collateral |
|---|---|
| | |
| | |
| | |

**3.5 Intentional exclusion of claim from treatment under the plan.**

*Secured and partially secured creditors who received proper notice but who do not timely file a proof of claim, and who are not provided for elsewhere in the plan, will be considered excluded creditors and treated in this section.*

*Check one. <u>If neither box is checked, "None" applies.</u>*

☐ **None.** *If "None" is checked, the rest of § 3.5 need not be completed or reproduced.*

☐ The claims held by creditors listed below will not be provided for under the plan, and the plan will not affect any of the claimant's rights under applicable law.

| Name of creditor and description of claim | Description of claim |
|---|---|
| | |
| | |
| | |

*Insert additional claims as needed.*

**Part 4:** **Treatment of Priority Claims**

**4.1 Treatment of priority claims.**

All allowed priority claims other than those treated in §§ 4.5 and 4.6 of the plan will be paid in full without interest.

**4.2 Interest exception.**

If the plan provides interest to unsecured nonpriority creditors, that same rate of interest will be paid to all creditors for which interest is not otherwise specifically provided under this plan.

**4.3 Trustee's fees.**

The trustee will receive a fee, the percentage of which is set by the United States Trustee in accordance with applicable law. The trustee's fees are estimated to be _____% of plan payments; and during the plan term, they are estimated to total $ _____.

**4.4 Adequate protection payments.**

The trustee will make pre-confirmation adequate protection payments to secured creditor, identified in General Order 175-F, from plan payments received from the debtor(s), as this order may be amended from time to time.

**4.5 Domestic support obligations.**

*Check one. <u>If neither box is checked, "None" applies.</u>*

☐ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

☐ The allowed priority claims listed below are based on a domestic support obligation owed to a spouse or a dependent as scheduled or in the amount set forth in a proof of claim, which will control in the event of a conflict.

| Name of creditor | Amount of claim to be paid by trustee |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

*Insert additional claims as needed.*

**4.6  Assigned domestic support obligations.**

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4), but not less than the amount that would have been paid on such claim if the estate of the debtor(s) were to be liquidated under chapter 7. See 11 U.S.C. § 1325(a)(4).

CSD 1300 (12/01/17)      **Debtor(s)** _____      **Case Number** _____

| Name of creditor | Amount of claim to be paid by trustee |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

Even if a domestic support obligation claim is not listed here, debtor(s) must nevertheless pay it in full to receive a discharge.

*Insert additional claims as needed.*

## 4.7  Attorney's fees.

The total amount of attorney's fees to be paid under the plan is estimated to be $ _____ . The balance of the fees awarded by court order to professionals for debtor(s) under 11 U.S.C. § 330 will be paid as follows:

*Check one*

☐ on a *priority* basis before other priority claims other than trustee's fees and adequate protection payments.

☐ in installment payments of $ _____ .

## 4.8 Other priority claims and secured portion of federal and state tax claims.

All priority claims identified in 11 U.S.C. § 507, including unsecured priority tax claims, are included in this section of the plan. The secured portion of a federal or state tax claim is also included in this section unless specifically provided for elsewhere in this plan.

*Check one. <u>If neither box is checked, "None" applies.</u>*

☐ **None.** *If "None" is checked, the rest of § 4.8 need not be completed or reproduced.*

☐ The debtor(s) estimate the total amount of priority and secured tax claims to be paid under this section of the plan to be $ _____ . This sum is a total of all of the payments listed below to be paid in accordance with this section. Priority claim payments are owed to the following creditors in the following amounts.

*Check all that apply.*

☐ Internal Revenue Service in the estimated amount of $ _____ .

☐ Franchise Tax Board in the estimated amount of $ _____ .

☐ California Department of Tax and Fee Administration in the estimated amount of $ _____ .

☐ Employment Development Department in the estimated amount of $ _____ .

☐ County Property Tax Assessor (not real property taxes) in the estimated amount of $ _____ .

☐ Other in the estimated amount of $ _____ .

CSD 1300 (12/01/17)      **Debtor(s)** _____      **Case Number** _____

| Part 5: | Treatment of Nonpriority Unsecured Claims |
|---------|-------------------------------------------|

**5.1 General.**

Nonpriority unsecured claims will be paid to the extent allowed as specified in this Part.

**5.2 Nonpriority unsecured claims not separately classified.**

Allowed nonpriority unsecured claims that are not separately classified in this plan will be paid, pro rata, all funds remaining after payment of all other creditors provided under the plan. Payments to unsecured creditors will be allowed to the extent paid if an allowed amended, late filed, or late added claim reduces the amount available to unsecured creditors under this section.

**5.2.1 Projected payment to nonpriority unsecured creditors.**

Based upon the total payments to the trustee listed in § 2.6 of the plan, minus the payments under the plan on the claims scheduled by the debtor(s) that are provided for in §§ 3.1 through 3.3, Part 4, §§ 5.3 through 5.5, and Part 6 of the plan, the estimated payment to allowed nonpriority unsecured claims not separately classified under the plan is $ _____ . This amount will be shared on a pro-rata basis on these claims. This amount will not be reduced by claims arising under 11 U.S.C. § 1305 and §§ 507(a)(1)(A) and (B) that are not fully addressed in the plan, but may otherwise increase or decrease.

**5.2.2 Required payment to nonpriority unsecured creditors under the liquidation test.**

If the estate of the debtor(s) were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately $ _____ . The total of the payments on allowed nonpriority unsecured claims will be made in at least this amount, and debtor(s) will be required to make payments in addition to those specified in Part 2 to prevent the plan from going into default.

**5.3 Interest on allowed nonpriority unsecured claims not separately classified.**

*Check one. If neither box is checked, "None" applies.*

☐ **None.** *If "None" is checked, the rest of § 5.3 need not be completed or reproduced.*

☐ Once nonpriority unsecured claims are paid 100% without interest, accrued simple interest at an annual percentage rate of _____% calculated as of the petition date will be paid to the extent of available funds.

**5.4 Non-filing co-debtor claim treatment for maintenance of payments and cure of any default on nonpriority unsecured claims.**

*Check one. If neither box is checked, "None" applies.*

☐ **None.** *If "None" is checked, the rest of § 5.4 need not be completed or reproduced.*

☐ The debtor(s) will maintain the contractual installment payments and cure any default in payments on the unsecured claims listed below on which the last payment is due after the final plan payment. The allowed claim for the arrearage amount will be paid under the plan. Filed proof of claim amounts will control over scheduled amounts of claims.

CSD 1300 (12/01/17)          **Debtor(s)** _____          **Case Number** _____

| Name of creditor with last 4 digits of account number | Estimated arrearage | Interest rate on arrearage |
|---|---|---|
| _____ | $ _____ | _____ % |
| _____ | $ _____ | _____ % |
| _____ | $ _____ | _____ % |

*Insert additional claims as needed.*

**5.5 Other separately classified nonpriority unsecured claims.**

*Check one. If neither box is checked, "None" applies.*

☐ **None.** *If "None" is checked, the rest of § 5.5 need not be completed or reproduced.*

☐ The **nonpriority** unsecured allowed claims listed below are separately classified and will be treated as follows:

| Name of creditor | Basis for separate classification and treatment | Amount of claim to be paid over life of plan | Interest rate (if applicable) |
|---|---|---|---|
| _____ | _____ | $ _____ | _____ % |
| _____ | _____ | $ _____ | _____ % |
| _____ | _____ | $ _____ | _____ % |

*Insert additional claims as needed.*

CSD 1300 (12/01/17)        **Debtor(s)** _____        **Case Number** _____

| Part 6: | Executory Contracts and Unexpired Leases |
|---|---|

The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected.

*Check one. If neither box is checked, "None" applies.*

☐ **None.** *If "None" is checked, the rest of § 6.1 need not be completed or reproduced.*

☐ **Assumed items.** The final column includes only payments disbursed by the trustee rather than by the debtor(s).

| Name of creditor | Property description | Treatment (Refer to other plan section if applicable) | Current installment payment (Disbursed by Debtor(s)) | Amount of arrearage to be paid by trustee |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

*Insert additional contracts or leases as needed.*

| Part 7: | Order of Distribution of Trustee Payments |
|---|---|

Trustee will have discretion to determine the order of distribution within the requirements of applicable law and whether to reserve payment to claims that are subject to a pending objection.

| Part 8: | Vesting of Property of the Estate |
|---|---|

Property of the estate will not revest in the debtor(s) until a Chapter 13 discharge is granted or the case is dismissed or closed without a Chapter 13 discharge. Before then, the debtor(s) must seek approval of the court to purchase, sell, or refinance property of a material value, or to enter into loan modifications. Revestment will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law.

CSD 1300 (12/01/17)        **Debtor(s)** _____        **Case Number** _____

| Part 9: | Nonstandard Plan Provisions |
|---|---|

Check "None" or List Nonstandard Plan Provisions

☐ **None.** *If "None" is checked, the rest of Part 9 need not be completed or reproduced.*

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below. A nonstandard provision is a provision not otherwise included in the Official Form or deviating from it. Nonstandard provisions set out elsewhere in this plan are ineffective.*

***The following plan provisions will be effective only if there is a check in the box "Included" in § 1.2.***

_____

_____

_____

_____

_____

| Part 10: | Signatures |
|---|---|

**Signatures of Debtor(s) and Debtor(s)' Attorney**

*If the Debtor(s) do not have an attorney, the Debtor(s) must sign below; otherwise the Debtor(s)' signatures are optional. The attorney for the Debtor(s), if any, must sign below.*

✗ _____        ✗ _____
   Signature of Debtor 1           Signature of Debtor 2

   Executed on _____           Executed on _____
           MM / DD / YYYY                   MM / DD / YYYY

✗ _____        Date _____
   Signature of Attorney for Debtor(s)             MM / DD / YYYY

By filing this document, the Debtor(s), if not represented by an attorney, or the Attorney for Debtor(s) also certify(ies) that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in CSD 1300, other than any nonstandard provisions included in Part 9.

# EXHIBIT E

1   Sean Ferry (SBN 310347)
    sferry@rasflaw.com
2   **ROBERTSON, ANSCHUTZ & SCHNEID**
    7676 Hazard Center Drive, Suite 500
3   San Diego, CA 92108
    Telephone: (561) 241-6901 Ext. 2036
4
    Attorneys for Creditor
5   U.S. Bank National Association, As Trustee For C-
    Bass Mortgage Loan Asset-Backed Certificates,
6   Series 2007-CB4
7
                     **UNITED STATES BANKRUPTCY COURT**
8
              **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**
9

| 10   In re | Case No. 19-42210 |
|---|---|
| 11   Julie Carmen Torres, | Chapter 13 |
| 12          Debtors. | **OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN OF REORGANIZATION** |
| 13 | |
| 14 | **SUBJECT PROPERTY:** 1120 Parkridge Drive, El Sobrante, CA 94803 |
| 15 | |
| 16 | **CONFIRMATION HEARING:** DATE:        Not Set |
| 17 | TIME:        Not Set PLACE:      Not Set |
| 18 | CTRM:       Not Set JUDGE:      Roger L. Efremsky |

19

20          U.S. Bank National Association, As Trustee For C-BASS Mortgage Loan Asset-Backed

21   Certificates, Series 2007-CB4 (collectively the "Creditor"), secured creditor of the above-entitled

22   debtor, Julie Carmen Torres, ("Debtor"), hereby objects to confirmation of the Chapter 13 Plan

23   filed by the Debtor in the above-referenced matter. The basis of the objection is stated below: [1]

24

25

26   _____
     [1] This objection shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P.
27   4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Robertson, Anschutz, & Schneid's
     participation in this proceeding. Moreover, the within party does not authorize Robertson, Anschutz, & Schneid, either
     expressly or impliedly through Robertson, Anschutz, & Schneid's participation in this proceeding, to act as its agent
     for purposes of service under Fed. R. Bankr. P. 7004.

# I.    STATEMENT OF FACTS[2]

On or about July 19, 2004, Debtor executed a promissory note in the original principal sum of $520,600.00 (the "Note") which was made payable to New Century Mortgage Corporation. ("Lender"). The Note was and remains secured by a recorded deed of trust (the "Deed of Trust") encumbering the real property located at 1205 South Grandee, Compton, CA 90221 (the "Subject Property").  Subsequently, Lender's beneficial interest under the Deed of Trust was transferred to Creditor.

On September 30, 2019, Debtor filed the instant Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California – Oakland Division, and was assigned case number 19-42210.

On September 30, 2019, Debtor filed his/her Chapter 13 Plan ("Plan") which provides for Creditor's claim in Section 3. The Plan includes payments towards Creditor's claim; however, the figures used by the Debtor are inaccurate.  It is anticipated that Creditor's claim will show the pre-petition arrearage due to Creditor in the amount of $16,726.96 whereas the Plan proposes to pay only $14,048.46.

# II.    ARGUMENT
## A.    DEBTOR'S CHAPTER 13 PLAN CANNOT BE CONFIRMED BECAUSE IT DOES NOT PROMPTLY CURE CREDITOR'S PRE-PETITION ARREARS AS REQUIRED BY 11 U.S.C. §1322(b)(5)

Section 1325(a)(1) requires that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). Section 1322(b)(5) requires that all chapter 13 plans must provide for the "curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."  Further, section 1322(b)(2) prohibits debtors from modifying the rights of secured creditor whose security interest is secured solely by the debtor's principal residence.

[2] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of Federal Rules of Bankruptcy Procedure, Creditor requests that the Court take judicial notice of the sworn bankruptcy schedules and other relevant documents filed in the instant case.

In the present case, the major deficiency with Debtor's Plan is that it incorrectly asserts the outstanding arrearage balance of Creditor's pre-petition claim. Specifically, Debtor's Plan states that Creditor's pre-petition arrears are only $14,048.46; however, Creditor anticipates[3] that its claim will reflect pre-petition arrears in the amount of $16,726.96. Accordingly, Debtor's Plan fails to meet the requirements of section 1325(a)(1) because it does not provide to promptly cure the **<u>entire</u>** outstanding balance of Creditor's arrearage claim as required by section 1322(b)(5). Based upon the foregoing, the Court should deny confirmation of the Debtor's Plan.    In the alternative, the Court should confirm the Plan with a provision stating the Debtor must cure Creditor's entire pre-petition arrears, estimated in the amount of $16,726.96, in equal monthly payments over a period of time not to exceed (60) months.

The Plan does not appear feasible due to inadequate treatment of Secured Creditor's claim. Thus, the plan violates the provisions of 11 U.S.C. § 1325(a)(3) and cannot be confirmed.

**WHEREFORE**, Creditor respectfully requests:

    1.    That the Court deny confirmation of the Debtor's Plan;

    2.    For such other and further relief as this court deems just and proper

Respectfully submitted,

**ROBERTSON, ANSCHUTZ & SCHNEID, P.L**.

Dated: September 21, 2019          /s/ *Sean Ferry* (SBN 310347)
                                                      SEAN FERRY
                                                      Attorneys for U.S. Bank National Association, As
                                                      Trustee For C-Bass Mortgage Loan Asset-Backed
                                                      Certificates, Series 2007-CB4

---

[3] The deadline for filing a proof of claim is December 9, 2019.

1   Sean Ferry (SBN 310347)
    sferry@rasflaw.com
2   **ROBERTSON, ANSCHUTZ & SCHNEID**
    7676 Hazard Center Drive, Suite 500
3   San Diego, CA 92108
    Telephone: (561) 241-6901 Ext. 2036
4
5   Attorneys for Creditor
    U.S. Bank National Association, As Trustee For C-
6   Bass Mortgage Loan Asset-Backed Certificates,
    Series 2007-CB4
7
8                   **UNITED STATES BANKRUPTCY COURT**
9          **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

10  In re                               | Case No. 19-42210

11  Julie Carmen Torres,                | Chapter 13

12          Debtors.                    | **CERTIFICATE OF SERVICE**

13

14

15

16

17

18

19

20          I, Sean C. Ferry, hereby declare as follows:

21          I am an active member of the State Bar of California and I am not a party to the above-

22  captioned case; my business address is 7676 Hazard Center Drive, Suite 500, San Diego, CA 92108.

23          On October 21, 2019, I caused copies of the following document(s) to be served:

24          1.  **Objection to Confirmation of Chapter 13 Plan**

25  in the following manner on the parties listed below:

26      •  **BY FIRST CLASS MAIL**: Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), I
           enclosed said document(s) in a sealed envelope addressed to the persons at the
27         address(es) listed below, placed first class postage fully prepaid thereon, and deposited
           said envelope in a United States mailbox.
28

-1-

1

**DEBTOR**
Julie Carmen Torres

2
1120 Parkridge Drive
El Sobrante, CA 94803

3

4
**DEBTOR'S COUNSEL**
Brent D. Meyer

5
Meyer Law Group, LLP
268 Bush St. #3639

6
San Francisco, CA 94104

7
- **BY ELECTROIC SERVICE (ECF):**

8

9
**TRUSTEE**
Martha G. Bronitsky

10
**US TRUSTEE**
Office of the U.S. Trustee/Oak

11

12
        I declare under penalty of perjury under the laws of the United States of America that the
forgoing is true and correct.

13

14
        Executed on this 21st day of October, 2019.

15

16
                                        /s/ Sean C. Ferry
                                        Sean C. Ferry

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# EXHIBIT F

**From:** **Brent Meyer**  brent@meyerllp.com
**Subject:** In re Julie Carmen Torres; BK Case No. 19-42210-RLE; Objection to Confirmation
**Date:** November 7, 2019 at 1:03 PM
**To:** sferry@rasflaw.com



Sean,

On October 21, 2019, you filed an Objection to Confirmation [Dkt. No. 17] on behalf of U.S. Bank, N.A. in the above-referenced matter. In the Objection, you assert that Debtor's Chapter 13 Plan does not comply with section 1322(b)(5) of the Bankruptcy Code because the Class 1 arrearage claim for U.S. Bank, N.A. (PHH Mortgage) is listed at $14,048.46 in the Chapter 13 Plan, whereas the amount of the arrearage claim should be $16,726.96, although U.S. Bank, N.A. has yet to file a proof of claim confirming this amount.

Unfortunately, however, this Objection to Confirmation is without merit as Section 3.02 of the standard-form Chapter 13 Plan specifically provides that "[t]he proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim." As such, since the proof of claim and not Debtor's Chapter 13 Plan controls the amount and classification of the pre-petition arrearage claim in Class 1, Debtor does not have any obligation to amend the terms of her Chapter 13 Plan.

Further, in an effort to avoid unnecessary motion practice and hearings, and although not required to do so, on October 23, 2019, Debtor filed a First Amended Chapter 13 Plan [Dkt. No. 19] which specifically provided for the exact amount of the pre-petition arrearage claim of U.S. Bank, N.A. ($16,726.96) as asserted in the Objection to Confirmation.

As such, it is kindly requested that U.S. Bank, N.A. promptly withdraw the Objection to Confirmation [Dkt. No. 17], so that Debtor's First Amended Chapter 13 Plan [Dkt. No. 19] can proceed to confirmation without any further delay or expense.

Thank you in advance for your prompt attention to this matter.

Regards,
Brent

**BRENT D MEYER**
ATTORNEY
MEYER LAW GROUP LLP

**MAILING ADDRESS**
268 BUSH STREET #3639
SAN FRANCISCO CALIFORNIA 94104

**OFFICE ADDRESS**
630 N. SAN MATEO DRIVE
SAN MATEO CALIFORNIA 94401

**P** 415 / 765 1588  **F** 415 / 762 5277  **C** 213 / 820 2736
brent@meyerllp.com  |  www.meyerllp.com

THIS MESSAGE IS FOR THE EXCLUSIVE AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENT. It may be an attorney-client communication and, as such, is privileged and confidential. If you are not the intended recipient, do not read, copy, use, or disclose this communication to others. If you have received this message in error, please immediately notify the sender by replying to this message, and then promptly delete it from your system.

**From:** **Sean Ferry** sferry@rasflaw.com 
**Subject:** RE: In re Julie Carmen Torres; BK Case No. 19-42210-RLE; Objection to Confirmation
**Date:** November 7, 2019 at 1:28 PM
**To:** Brent Meyer brent@meyerllp.com

Brent, I will have it withdrawn right now.

## Sean Ferry, Esq.

Attorney – Bankruptcy Department



Robertson, Anschutz & Schneid, P.L.
7676 Hazard Center Drive, Suite 500
San Diego, CA 92108
sferry@rasflaw.com
Phone: 561-241-6901 x 2036

**Pursuant to the Fair Debt Collection Practices Act, it is required that we state the following to you: "This is a communication from a debt collector. This is an attempt to collect a debt and any information obtained may be used for that purpose."**

PRIVILEGE AND CONFIDENTIALITY NOTICE: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510-2521 and is legally privileged. The contents of this e-mail message and any attachments are intended solely for the party or parties addressed and named in this message. This communication and all attachments, if any, are intended to be and to remain confidential, and it may be subject to the applicable attorney - client and or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute, or copy this message and or any attachments if you are not the intended recipient. Do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Although this E-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Robertson, Anschutz and Schneid, P.L. for damage arising in any way from its use.

---

**From:** Brent Meyer <brent@meyerllp.com>
**Sent:** Thursday, November 7, 2019 4:03 PM
**To:** Sean Ferry <sferry@rasflaw.com>
**Subject:** In re Julie Carmen Torres; BK Case No. 19-42210-RLE; Objection to Confirmation

This message originated outside of the organization. Use caution when opening attachments, clicking links or responding to requests for information.

---

Sean,

On October 21, 2019, you filed an Objection to Confirmation [Dkt. No. 17] on behalf of U.S. Bank, N.A. in the above-referenced matter. In the Objection, you assert that Debtor's Chapter 13 Plan does not comply with section 1322(b)(5) of the Bankruptcy Code because the Class 1 arrearage claim for U.S. Bank, N.A. (PHH Mortgage) is listed at $14,048.46 in the Chapter 13 Plan, whereas the amount of the arrearage claim should be $16,726.96, although U.S. Bank, N.A. has yet to file a proof of claim confirming this amount.

Unfortunately, however, this Objection to Confirmation is without merit as Section 3.02 of the standard form Chapter 13 Plan specifically provides that "[t]he proof of claim, not this

the standard-form Chapter 13 Plan specifically provides that "[t]he proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim." As such, since the proof of claim and not Debtor's Chapter 13 Plan controls the amount and classification of the pre-petition arrearage claim in Class 1, Debtor does not have any obligation to amend the terms of her Chapter 13 Plan.

Further, in an effort to avoid unnecessary motion practice and hearings, and although not required to do so, on October 23, 2019, Debtor filed a First Amended Chapter 13 Plan [Dkt. No. 19] which specifically provided for the exact amount of the pre-petition arrearage claim of U.S. Bank, N.A. ($16,726.96) as asserted in the Objection to Confirmation.

As such, it is kindly requested that U.S. Bank, N.A. promptly withdraw the Objection to Confirmation [Dkt. No. 17], so that Debtor's First Amended Chapter 13 Plan [Dkt. No. 19] can proceed to confirmation without any further delay or expense.

Thank you in advance for your prompt attention to this matter.

Regards,
Brent

BRENT D MEYER
ATTORNEY
MEYER LAW GROUP LLP

MAILING ADDRESS
268 BUSH STREET #3639
SAN FRANCISCO CALIFORNIA 94104

OFFICE ADDRESS
630 N. SAN MATEO DRIVE
SAN MATEO CALIFORNIA 94401

P  415 / 765 1588  F  415 / 762 5277  C  213 / 820 2736
brent@meyerllp.com  |  www.meyerllp.com

THIS MESSAGE IS FOR THE EXCLUSIVE AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENT. It may be an attorney-client communication and, as such, is privileged and confidential. If you are not the intended recipient, do not read, copy, use, or disclose this communication to others. If you have received this message in error, please immediately notify the sender by replying to this message, and then promptly delete it from your system.

# EXHIBIT G

1    Sean C. Ferry (SBN 310347)
sferry@rasflaw.com
2    **ROBERTSON, ANSCHUTZ & SCHNEID**
7676 Hazard Center Drive, Suite 500
3    San Diego, CA 92108
Telephone: (561) 241-6901 ext. 2036
4

5    Attorneys for Creditor
U.S. Bank National Association, As Trustee For
6    CBass Mortgage Loan Asset-Backed Certificates,
Series 2007-CB4

7

8                 **UNITED STATES BANKRUPTCY COURT**

9        **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| In re | Case No. 19-bk-42210 |
| Julie Carmen Torres, | Chapter 13 |
| Debtor. | **NOTICE OF WITHDRAWAL** |

15        **NOTICE IS HEREBY GIVEN THAT** U.S. Bank National Association, As Trustee For

16 CBass Mortgage Loan Asset-Backed Certificates, Series 2007-CB4 ("Creditor"), secured

17 creditor of the above-entitled debtor, Shannon Devaney ("Debtor"), hereby WITHDRAWS the

18 Objection to Confirmation of Plan ("Objection"), Docket No. 17, filed on October 21, 2019, as

19 the Objection was resolved via the amended plan.

20

21                                        **ROBERTSON, ANSCHUTZ & SCHNEID, P.L**.

22 Dated: November 7, 2019             /s/ *Sean C. Ferry* (SBN 310347)
23                                 SEAN C. FERRY
Attorneys for Creditor U.S. Bank National
24                                 Association, As Trustee For CBass Mortgage Loan
Asset-Backed Certificates, Series 2007-CB4

25

26

27

28

1  Sean C. Ferry (SBN 310347)
   sferry@rasflaw.com
2  **ROBERTSON, ANSCHUTZ & SCHNEID**
   7676 Hazard Center Drive, Suite 500
3  San Diego, CA 92108
   Telephone: (561) 241-6901 ext. 2036

4  Attorneys for Creditor
   U.S. Bank National Association, As Trustee For
5  CBass Mortgage Loan Asset-Backed Certificates,
   Series 2007-CB4
6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9          **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

10                                          | Case No. 19-bk-42210
    In re                                   |
11                                          | Chapter 13
    Julie Carmen Torres,                    |
12                                          | **CERTIFICATE OF SERVICE**
                Debtor.                     |
13                                          |

14

15      I, Sean C. Ferry, hereby declare as follows:

16      I am an active member of the State Bar of California and I am not a party to the above-

17 captioned case; my business address is 7676 Hazard Center Drive, Suite 500, San Diego, CA 92108.

18      On November 7, 2019, I caused copies of the following document(s) to be served:

19          1.  **NOTICE OF WITHDRAWAL**

20 in the following manner on the parties listed below:

21      •   **BY FIRST CLASS MAIL**: Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), I
            enclosed said document(s) in a sealed envelope addressed to the persons at the
22          address(es) listed below, placed first class postage fully prepaid thereon, and deposited
            said envelope in a United States mailbox.
23

24          **DEBTOR**
            Julie Carmen Torres
25          1120 Parkridge Drive
            El Sobrante, CA 94803
26

27          **DEBTOR'S COUNSEL**
            Brent D. Meyer
28          Meyer Law Group, LLP
            268 Bush St. #3639
            San Francisco, CA 94104

- **BY ELECTROIC SERVICE (ECF):**

**TRUSTEE**
Martha G. Bronitsky

**US TRUSTEE**
Office of the U.S. Trustee/Oak

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on this 7th day of November, 2019.

/s/ Sean C. Ferry
Sean C. Ferry

# EXHIBIT H

Fill in this information to identify the case:

Debtor 1 __Julie Carmen Torres__

Debtor 2 _____

(Spouse, if filing)

United States Bankruptcy Court for the NORTHERN District of CALIFORNIA

Case number 19-42210

## Official Form 410S2

## Notice of Postpetition Mortgage Fees, Expenses, and Charges          12/16

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any fees, expenses, and charges incurred after the bankruptcy filing that you assert are recoverable against the debtor or against the debtor's principal residence.

**File this form as a supplement to your proof of claim.** See Bankruptcy Rule 3002.1.

**Name of creditor:** __U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-CB4__          **Court claim no.** (if known): 13-1

**Last 4 digits** of any number you use to identify the debtor's account: __3831__

**Does this notice supplement a prior notice of postpetition fees, expenses, and charges?**

■ No

☐ Yes. Date of the last notice:

| **Part 1:** | Itemize Postpetition Fees, Expenses, and Charges |
| --- | --- |

Itemize the fees, expenses, and charges incurred on the debtor's mortgage account after the petition was filed. Do not include any escrow account disbursements or any amounts previously itemized in a notice filed in this case. If the court has previously approved an amount, indicate that approval in parentheses after the date the amount was incurred.

|  | **Description** | **Date Incurred** |  | **Amount** |
| --- | --- | --- | --- | --- |
| 1 | Late Charges | | (1) | $0.00 |
| 2 | Non-sufficient funds (NSF) fees | | (2) | $0.00 |
| 3 | Attorneys fees | | (3) | $0.00 |
| 4 | Filing fee and court costs | | (4) | $0.00 |
| 5 | Bankruptcy/Proof of claim fees | 11/25/2019 | (5) | $500.00 |
| 6 | Appraisal/Broker's Price opinion fees | | (6) | $0.00 |
| 7 | Property inspection fees | | (7) | $0.00 |
| 8 | Tax Advances (non-escrow) | | (8) | $0.00 |
| 9 | Insurance advances (non-escrow) | | (9) | $0.00 |
| 10 | Property preservation expenses | | (10) | $0.00 |
| 11 | Other. Specify: Plan Review | 10/14/2019 | (11) | $150.00 |
| 12 | Other. Specify: 410A Fee | 11/25/2019 | (12) | $250.00 |
| 13 | Other. Specify: Plan Objection | 10/21/2019 | (13) | $500.00 |
| 14 | Other. Specify: | | (14) | $0.00 |

The debtor or trustee may challenge whether the fees, expenses, and charges you listed are required to be paid.
See 11 U.S.C. § 1322(b)(5) and Bankruptcy Rule 3002.1.

Debtor 1  <u>Julie Carmen Torres</u>                    Case number *(if known)* <u>19-42210</u>
     Print Name     Middle Name     Last Name

| **Part 2:** | **Sign Here** |
|---|---|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor

■ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✘ <u>/s/ Eric Enciso</u>                               Date  <u>January 28, 2020</u>
    Signature

Print     <u>Eric Enciso, Esq.</u>                       Title  <u>Bankruptcy Attorney</u>
     First Name     Middle Name     Last Name

Company  <u>Robertson, Anschutz & Schneid, P.L.</u>

Address    <u>6409 Congress Ave., Suite 100</u>
     Number     Street

     <u>Boca Raton, FL 33487</u>
     City     State     ZIP Code

Contact Phone  <u>470-321-7112</u>                    Email  <u>eenciso@rasflaw.com</u>

Case: 19-42210    Doc#    Filed: 01/28/20    Entered: 01/28/20 12:36:30    Page 2 of 6

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that on _____1/28/2020_____,

I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and a true and correct copy has

been served via CM/ECF or United States Mail to the following parties:

BRENT D. MEYER
MEYER LAW GROUP, LLP
268 BUSH ST. #3639
SAN FRANCISCO, CA 94104

MARTHA G. BRONITSKY
P.O. BOX 5004
HAYWARD, CA 94540

OFFICE OF THE U.S. TRUSTEE/OAK
OFFICE OF THE UNITED STATES TRUSTEE
PHILLIP J. BURTON FEDERAL BUILDING
450 GOLDEN GATE AVE. 5TH FL., #05-0153
SAN FRANCISCO, CA 94102

JULIE CARMEN TORRES
1120 PARKRIDGE DRIVE
RICHMOND, CA 94803

 

          Robertson, Anschutz & Schneid, P.L.
          Authorized Agent for Secured Creditor
          6409 Congress Ave., Suite 100
          Boca Raton, FL 33487
          Telephone: 470-321-7112
          Facsimile: 561-997-6909

          By: /s/Raven Mahoney_____
             Email: rmahoney@rasflaw.com

## Robertson, Anschutz & Schneid, P.L.

6409 N. Congress AVE.
Boca Raton, FL 33487 2853
Phone No: (561) 495-7554
Fax No: (561) 241-6606

## Bankruptcy - Bankruptcy Services - INVOICE

PHH Mortgage
Andrea Jenkins
2001 Bishops Gate Blvd
Mount Laurel, NJ 08054

Re:     TORRES JULIE
        1120 PARKRIDGE DR
        EL SOBRANTE, CA 94803
        0000

Loan #:            3831
Loan Type:         Conventional
Inv. ID / Cat. ID:
Cost Center:
CONV Case No:
GSE Code:          O
GSE REO Rem. Code:

Original Mortgage Amount:   $520,600.00
Litigation Status Code:
Man Code:          B

BK Case No:        19-42210
BK Chapter:        13

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Invoice #: | | | | | | | |
| Invoice Status: | | Check Confirmed | | | | | |
| Input By: | | Jodi Camille | | | | | |
| Date Submitted: | | 10/15/2019 | | | | | |
| Invoice Date: | | 10/15/2019 | | | | | |
| Vendor Ref #: | | | | | | | |
| Vendor Code: | | | | | | | |
| Payee Code: | | | | | | | |
| Type: | | Non Judicial | | | | | |
| Referral Date | | 10/2/2019 | | | | | |
| Acquisition Date: | | | | | | | |
| Paid in Full Date: | | N/A | | | | | |
| Foreclosure Removal | | N/A | | | | | |
| HiType | | 1 | | | | | |
| Class Code | | | | | | | |

Invoice ID:
Asset Number:
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 10/15/2019 | 10/31/2019 | 10/31/2019 | | 10/31/2019 | 10/31/2019 | 11/1/2019 |

| Fee Description(s) | | W/H Aff.Ind | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|---|
| Attorney Fees - Plan Review Fee | | | 10/14/2019 | 1 | $150.00 | $150.00 | $0.00 | $150.00 |

Note: Bankruptcy Plan Review (recoverable) - Bankruptcy Plan Review (recoverable BK-4102), BK Plan Review: Please note that no
documents are filed with BK court for Plan Review. Recoverable
Service From Date: 10/14/2019          Service To Date: 10/14/2019

| | | | |
|---|---|---|---|
| | | $150.00 | $0.00 | $150.00 |

| | | | |
|---|---|---|---|
| Total: | | $150.00 | $0.00 | $150.00 |

**Invoice Level Exceptions**
None

**Invoice Level Comment**
Does Not Exceed Allowable

## Robertson, Anschutz & Schneid, P.L.

6409 N. Congress AVE.
Boca Raton, FL 33487 2853
Phone No: (561) 495-7554
Fax No: (561) 241-6606

### Bankruptcy - Bankruptcy Services - INVOICE

PHH Mortgage
Andrea Jenkins
2001 Bishops Gate Blvd
Mount Laurel, NJ 08054
Re: TORRES JULIE
1120 PARKRIDGE DR
EL SOBRANTE, CA 94803
0000
Loan #: 3831
Loan Type: Conventional
Inv. ID / Cat. ID:
Cost Center:
CONV Case No:
GSE Code: O
GSE REO Rem. Code:

Original Mortgage Amount: $520,600.00
Litigation Status Code:
Man Code: B

BK Case No: 19-42210
BK Chapter: 13

Invoice #:
Invoice Status: Check Confirmed(Exc)
Input By: Jodi Camille
Date Submitted: 10/22/2019
Invoice Date: 10/22/2019
Vendor Ref #:
Vendor Code:

Payee Code:
Type: Non Judicial
Referral Date 10/18/2019

Acquisition Date:
Paid in Full Date: N/A
Foreclosure Removal N/A
HiType 1
Class Code

Invoice ID:
Asset Number:
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | Approved Date | Chk Requested | Chk Confirmed |
|---|---|---|---|---|---|---|
| 10/22/2019 | 11/6/2019 | 11/6/2019 | 11/6/2019 | 11/26/2019 | 11/26/2019 | 11/27/2019 |

| Fee Description(s) | W/H Aff.Ind | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|
| Attorney Fees - Objection to Confirmation | | 10/21/2019 | 1 | $500.00 | $500.00 | $0.00 | $500.00 |

**Note: Bankruptcy Plan Objection (recoverable) Recoverable**
Service From Date: 10/21/2019    Service To Date: 10/21/2019

| | | |
|---|---|---|
| $500.00 | $0.00 | $500.00 |

**Total:**    $500.00    $0.00    $500.00

**Invoice Level Exceptions**
Possible Duplicate Invoice

**Invoice Level Comment**
Does Not Exceed Allowable

## Robertson, Anschutz & Schneid, P.L.

6409 N. Congress AVE.
Boca Raton, FL 33487 2853
Phone No: (561) 495-7554
Fax No: (561) 241-6606

### Bankruptcy - Bankruptcy Services - INVOICE

| | | |
|---|---|---|
| PHH Mortgage | Invoice #: | |
| Andrea Jenkins | Invoice Status: | ACH Confirmed(Exc) |
| 2001 Bishops Gate Blvd | Input By: | Jodi Camille |
| Mount Laurel, NJ 08054 | Date Submitted: | 11/26/2019 |
| Re:     TORRES JULIE | Invoice Date: | 11/26/2019 |
| 1120 PARKRIDGE DR | Vendor Ref #: | |
| EL SOBRANTE, CA 94803 | Vendor Code: | |
| 0000 | | |
| Loan #:        3831 | Payee Code: | |
| Loan Type:    Conventional | Type: | Non Judicial |
| Inv. ID / Cat. ID: | | |
| Cost Center: | Referral Date | 11/23/2019 |
| CONV Case No: | | |
| GSE Code:      O | Acquisition Date: | |
| GSE REO Rem. Code: | Paid in Full Date: | N/A |
| | Foreclosure Removal | N/A |
| Original Mortgage Amount:   $520,600.00 | HiType | 1 |
| Litigation Status Code: | Class Code | |
| Man Code:       B | | |

Invoice ID:
Asset Number:
Outsourcer:

| SubmittedDate | 1st Reviewed Date | Last Reviewed | Accepted Date | | Approved Date | Chk Requested | Chk Confirmed | |
|---|---|---|---|---|---|---|---|---|
| 11/26/2019 | 12/29/2019 | 12/29/2019 | | | 12/29/2019 | 12/30/2019 | 1/1/2020 | |

| Fee Description(s) | W/H Aff.Ind | Item Date | Qty | Item Price | Orig. Billed | Adjust | Net |
|---|---|---|---|---|---|---|---|
| Attorney Fees - Proof of Claim | | 11/25/2019 | 1 | $500.00 | $500.00 | $0.00 | $500.00 |
| **Note: Bankruptcy Proof of Claim BK_RECOVERABLE** | | | | | | | |
| **Service From Date: 11/25/2019** | | **Service To Date: 11/25/2019** | | | | | |
| Attorney Fees - Bankruptcy Fee | | 11/25/2019 | 1 | $250.00 | $250.00 | $0.00 | $250.00 |

**Note: Per Ocwen directive, Bankruptcy Fee Line item used for Bankruptcy Proof-of-Claim-Part 5(410A) Recoverable**
**Service From Date: 11/25/2019          Service To Date: 11/25/2019**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | $750.00 | $0.00 | $750.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total: | | | | | $750.00 | $0.00 | $750.00 |

**Invoice Level Exceptions**
Possible Duplicate Invoice

**Invoice Level Comment**
Does Not Exceed Allowable

# EXHIBIT I

1   **MEYER LAW GROUP LLP**
     A Limited Liability Partnership
2   BRENT D. MEYER, Cal. Bar No. 266152
    268 Bush Street #3639
3   San Francisco, California 94104
    Telephone:   (415) 765-1588
4   Facsimile:   (415) 762-5277
    Email:       brent@meyerllp.com
5
6   Attorneys for Debtor
    JULIE CARMEN TORRES
7

8                  UNITED STATES BANKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                            OAKLAND DIVISION

11

12   In re                                BK Case No.: 19-42210-RLE

13   JULIE CARMEN TORRES,                  Chapter 13

14            Debtor.                      **MOTION TO DETERMINE**
                                           **ALLOWANCE OF FEES, EXPENSES,**
15                                         **AND CHARGES PURSUANT TO**
                                           **FEDERAL RULE OF BANKRUPTCY**
16                                         **PROCEEDURE 3002.1(e)**

17                                         Date:       March 18, 2020
18                                         Time:       1:30 p.m.
                                           Location:   1300 Clay Street
19                                                      2nd Floor, Courtroom 201
20                                                      Oakland, California 94607
                                           Judge:      Honorable Roger L. Efremsky
21

22

23

24

25

26

27

28


MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

                                    - 1 -
BK CASE NO. 19-42210-RLE

1    Debtor Julie Carmen Torres ("Debtor") hereby moves (the "Motion") this Court for entry

2  of an order determining the allowance of fees, expenses, and charges pursuant to Federal Rule of

3  Bankruptcy Procedure 3002.1(e) in the above-captioned matter.  The Motion is brought pursuant

4  to Federal Rule of Bankruptcy Procedure 3002.1(e) and B.L.R. 9014-1(c)(1).

5    The Motion is based upon the Notice of Motion, the supporting points and authorities set

6  forth herein, the Request for Judicial Notice ("RJN") and all exhibits attached thereto, the

7  declaration of counsel Brent D. Meyer ("Counsel Decl.") and all exhibits attached thereto, all

8  other pleadings on file with the Court herein, and such other and further arguments that may be

9  presented at the hearing on the Motion.

10  **I.    BACKGROUND FACTS**

11    On September 30, 2019 (the "Petition Date"), Debtor filed a petition for relief under Title

12  11, Chapter 13 of the United States Code.  (RJN ¶ 1(a), Exh. A).

13    As for the Petition Date, Debtor owed real property commonly known as 1120 Parkridge

14  Drive, Richmond, California 94803 (the "Property") as her primary residence.  (Id.)

15    On September 30, 2019, Debtor filed her original *Chapter 13 Plan*, which as amended,

16  was confirmed by this Court on February 3, 2020 ("Debtor's Plan").  (RJN ¶ 1(a), Exh. B).

17  Pursuant to Paragraph 3.07 of Debtor's Plan, Debtor provided for the secured claim of U.S.

18  Bank, N.A. as Trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007-CB4,

19  serviced by PHH Mortgage Corporation ("collectively, "U.S. Bank") in Class 1.  (Id.).

20    On October 21, 2019, U.S. Bank filed an *Objection to Confirmation of Debtors' Chapter*

21  *13 Plan of Reorganization* (the "Objection").  (RJN ¶ 1(b), Exhs. C).

22    On November 7, 2019, Debtor advised U.S. Bank that the Objection was non-meritorious

23  and requested that it be immediately withdrawn.  (Counsel Decl. ¶ 3, Exh. A).  Less than one (1)

24  hour after receiving this notice, U.S. Bank filed a *Notice of Withdraw* in which the Objection was

25  withdrawn in its entirety.  (RJN ¶ 1(c), Exh. D).

26    On January 28, 2020, U.S. Bank filed a *Notice of Postpetition Mortgage Fees, Expenses,*

27  *and Charges* (the "Post-Petition Fee Notice") in which, among other things, U.S. Bank sought

28  recovery of $500 for filing the Objection.  (RJN ¶ 1(d), Exh. E).

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

BK CASE NO. 19-42210-RLE

- 2 -

MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 3002.1(e)

Case 19-42210   Doc# 48   Filed: 02/17/20   Entered: 02/17/20 20:59:44   Page 2 of 6

## II.   LEGAL ANALYSIS

### A.   Legal Standard for Federal Rule of Bankruptcy Procedure 3002.1(e)

Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(c), "[t]he holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence.  The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred." Fed. R. Bankr. P. 3002.1(c).

Thereafter, pursuant to Federal Rule of Bankruptcy Procedure 3002.1(e), "[o]n motion of a party in interest filed _within one year after service of a notice_ under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." Fed. R. Bankr. Pro. 3002.1(e) (emphasis added).

"[T]he burden of proof under Rule 3002.1(e) falls on the creditor asserting the fee, expense, or charge."  In re Trudelle, 2017 WL 4411004, *3 (Bankr. S.D. Ga. 2017); see also In re Brumley, 2017 WL 3129735, *2 (Bankr. W.D. Mich. 2017).

### B.   There was No Legitimate or Meritorious Purpose for Filing the Objection

In the Objection, U.S. Bank objected to confirmation of Debtor's Plan and cited three separate provisions of the Bankruptcy Code in support thereof, and ultimately asserts that "the [p]lan does not appear feasible due to inadequate treatment of Secured Creditor's claim." (RJN ¶ 1(b), Exh. C, 3:11).  Unfortunately, however, each of the statutory citations relied upon by U.S. Bank in support of the Objection are inapplicable to claims provided for in Class 1 of the standard-form Chapter 13 Plan for the Northern District of California.

The gravamen of the Objection is that "Debtor's Plan fails to meet the requirements of section 1325(a)(1) because it does not provide to promptly cure the **entire** outstanding balance of [U.S. Bank's] arrearage claim as required by section 1322(b)(5)."  (RJN ¶ 1(b), Exh. C, 3:5-6) (emphasis in original).  Stated differently, U.S. Bank asserts that the Court should deny

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

BK CASE NO. 19-42210-RLE

MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1(e)

1    confirmation of Debtor's Plan because the amount set forth in the column "Amount of Arrears"

2    in Class 1 ($14,048.46) for U.S. Bank is less than the *anticipated* amount of the pre-petition

3    arrears ($16,726.96) for the U.S. Bank claim.[1] (Id.).

4           Pursuant to Section 3.02 of the standard-form Chapter 13 Plan for the Northern District

5    of California, which Debtor utilized in this matter, "*[t]he proof of claim*, not this plan or the

6    schedules, *shall determine the amount and classification of a claim* unless the court's disposition

7    of a claim objection, valuation motion, adversary proceeding, confirmed plan, or lien avoidance

8    motion affects the amount or classification of the claim, consistent with section 1.03." (RJN

9    ¶ 1(a), Exh. B, § 3.02) (emphasis added). As a result, since the *Proof of Claim* unequivocally

10   controls the amount of all claims provided for in Class 1 (including U.S. Bank's claim), the

11   amount set forth in "Amount of Arrears" of Debtor's Plan is merely a placeholder amount

12   included for reference purposes only, and has absolutely no legal relevance or bearing on the

13   treatment of claims provided for in Class 1 of Debtor's Plan.

14          Further, and more troubling, in the Objection U.S. Bank cites section 1322(b)(5) of the

15   Bankruptcy Code and asserts that Debtor is prohibited "from modifying the rights of secured

16   creditor whose security interest is secured solely by the debtor's principal residence." (RJN

17   ¶ 1(b), Exh. C, 2:24-25). However, reference to 11 U.S.C. § 1322(b)(5) is misplaced, as section

18   3.07(c) of the standard-form Chapter 13 Plan specifically provides that "[e]ach Class 1 creditor

19   shall retain its lien … [and] … [o]ther than to cure arrears, *this plan does not modify Class 1*

20   *claims*." (RJN ¶ 1(a), Exh. B, § 3.07(c)) (emphasis added). As such, it is disingenuous for U.S.

21   Bank to assert that Debtor's Plan impermissibly purports to modify its secured claim when

22   Debtor provided for this claim in Class 1 of the standard-form Chapter 13 Plan.

23          Finally, in the Objection, U.S. Bank also cites section 1325(a)(3) of the Bankruptcy

24   Code and concludes that the aforementioned "inadequate treatment of [U.S. Bank's] claim …

25

26

27          [1] Remarkably, U.S. Bank filed the Objection *without* any declaration or admissible evidence supporting
     the "anticipated" amount of the pre-petition arrearage claim. See RJN ¶ 1(a), Exh. A. Further, in the Objection,
28   U.S. Bank asserted that the pre-petition arrearage amount was "anticipated" to be $16,726.96, although this amount
     was inconsistent with the alleged amount for the pre-petition arrearage claim ($17,817.80) set forth in the *Proof of*
     *Claim*. See RJN ¶ 2(a), Exh. F.

M

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

1   violates the provisions of 11 U.S.C. § 1325(a)(3) and cannot be confirmed." (RJN ¶ 1(b), Exh.

2   C, 3:11-12). However, it is difficult to comprehend how curing the full amount of the pre-

3   petition arrearage claim and maintaining on-going payments to U.S. Bank for the duration of

4   Debtor's Plan was *not* "proposed in good faith and not by any means forbidden by law." See 11

5   U.S.C. § 1325(a)(3). Further, and more concerning, U.S. Bank failed to provide any legal

6   analysis or facts to support its assertion that Debtor's Plan was proposed in bad faith.

7          Based on the foregoing, since Section 3.02 of Debtor's Plan specifically provides that

8   the *Proof of Claim*, and not Debtor's Plan, controls the amount and classification of U.S. Bank's

9   secured claim, there was no legitimate or meritorious basis for U.S. Bank to file the Objection.

10  Rather, to the extent that U.S. Bank wanted to ensure the full amount of its pre-petition arrearage

11  claim was paid in full, U.S. Bank simply should have file a *Proof of Claim*, which it did shortly

12  after filing the Objection. (RJN ¶ 2(a), Exh. F).

13         **C.      U.S. Bank Not Entitled to Attorney's Fees Under the Loan Documents**

14         Pursuant to Section 7(e) of the *Adjustable Rate Note*, "[i]f the Note Holder has required

15  me to pay immediately in full as described above, the Note Holder will have the right to be paid

16  back from me all of its costs and expenses *in enforcing this Note* to the extent not prohibited by

17  applicable law. Those expenses include, for example, reasonable attorneys' fees." (RJN ¶ 2(a),

18  Exh. F. p. 48) (emphasis added).

19         Further, pursuant to Section 14 of the *Deed of Trust*, "Lender may charge Borrower fees

20  for services performed in connection with Borrower's default, *for the purpose of protecting*

21  *Lender's interest in the Property and rights under this Security Instrument*, including, but not

22  limited to, attorneys' fees, property inspection and valuation fees." (RJN ¶ 2(a), Exh. F, p. 27)

23  (emphasis added).

24         As set forth in detail in Section II.B. above, filing the Objection served no legitimate or

25  meritorious purpose, and the operative provisions of the *Adjustable Rate Note* and *Deed of Trust*

26  only authorize U.S. Bank to recovery reasonable attorney's fees "in enforcing this Note"

27  (*Adjustable Rate Note*) and "for the purposes of protecting [U.S. Bank's] interest in the Property

28  and rights under this Security Instrument (*Deed of Trust*)." (RJN ¶ 2(a), Exh. F, pp. 27, 48). As

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

- 5 -

BK CASE NO. 19-42210-RLE

MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1(e)

Case 19-42210   Doc# 48   Filed: 02/17/20   Entered: 02/17/20 20:59:44   Page 5 of 6

1  such, since the *Adjustable Rate Note* and *Deed of Trust* do not provide for recovery of attorney's

2  fees and costs for filing a non-meritorious objection to confirmation in a Chapter 13 case, U.S.

3  Bank is not entitled to recover $500.00 for a "Plan Objection" as set forth in the Post-Petition

4  Fee Notice under the applicable loan documents.

5          Assuming *argumentum* that this Court determines attorney's fees incurred by U.S. Bank

6  in filing the Objection fall within any provision of the *Adjustable Rate Note* or *Deed of Trust*,

7  for the reasons set forth in detail in Section II.B. above, the Objection was frivolous and served

8  no legitimate purpose, and therefore cannot be deemed reasonable.  See Cal. Code Civ. Pro.

9  § 1717(a); <u>see also</u> RJN ¶ 2(a), Exh. F. p. 48 ("[t]hose expenses include, for example, <u>*reasonable*</u>

10 <u>*attorneys' fees*</u>") (emphasis added).

11         Further, since Debtor initiated a contested proceeding pursuant to Federal Rule of

12 Bankruptcy Procedure 3002.1(e) to challenge the recovery of those attorney's fees ($500)

13 requested in the Post-Petition Fee Notice for filing the Objection, U.S. Bank has the burden of

14 proof to demonstrate how incurrence of those attorney's fees were reasonable and necessary

15 under the circumstances, recoverable under applicable non-bankruptcy law.  <u>See</u> <u>In re Trudelle</u>,

16 2017 WL 4411004, *3; <u>In re Brumley</u>, 2017 WL 3129735, *2.

17 **III.    CONCLUSION**

18         Based on the foregoing, Debtor requests that the Court enter an order granting the

19 Motion in its entirety, disallowing all attorney's fees and costs ($500) requested by U.S. Bank,

20 N.A. as Trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007-CB4 in the

21 *Notice of Postpetition Mortgage Fees, Expenses, and Charges* filed on January 28, 2020 with

22 respect to the "Plan Objection" (line 13), awarding Debtor all fees and costs incurred, including

23 reasonable attorney's fees, and such other and further relief that is just and proper.

24

25 Dated: February 17, 2020                    **MEYER LAW GROUP LLP**

26

27                                             By: /s/ BRENT D. MEYER

28                                                 Brent D. Meyer
                                                   Attorneys for Debtor
                                                   JULIE CARMEN TORRES

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

BK CASE NO. 19-42210-RLE

MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1(e)

# EXHIBIT J

Entered on Docket
April 02, 2020
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1 | **MEYER LAW GROUP LLP**

A Limited Liability Partnership

2 | BRENT D. MEYER, Cal. Bar No. 266503

268 Bush Street #3639

3 | San Francisco, California 94104

Telephone:   (415) 765-1588

4 | Facsimile:   (415) 762-5277

Email:       brent@meyerllp.com

5

6 | Attorneys for Debtor

JULIE CARMEN TORRES

7

The following constitutes the order of the Court.
Signed: April 2, 2020

Roger L. Efremsky
U.S. Bankruptcy Judge

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | OAKLAND DIVISION

11

12 | In re                                                    BK Case No.: 19-42210-RLE

13 | JULIE CARMEN TORRES,                     Chapter 13

14 |            Debtor.                                 **ORDER GRANTING MOTION TO**

15 |                                                         **DETERMINE ALLOWANCE OF FEES,**
**EXPENSES, AND CHARGES PURSUANT**

16 |                                                         **TO FEDERAL RULE OF BANKRUPTCY**
**PROCEEDURE 3002.1(e)**

17

18 |                                                         Date:        March 18, 2020

Time:        1:30 p.m.

19 |                                                         Location:   1300 Clay Street

2nd Floor, Courtroom 201

20 |                                                         Oakland, California 94607

21 |                                                         Judge:       Honorable Roger L. Efremsky

22

23

24

25

26

27

28



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

BK CASE NO. 19-42210-RLE

- 1 -

ORDER GRANTING MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEEDURE 3002.1(e)

1       On March 18, 2020, the Court held a hearing on the *Motion to Determine Allowance of*

2 *Fees, Expenses, and Charges Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(e)* (the

3 "Motion") [Dkt. No. 48] filed by debtor Julie Carmen Torres ("Debtor") in the above-captioned

4 matter.  Brent D. Meyer of Meyer Law Group, LLP appeared on behalf of Debtor.  Secured

5 creditor U.S. Bank, N.A. as Trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series

6 2007-CB4, serviced by PHH Mortgage Corporation ("collectively, the "Secured Creditor") did

7 not file opposition to the Motion and did not appear at the hearing to oppose the Motion.

8       At the hearing on March 18, 2020, the Court continued the hearing on the Motion to

9 April 15, 2020, so that counsel for Debtor could file a supplemental declaration regarding the

10 attorney's fees and costs incurred in this matter.

11       On March 25, 2020, Debtor filed a *Supplemental Declaration of Counsel Brent D. Meyer*

12 *in Support of Motion to Determine Allowance of Fees, Expenses, and Charges Pursuant to*

13 *Federal Rule of Bankruptcy Procedure 3002.1(e)* [Dkt. No. 52].  The Secured Creditor did not

14 file any opposition to those attorney's fees and costs requested by Debtor.

15       Upon due consideration, for the reasons stated on the record at the original hearing on the

16 Motion and for good cause shown, the Court hereby orders as follows:

17       (1)    The Motion is GRANTED in its entirety.

18       (2)    The continued hearing on the Motion currently set for April 15, 2020 at 1:30 p.m.

19 is hereby VACATED.

20       (3)    The attorney's fees of $500.00 requested by the Secured Creditor in the *Notice*

21 *of Postpetition Mortgage Fees, Expenses, and Charges* (the "Notice of Postpetition Fees") filed

22 on January 28, 2020 related to or arising from filing the *Objection to Confirmation of Debtors'*

23 *Chapter 13 Plan of Reorganization* (the "Objection") [Dkt. No. 17] shall be DISALLOWED in

24 the entirety pursuant to Federal Rule of Bankruptcy Procedure 3002.1(e) because, as set forth in

25 the Motion, those fees are not recoverable under the applicable loan documents, including but

26 not limited to, the *Adjustable Rate Note* (Claim No. 13-1, pp. 45-50) or the *Deed of Trust*

27 (Claim No. 13-1, pp. 18-33), and are not recoverable pursuant to Federal Rule of Bankruptcy

28 Procedure 3002.1(c) in this matter.

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

BK CASE NO. 19-42210-RLE

- 2 -

ORDER GRANTING MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1(e)

Case  19-42210   Doc# 58   Filed: 04/02/20   Entered: 04/02/20 12:42:12   Page 2 of 4

(4)     The Secured Creditor shall not be entitled to collect, attempt to collect, or otherwise seek recovery of those fees disallowed in Paragraph (3) of this Order from Debtor in this Bankruptcy Case, any subsequent case filed under Title 11 of the United States Code (the Bankruptcy Code), in any subsequent proceeding under applicable non-bankruptcy law, or by adding those fees to the outstanding balance of Debtor's loan.

(5)     The Court finds that Debtor is the "prevailing party" pursuant to California Civil Code § 1717(a) with respect to litigation related to the Objection, the Notice of Postpetition Fees, and the Motion, and as such, Debtor is entitled to recover from the Secured Creditor $1,093.50 for reasonable attorney's fees and $102.90 for costs incurred, for a total award of $1,196.40 (collectively, the "Fee Award").

(6)     Within thirty (30) days after the date of entry of this Order, the Secured Creditor shall remit payment of the Fee Award ($1,196.40) by certified funds (Cashier's Check or Money Order) payable to "Meyer Law Group, LLP" and mailed to Meyer Law Group, LLP, Attn: Brent D. Meyer, Esq., 268 Bush Street #3639, San Francisco, California 94104.

### *** END OF ORDER ***

BK CASE NO. 19-42210-RLE

ORDER GRANTING MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

1                  <u>**COURT SERVICE LIST**</u>

2

3    PHH Mortgage Corporation
       Attn: Officer of Managing Director
4    1 Mortgage Way
       Mount Laurel, NJ 08054
5

6
       PHH Mortgage Corporation
7    c/o CSC – Lawyers Incorporating Service
       Registered Agent for Service of Process
8    2710 Gateway Oak Drive, Suite 150N
       Sacramento, CA 95833
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



BK CASE NO. 19-42210-RLE

ORDER GRANTING MOTION TO DETERMINE ALLOWANCE OF FEES, EXPENSES, AND CHARGES PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 3002.1

# EXHIBIT K

# Chapter 5: 1-4 Unit Property Approved Expense Amounts

| Foreclosure Attorney Fees[1, 2] | | | Title Work[3] |
|---|---|---|---|
| State | Judicial Foreclosure Attorney Fee | Trustee/ Non-judicial Foreclosure Attorney Fee | Expense Limits |
| Wisconsin | $2,500 | ---- | $365 |
| Wyoming[4] | ---- | $1,450 | Foreclosure Title Policy |

| Bankruptcy Attorney Fees[11] | Allowable Fee |
|---|---|
| **Chapter 7** | |
| Proof of Claim Preparation[12] | $300 |
| Motion for Relief from Stay (up to two hearings and order) | $950 |
| **Chapter 11 and 12[13]** | |
| Proof of Claim Preparation, Plan Review and Plan Negotiations[12] | $950 |
| Objection of Plan (up to two hearings) | $550 |
| Motion for Relief from Stay (up to two hearings and order) | $1,050 |
| Agreed Order; Court Certification of Default/Stay Terminated | $200 |
| Agreed Order; Notice of Default/Stay Termination | $100 |
| Amended Plan Review[14] (up to two occurrences) | $300 |
| **Chapter 13** | |
| Proof of Claim Preparation, Plan Review and Plan Negotiations[12] | $950 |
| Objection of Plan (up to two hearings) | $550 |
| Motion for Relief from Stay (up to two hearings and order) | $1,050 |
| Agreed Order; Court Certification of Default/Stay Terminated | $200 |

# Chapter 5: 1-4 Unit Property Approved Expense Amounts

| Bankruptcy Attorney Fees[11] | Allowable Fee |
|---|---|
| Agreed Order; Notice of Default/Stay Termination | $100 |
| Payment Change Notifications (up to two notifications) | $200 |
| Notice of Fees, Expenses and Charges (up to two notifications) | $200 |
| Response to Final Cure Payment for Agreed Response | $100 |
| Response to Final Cure Payment for Dispute | $500 |
| Amended Plan Review[14] (up to two occurrences) | $300 |
| **Chapters 7, 11, 12, and 13** | |
| Multiple Filing Litigation[15] | $600 |
| Additional Hearings (up to two hearings) | $500 |

| Pre-Foreclosure Mediation (as required by applicable law) | Expense Limits |
|---|---|
| **Mediation Court Costs** <br><br> (Attendance and appearance at up to five additional mediation hearings or conferences in the following States: CT, IL, NY, NV, WA) | $600 |
| **Mediation Attorney Fees** <br><br> (Attendance and appearance at the initial mediation hearing or conference in the following States: CA, CT, DC, DE, FL, HI, IL, IN, KY, MA, MD, ME, MI, NJ, NM, OH, OR, PA, PR, RI, VT, WA, WI) | $425 |
| **Mediation Attorney Fees** <br><br> (Attendance and appearance at the initial mediation hearing or conference in the following States: NV, NY, SC) | $875 |
| **Additional Mediation Hearings** <br><br> (Attendance and appearance at up to two additional mediation hearings or conferences in the following States: CA, DC, DE, FL, HI, KY, MA, MD, ME, MI, NJ, NM, OH, OR, PA, PR, RI, SC, VT, WI) | $750 |
| **Additional Mediation Hearings** <br><br> (Attendance and appearance at up to three additional mediation hearings or conferences in the following States: IN) | $1,125 |
| **Additional Mediation Hearings** <br><br> (Attendance and appearance at up to five additional mediation hearings or conferences in the following States: CT, IL, NY, NV, WA) | $1,875 |

# EXHIBIT L

1  Sean C. Ferry (SBN 310347)
   sferry@rasflaw.com
2  **ROBERTSON, ANSCHUTZ & SCHNEID, PL**
   7676 Hazard Center Drive, Suite 500
3  San Diego, CA 92108
   Telephone: (561) 241-6901 ext. 2036
4

5  Attorney for Champion Mortgage Company(Nationstar Mortgage LLC, DBA)

6               **UNITED STATES BANKRUPTCY COURT**

7        **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

8

9   **IN RE:**                          **CASE NO.: 19-41900**
                                        **CHAPTER 13**
10  **Hattie Pearl Lewis,**             **D.C. No. RAS - 1**

11                                      **MOTION FOR RELIEF FROM**
12       **Debtor,**                    **AUTOMATIC STAY**

13                                      **Hearing Date: January 10, 2020**
14                                      **Hearing Time: 10:00 AM**
                                        **Hearing Location: Courtroom 215,**
15                                      **1300 Clay Street, Suite 300, Oakland,**
16                                      **CA 94612**

17  _____/

18

19              **I.      INTRODUCTION**

20       Secured Creditor, Champion Mortgage Company(Nationstar Mortgage LLC, DBA)
21  (hereinafter referred to as "Movant"), by and through the undersigned counsel, hereby moves
22  this Court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause on the
23  grounds that Debtor has defaulted on the obligations secured by the subject property and
24  Movant's interest in the property is not adequately protected.
25

26              **II.     JURISDICTION**
27       The motion is brought pursuant to Local Bankruptcy Rule 4001-1, 9013-1, and 9014-1 of
28

- 1 -
**Motion for Relief**

the Local Rules of Practice for the United States Bankruptcy Court, Northern District of California and is supported by the concurrently filed notice and declaration, as well as all other papers and pleadings on file in the Debtor's bankruptcy case, and such other evidence as may be filed prior to, or presented at, the hearing(s) in this matter.

The Bankruptcy Court has jurisdiction over this proceeding pursuant to 11 U.S.C. § 362. 28 U.S.C. §157 and §1334, and it is a core proceeding within the definition of 28 U.S.C. §157(b).

### III.   RELIEF REQUESTED

MOVANT requests the Court enter an Order:

    a.  Granting relief from the automatic stay to allow MOVANT to exercise all available rights and remedies with respect to the real property collateral under the Home Equity Conversion Note and Deed of Trust (and related documents) and applicable non-bankruptcy law;

    b.  Establishing that the Order hereon be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code;

    c.  Granting Movant the authority to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding

    d.  Waiving the 14-day stay set forth in Bankruptcy Rule 4001(a)(3); and

    e.  For such other and further relief as is just and appropriate in the circumstances of this case.

### IV.   FACTUAL BACKGROUND

The factual allegations herein are supported by the concurrently filed declaration.

On July 24, 2010, Hattie Pearl Lewis executed and delivered a Home Equity Conversion

- 2 -
**Motion for Relief**

Note ("Note") and Home Equity Conversion Deed of Trust ("Mortgage") securing payment of the Note up to a maximum principal amount of $541,500.00 Wells Fargo Bank, N.A. The Mortgage was recorded on July 29, 2010, as Instrument Number 2010209907, in the Public Records of Alameda, County, California. The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A" The documents include copies of the Note with any required indorsements, Recorded Deed of Trust, Assignment(s) of Deed of Trust, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

The Mortgage provides Secured Creditor a lien on the real property located in Alameda, County, California, and legally described in Exhibits. This property is located at the street address of: 1528 Dwight Way, Berkeley, California 94703.

The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since September 5, 2019. See Secured Creditor's Declaration in Support of Motion for Relief from the Automatic Stay, filed concurrently with this motion. The terms and conditions of the Note and Mortgage are in default due to failure to perform an obligation under the Mortgage by Debtor's failure to maintain post-petition property insurance on the subject property resulting in Movant advancing payment in the amount of $1,407.00 for an insurance policy dated September 1, 2019 through September 1, 2020. See Exhibit **"B"** which is attached hereto for a copy of Debtor's current payoff.

As of November 5, 2019, Secured Creditor is due the following amount:

| Loan Balance | $385,698.55 |
| Interest | $1,682.39 |
| MIP | $153.22 |

- 3 -
**Motion for Relief**

| Unscheduled Draws | $500.00 |
| Interest on Unscheduled Draws | $2.11 |
| MIP on Unscheduled Draws | $0.19 |
| County Recording Fees | $198.00 |
| **Total** | **$388,234.46** |

According to the Debtor's filed schedules, the value of the property is $958,975.00. See Exhibit **"C"** which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

Debtor(s), Hattie Pearl Lewis, filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code on August 20, 2019.

## V.   LEGAL ARGUMENT

### A.   "CAUSE" EXISTS JUSTIFYING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C § 362(d)(1)

"Cause" justifying relief from stay includes (but is not limited to) "lack of adequate protection of an interest in property" of the party requesting relief. 11 U.S.C. 362(d)(1). Whether there is adequate protection is a question of fact. *Matter of Plaza Family Partnership*, 95 B.R. 166, 171 (Bkrtcy. E.D.Cal. 1989); *In re O'Connor*, 808 F.2d 1393, 1395 (10th Cir. 1987). The debtor has the burden of proving that the secured creditor's interest in property (i.e., the collateral) is adequately protected.

"Cause" is not specifically defined in the Bankruptcy Code. What constitutes "cause" for granting relief from the automatic stay is decided on a case-by-case basis. *Konremyer v. American Contractors Indemnity Co.*, 405 B.R. 915, 921 (9th Cir. BAP 2009). "Cause" includes a debtor's failure to make post-petition mortgage payments. *In re Ellis*, 60 B.R. 432 (B.A.P. 9th Cir. 1982).

Debtors will be unable to prove that Movant's interest in its collateral is adequately protected given the Debtor's failure to maintain post-petition property insurance on the subject property. Movant also lacks adequate protection as a result of Debtor's failure to comply with the terms of the Note and Deed of Trust. Movant hasn't received any assurances from Debtors indicating that Debtors intend to cure the advanced funds for the insurance policy dated 9/1/2019-9/1/2020 or that Debtors will maintain property insurance going forward. Accordingly, relief from stay should be granted so that Movant may exercise its rights under state law.

For all of these reasons, cause exists for the Court to grant relief from stay.

**B.      The Recovery of Reasonable Attorneys' Fees Incurred throughout the Bankruptcy is Appropriate in Accordance with Loan Documents**

According to the Loan Documents executed by and between Movant and Debtor, Movant is entitled to its costs and expenses in enforcing its interest to the extent not prohibited by applicable law. Specifically, Page 3 Section 6(E) of the Notice which can be found in Exhibit A states, "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

Movant is seeking $1,081 in attorney's fees as a result of the fees incurred in the filing of this motion. Part of those fees include a $181 filing fee while the remaining balance can be attributed to the amount incurred by Movant's attorneys in drafting this Motion.

As such, reasonable attorneys' fees are recoverable in accordance with the applicable loan documents.

**C.      The 14-day Stay of Bankruptcy Rule 4001(a)(3) Should be Waived**

As indicated above, cause exists to grant relief from the automatic stay in order to

- 5 -
**Motion for Relief**

1  preserve and protect the Property. If relief from the automatic stay is granted, the Court should

2  waive the 14-day stay of Bankruptcy Rule 4001(a)(3) to allow MOVANT to avoid any further

3  delay in exercising MOVANT'S rights and remedies under the Loan documents and applicable

4  non-bankruptcy law. Once the stay is terminated, the Debtor will have minimal motivation to

5  insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court

6

7  waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

8                                                    **CONCLUSION**

9             **WHEREFORE**, based upon all of the above, Movant respectfully requests that this

10  Court enter an order as follows:

11        a.        Granting relief from the automatic stay to allow MOVANT to exercise all

12                      available rights and remedies with respect to the real property collateral under the

13                      Home Equity Conversion Note and Deed of Trust (and related documents) and

14                      applicable non-bankruptcy law;

15

16        b.        Establishing that the Order hereon be binding and effective despite any

17                      conversion of this bankruptcy case to a case under any other chapter of the

18                      Bankruptcy Code;

19        c.        Granting Movant the authority to seek recovery of its reasonable attorneys' fees

20                      and costs incurred in this proceeding

21

22        d.        Waiving the 14-day stay set forth in Bankruptcy Rule 4001(a)(3); and

23        e.        For such other and further relief as is just and appropriate in the circumstances of

24                      this case.

25

26  Date: December 5, 2019

27                                              By: /s/ Sean C. Ferry
                                                   Sean C. Ferry
28

# EXHIBIT M

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Sean C. Ferry (CA SBN 310347)<br>Robertson, Anschutz, Schneid & Crane LLC<br>7676 Hazard Center Drive, Suite 500<br>San Diego, CA 92108<br>Telephone: (561) 241-6901 ext. 2036<br>Email: sferry@rasflaw.com | **FILED & ENTERED**<br><br>**FEB 18 2020**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY may         DEPUTY CLERK |
| ☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br><br>Ethel Marie Wiggins,<br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:19-bk-14684-SK<br>CHAPTER: 13 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)** |
| | DATE: January 29, 2020<br>TIME: 8:30 a.m.<br>COURTROOM: 1575<br>PLACE: 255 E. Temple Street,<br>          Los Angeles, CA 90012 |

**Movant:** HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF NOMURA HOME EQUITY LOAN, INC., ASSET-BACKED CERTIFICATES, SERIES 2007-3

1.  The Motion was:        ☐ Opposed      ☒ Unopposed      ☐ Settled by stipulation

2.  The Motion affects the following real property (Property):

    *Street address*:        <u>427 East 75th Street</u>
    *Unit/suite number*:     _____
    *City, state, zip code*: <u>Los Angeles, California 90003</u>

    Legal description or document recording number (including county of recording):

    Exhibit A

    Legal Description
    LOT(S)23 OF TRACT NO. 6514, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                     Page 1                                     **F 4001-1.RFS.RP.ORDER**

CALIFORNIA, AS PER MAP RECORDED IN BOOK 68, PAGE(S) 100 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 6022 024 022

EXCEPTING THE MOBILE HOME LOCATED THEREON.

The Motion is granted under:

    a.  ☒  11 U.S.C. § 362(d)(1)

    b.  ☒  11 U.S.C. § 362(d)(2)

    c.  ☐  11 U.S.C. § 362(d)(3)

    d.  ☐  11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

        (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

        (2) ☐ Multiple bankruptcy cases affecting the Property.

        (3) ☐ The court ☐ makes ☐ does not make ☐ cannot make a finding that the Debtor was involved in this scheme.

        (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

3. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

    a.  ☒  Terminated as to the Debtor and the Debtor's bankruptcy estate.

    b.  ☐  Modified or conditioned as set forth in Exhibit _____ to this order.

    c.  ☐  Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

4. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

5. ☐ Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

6. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

7. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

8. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

9. ☒ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

10. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 2                          **F 4001-1.RFS.RP.ORDER**

of the Bankruptcy Code.

11. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

12. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

14. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

16. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ Other (*specify*):

###

Date: February 18, 2020

Sandra R. Klein
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT N

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

IN RE:                                                        CASE NO.: 09-14339
                                                                 CHAPTER 11
Damon D. Holiwell
dba Hyheals Place of Care,
   Debtor,

Clara L. Holiwell,
   Joint Debtor.

_____/

### REQUEST FOR SERVICE OF NOTICES

   **PLEASE TAKE NOTICE THAT,** on behalf of U.S. BANK NATIONAL ASSOCIATION, AS

TRUSTEE FOR SPECIALTY UNDERWRITING AND RESIDENTIAL FINANCE TRUST

MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-AB3 ("Secured Creditor"), and

pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, the undersigned requests all notices

given or required to be given and all papers required to be served in this case to creditors, any creditors

committees, and any other parties-in-interest, be sent to and served upon the undersigned counsel and the

following be added to the Court's Master Mailing List:

### RAS CRANE, LLC
### BANKRUPTCY DEPARTMENT
### 10700 ABBOTT'S BRIDGE ROAD, SUITE 170
### DULUTH, GA 30097

         RAS Crane, LLC
         Authorized Agent for Secured Creditor
         10700 Abbott's Bridge Road, Suite 170
         Duluth, GA 30097
         Telephone: 470-321-7112
         Facsimile: 404-393-1425
         By: /s/Theron S. Covey
         Theron S. Covey, Esquire
         Email: tcovey@rasflaw.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 11, 2018, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

JACOB L. EATON
JACOB L. EATON
4550 CALIFORNIA AVE 2ND FL
BAKERSFIELD, CA  93309

DAMON D. HOLIWELL
DBA HYHEALS PLACE OF CARE

9112 VERSAILLES DR
BAKERSFIELD , CA  93311

JACOB L. EATON
JACOB L. EATON
4550 CALIFORNIA AVE 2ND FL
BAKERSFIELD, CA  93309

CLARA L. HOLIWELL
9112 VERSAILLES DR
BAKERSFIELD , CA  93311

U.S. TRUSTEE
2500 TULARE ST #1401
OFFICE OF THE U.S. TRUSTEE
FRESNO, CA  93721

RAS Crane, LLC
Authorized Agent for Secured Creditor
10700 Abbott's Bridge Road, Suite 170
Duluth, GA 30097
Telephone: 470-321-7112
Facsimile: 404-393-1425
By: /s/Theron S. Covey
Theron S. Covey, Esquire
Email: tcovey@rasflaw.com

18-238323 - ThC
HOLIWELL, DAMON & CLARA
Request for Service
Page 2

# EXHIBIT O

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

IN RE:                                                              CASE NO.: 14-06974-CL13
**Homer Martinez Palomino,**                                                 CHAPTER 13
**Debtor.**

**Elena Vizcarra Palomino,**
**Joint Debtor.**

_____/

## NOTICE OF WITHDRAWAL

    **PLEASE TAKE NOTICE THAT**, on behalf of U.S. BANK TRUST, N.A., AS
TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST ("Secured Creditor"), the
undersigned hereby withdraws the following document:

**DE 50, Notice of Postpetition Mortgage Fees, Expenses, and Charges filed 8/15/2019.**

 

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/ Erin Elam
    Erin Elam, Esquire
    Email: eelam@rascrane.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 21, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

Larissa L. Lazarus
Law Offices of Mark L. Miller
2341 Jefferson Street, Suite 100
San Diego, CA 92110

Homer Martinez Palomino
1242 Ordview Court
Chula Vista, CA 91911

Elena Vizcarra Palomino
1242 Ordview Court
Chula Vista, CA 91911

David L. Skelton
525 B St., Suite 1430
San Diego, CA 92101-4507

United States Trustee
Office of the U.S. Trustee
880 Front Street
Suite 3230
San Diego, CA 92101

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/ Erin Elam
      Erin Elam, Esquire
      Bar Number 534983
      Email: eelam@rascrane.com

# EXHIBIT P

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

IN RE:

**CASE NO.: 18-20785**
**CHAPTER 13**

Arthur William Lund,

Debtor.

_____/

### REQUEST FOR SERVICE OF NOTICES

**PLEASE   TAKE   NOTICE   THAT,** on  behalf  of  REVERSE   MORTGAGE

SOLUTIONS, INC.  ("Secured Creditor"), and pursuant to Rule 2002 of the Federal Rules of

Bankruptcy Procedure, the undersigned requests all notices given or required to be given and all

papers required to be served in this case to creditors, any creditors committees, and any other

parties-in-interest, be sent to and served upon the undersigned counsel and the following be

added to the Court's Master Mailing List:

### ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
### BANKRUPTCY DEPARTMENT
### 6409 CONGRESS AVE., SUITE 100
### BOCA RATON, FL 33487

Robertson, Anschutz & Schneid, P.L.
Authorized Agent for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/Can Guner
Can Guner, Esquire
Email: cguner@rasflaw.com

18-139997 - CaG
LUND, ARTHUR
Request for Service
Page 1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 21, 2018, I electronically filed the

foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has

been served via CM/ECF or United States Mail to the following parties:

CHARLES L. HASTINGS
4568 FEATHER RIVER DR #A
STOCKTON, CA  95219

ARTHUR WILLIAM LUND
2502 CANYON CREEK
STOCKTON, CA  95207

RUSSELL D. GREER
PO BOX 3051
MODESTO, CA  95353-3051

U.S. TRUSTEE
501 I STREET, ROOM 7-500
SACRAMENTO, CA  95814

Robertson, Anschutz & Schneid, P.L.
Authorized Agent for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/Can Guner
Can Guner, Esquire
Email: cguner@rasflaw.com

# EXHIBIT Q

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

IN RE:                                                    CASE NO.: 2:16-BK-21633-WB
                                                                         CHAPTER 11

Alverna Stanley,

   Debtor.

_____/

<u>**NOTICE OF WITHDRAWAL**</u>

     **PLEASE TAKE NOTICE THAT**, on behalf of WILMINGTON SAVINGS FUND
SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE
FOR HILLDALE TRUST ("Secured Creditor"), the undersigned hereby withdraws the following
document:

**Proof of Claim, filed on March 30, 2018, as Claim 7-1 on the Claims Register.**

                         ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
                         Attorney for Secured Creditor
                         6409 Congress Ave., Suite 100
                         Boca Raton, FL 33487
                         Telephone: 561-241-6901
                         Facsimile: 561-241-1969

                         By: /s/Madison Wilson
                         Madison Wilson
                         Email: mwilson@rasflaw.com

Case 3:20-cv-04370-JSC Document 1 Filed 06/30/20 Page 150 of 196

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 1, 2018, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

Phillip Myer
Phillip Myer, APC
PO Box 488
Rancho Cucamonga, CA 91729

Alverna Stanley
292 Granada Ave
Long Beach, CA 90803

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/Madison Wilson
Madison Wilson
Email: mwilson@rasflaw.com

# EXHIBIT R

1  | Sean Ferry (SBN 310347)
   | sferry@rasflaw.com
2  | **ROBERTSON, ANSCHUTZ & SCHNEID**
   | 7676 Hazard Center Drive, Suite 500
3  | San Diego, CA 92108
   | Telephone: (561) 241-6901 Ext. 2036
4  |
5  | Attorneys for Creditor
   | U.S. Bank National Association, As Trustee For C-
   | Bass Mortgage Loan Asset-Backed Certificates,
6  | Series 2007-CB4
7  |
8  | **UNITED STATES BANKRUPTCY COURT**
9  | **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

|  | Case No. 19-42210 |
|---|---|
| In re | Chapter 13 |
| Julie Carmen Torres, | **OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN OF REORGANIZATION** |
| Debtors. | |
|  | **SUBJECT PROPERTY:** |
|  | 1120 Parkridge Drive, |
|  | El Sobrante, CA 94803 |
|  | **CONFIRMATION HEARING:** |
|  | DATE:      Not Set |
|  | TIME:      Not Set |
|  | PLACE:    Not Set |
|  | CTRM:     Not Set |
|  | JUDGE:    Roger L. Efremsky |

        U.S. Bank National Association, As Trustee For C-BASS Mortgage Loan Asset-Backed

Certificates, Series 2007-CB4 (collectively the "Creditor"), secured creditor of the above-entitled

debtor, Julie Carmen Torres, ("Debtor"), hereby objects to confirmation of the Chapter 13 Plan

filed by the Debtor in the above-referenced matter. The basis of the objection is stated below: [1]

---

[1] This objection shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Robertson, Anschutz, & Schneid's participation in this proceeding. Moreover, the within party does not authorize Robertson, Anschutz, & Schneid, either expressly or impliedly through Robertson, Anschutz, & Schneid's participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

# I.    STATEMENT OF FACTS[2]

On or about July 19, 2004, Debtor executed a promissory note in the original principal sum of $520,600.00 (the "Note") which was made payable to New Century Mortgage Corporation. ("Lender"). The Note was and remains secured by a recorded deed of trust (the "Deed of Trust") encumbering the real property located at 1205 South Grandee, Compton, CA 90221 (the "Subject Property"). Subsequently, Lender's beneficial interest under the Deed of Trust was transferred to Creditor.

On September 30, 2019, Debtor filed the instant Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California – Oakland Division, and was assigned case number 19-42210.

On September 30, 2019, Debtor filed his/her Chapter 13 Plan ("Plan") which provides for Creditor's claim in Section 3. The Plan includes payments towards Creditor's claim; however, the figures used by the Debtor are inaccurate. It is anticipated that Creditor's claim will show the pre-petition arrearage due to Creditor in the amount of $16,726.96 whereas the Plan proposes to pay only $14,048.46.

# II.    ARGUMENT

## A.    DEBTOR'S CHAPTER 13 PLAN CANNOT BE CONFIRMED BECAUSE IT DOES NOT PROMPTLY CURE CREDITOR'S PRE-PETITION ARREARS AS REQUIRED BY 11 U.S.C. §1322(b)(5)

Section 1325(a)(1) requires that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). Section 1322(b)(5) requires that all chapter 13 plans must provide for the "curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Further, section 1322(b)(2) prohibits debtors from modifying the rights of secured creditor whose security interest is secured solely by the debtor's principal residence.

---

[2] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of Federal Rules of Bankruptcy Procedure, Creditor requests that the Court take judicial notice of the sworn bankruptcy schedules and other relevant documents filed in the instant case.

**OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGNAIZATION**

1    In the present case, the major deficiency with Debtor's Plan is that it incorrectly asserts the

2    outstanding arrearage balance of Creditor's pre-petition claim. Specifically, Debtor's Plan states

3    that Creditor's pre-petition arrears are only $14,048.46; however, Creditor anticipates[3] that its

4    claim will reflect pre-petition arrears in the amount of $16,726.96. Accordingly, Debtor's Plan

5    fails to meet the requirements of section 1325(a)(1) because it does not provide to promptly cure

6    the **<u>entire</u>** outstanding balance of Creditor's arrearage claim as required by section 1322(b)(5).

7    Based upon the foregoing, the Court should deny confirmation of the Debtor's Plan.   In the

8    alternative, the Court should confirm the Plan with a provision stating the Debtor must cure

9    Creditor's entire pre-petition arrears, estimated in the amount of $16,726.96, in equal monthly

10   payments over a period of time not to exceed (60) months.

11    The Plan does not appear feasible due to inadequate treatment of Secured Creditor's claim.

12   Thus, the plan violates the provisions of 11 U.S.C. § 1325(a)(3) and cannot be confirmed.

13    **WHEREFORE**, Creditor respectfully requests:

14    1.    That the Court deny confirmation of the Debtor's Plan;

15    2.    For such other and further relief as this court deems just and proper

16

17    Respectfully submitted,

18    **ROBERTSON, ANSCHUTZ & SCHNEID, P.L**.

19

20   Dated: September 21, 2019    /s/ *Sean Ferry* (SBN 310347)
     SEAN FERRY

21   Attorneys for U.S. Bank National Association, As
     Trustee For C-Bass Mortgage Loan Asset-Backed

22   Certificates, Series 2007-CB4

23

24

25

26

27

---

[3] The deadline for filing a proof of claim is December 9, 2019.

1   Sean Ferry (SBN 310347)
    sferry@rasflaw.com
2   **ROBERTSON, ANSCHUTZ & SCHNEID**
    7676 Hazard Center Drive, Suite 500
3   San Diego, CA 92108
    Telephone: (561) 241-6901 Ext. 2036
4

5   Attorneys for Creditor
    U.S. Bank National Association, As Trustee For C-
6   Bass Mortgage Loan Asset-Backed Certificates,
    Series 2007-CB4

7

8                    **UNITED STATES BANKRUPTCY COURT**

9         **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

10                                        |   Case No. 19-42210
        In re                            |
11                                        |   Chapter 13
        Julie Carmen Torres,              |
12                                        |   **CERTIFICATE OF SERVICE**
                 Debtors.                 |
13

14

15

16

17

18

19

20          I, Sean C. Ferry, hereby declare as follows:

21          I am an active member of the State Bar of California and I am not a party to the above-

22   captioned case; my business address is 7676 Hazard Center Drive, Suite 500, San Diego, CA 92108.

23          On October 21, 2019, I caused copies of the following document(s) to be served:

24          1.   **Objection to Confirmation of Chapter 13 Plan**

25   in the following manner on the parties listed below:

26     •  **BY FIRST CLASS MAIL**: Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), I
          enclosed said document(s) in a sealed envelope addressed to the persons at the
27        address(es) listed below, placed first class postage fully prepaid thereon, and deposited
          said envelope in a United States mailbox.
28

-1-

1

**DEBTOR**
Julie Carmen Torres
1120 Parkridge Drive
El Sobrante, CA 94803

2

3

4

**DEBTOR'S COUNSEL**
Brent D. Meyer
Meyer Law Group, LLP
268 Bush St. #3639
San Francisco, CA 94104

5

6

7

- **BY ELECTROIC SERVICE (ECF):**

8

**TRUSTEE**
Martha G. Bronitsky

9

10

**US TRUSTEE**
Office of the U.S. Trustee/Oak

11

12     I declare under penalty of perjury under the laws of the United States of America that the
forgoing is true and correct.

13

14     Executed on this 21st day of October, 2019.

15

/s/ Sean C. Ferry
Sean C. Ferry

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# EXHIBIT S

1   Sean C. Ferry (SBN 310347)
    sferry@rasflaw.com
2   Robertson, Anschutz, Schneid & Crane LLC
    7676 Hazard Center Drive, Suite 500
3   San Diego, CA 92108
    Telephone: (561) 241-6901 ext. 2036

4   Attorney for SELENE FINANCE LP

5

6                    **UNITED STATES BANKRUPTCY COURT**

7            **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

8   **IN RE:**                              **CASE NO.: 18-42204**
                                            **CHAPTER 13**
9   **Anna C Alonzo,**                      **D.C. No. RAS - 1**
    **aka Anna Cecilia Alonzo,**
10                                          **MOTION FOR RELIEF FROM**
                                            **AUTOMATIC STAY**
        **Debtor,**
11
                                            **Hearing Date: March 13, 2020**
12  _____/               **Hearing Time: 10:00A.M**
                                            **Hearing Location: 1300 Clay Street,**
13                                          **Suite 300, Oakland, CA 94612, CTRM**
                                            **215**
14

15                  **I.      INTRODUCTION**

16       Secured Creditor, SELENE FINANCE LP  (hereinafter referred to as "Movant"), by and

17  through the undersigned counsel, hereby moves this Court for relief from the automatic stay

18  pursuant to 11 U.S.C. § 362(d)(1) for cause on the grounds that Debtor has defaulted on the

19  obligations secured by the subject property and Movant's interest in the property is not adequately

    protected.

20

21                  **II.     JURISDICTION**

22       The motion is brought pursuant to Local Bankruptcy Rule 4001-1, 9013-1, and 9014-1 of

23                                       - 1 -            CASE NO. 18-42204
                 **MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

the Local Rules of Practice for the United States Bankruptcy Court, Northern District of California and is supported by the concurrently filed notice and declaration, as well as all other papers and pleadings on file in the Debtor's bankruptcy case, and such other evidence as may be filed prior to, or presented at, the hearing(s) in this matter.

The Bankruptcy Court has jurisdiction over this proceeding pursuant to 11 U.S.C. § 362. 28 U.S.C. §157 and §1334, and it is a core proceeding within the definition of 28 U.S.C. §157(b).

## III.   RELIEF REQUESTED

MOVANT requests the Court enter an Order:

      a. Granting relief from the automatic stay to allow MOVANT to exercise all available rights and remedies with respect to the real property collateral under the Promissory Note and Deed of Trust (and related documents) and applicable non-bankruptcy law;

      b. Establishing that the Order hereon be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code;

      c. Granting Movant, the authority to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding

      d. Waiving the 14-day stay set forth in Bankruptcy Rule 4001(a)(3); and

      e. For such other and further relief as is just and appropriate in the circumstances of this case.

## IV.   FACTUAL BACKGROUND

The factual allegations herein are supported by the concurrently filed declaration.

On September 8, 2006, Debtor and Co-signer Jose A. Alonzo executed and delivered

- 2 -   CASE NO. 18-42204

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

a Promissory Note ("Note") securing payment of the Note in the amount of $380,000.00 to Loancity, A California Corporation. The Deed of Trust was recorded on September 14, 2006, in Document# 2006-0289989-00, in the Public Records of Contra Costa, County, California. The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A." The documents include copies of the Note with any required indorsements, Recorded Deed of Trust, Assignment(s) of Deed of Trust, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

The Mortgage provides Secured Creditor a lien on the real property located in 2329 20th Street, San Pablo, California 94806, Contra Costa County, California, and legally described in Exhibits. This property is located at the street address of:

power of sale, the following described property located in the COUNTY of CONTRA COSTA:
LOT 26 AND THE NORTH 12.50 FEET OF LOT 27, RIGHT ANGLE MEASUREMENTS, IN BLOCK 35, OF ANDRADE-ROSE TRACT NO. 2, AS FILED IN VOLUME 19 OF MAPS, PAGE 234, CONTRA COSTA COUNTY RECORDS.
which currently has the address of 2329 20TH STREET SAN PABLO, California 94806 ("Property Address"):

The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since July 1, 2019. See Secured Creditor's Declaration in Support of Motion for Relief from the Automatic Stay, filed concurrently with this motion.; The terms and conditions of the Note and Deed of Trust are in default due to failure to perform an obligation under the Mortgage by not making their monthly payments amounting to $14,662.48.

As of **January 13, 2020**, Secured Creditor is due the following amount:

| | |
|---|---|
| Principal | $384,439.38 |
| Deferred Principal | $26,882.49 |
| Delinquent Interest | $17,593.92 |
| Escrow/Impounded Required | $16,044.49 |
| Fees Currently Assessed | $1,680.40 |
| Less Unapplied funds | $2009.61 |
| Payoff Funds Required | **$444,631.07** |

- 3 -                                          CASE NO. 18-42204
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

| | |
|---|---|
| Total post- petition arrears (Due from 07/01/19 – 1/01/20@$2,291.83) less – suspense ($1,609.73) + admin fee (229.40) | **$14,662.48** |

,

According to Broker's Price Opinion, the value of the property is $550,000.00. See Exhibit **"B"** which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

Debtor(s), Anna C Alonzo aka Anna Cecilia Alonzo, filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code on September 21, 2018. LEGAL ARGUMENT

### A. "CAUSE" EXISTS JUSTIFYING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C § 362(d)(1)

"Cause" justifying relief from stay includes (but is not limited to) "lack of adequate protection of an interest in property" of the party requesting relief. 11 U.S.C. 362(d)(1). Whether there is adequate protection is a question of fact. *Matter of Plaza Family Partnership*, 95 B.R. 166, 171 (Bkrtcy. E.D.Cal. 1989); *In re O'Connor*, 808 F.2d 1393, 1395 (10th Cir. 1987). The debtor has the burden of proving that the secured creditor's interest in property (i.e., the collateral) is adequately protected. 11 U.S.C. § 362(g)(2); *In re Gauvin*, 24 B.R. 578, 580 (B.A.P. 9th Cir. 1982); *Matter of La Jolla Mortg. Fund v. Rancho Cajon Assocs.*, 18 B.R. 283, 288 (Bkrtcy. S.D. Cal. 1982); *Matter of Boomgarden*, 780 F2d 657, 663 (7th Cir. 1985). This includes proving "equity."

Adequate protection by way of an equity cushion is generally determined by subtracting the value of liens encumbering the property from the fair market value of the property and comparing the equity to the amount owed to the Movant. Thus, an essential component of the

debtor's burden of proof in connection with an adequate protection claim is proving that there is

equity in the property. *Matter of La Jolla Mortg*. Fund, supra, 18 B.R. at 288 [burden on debtor

to prove all elements of adequate protection, including equity].

"Cause" is not specifically defined in the Bankruptcy Code. What constitutes "cause" for

granting relief from the automatic stay is decided on a case-by-case basis. *Konremyer v.*

*American Contractors Indemnity Co.*, 405 B.R. 915, 921 (9th Cir. BAP 2009). "Cause" includes

a debtor's failure to make post-petition mortgage payments. *In re Ellis*, 60 B.R. 432 (B.A.P. 9th

Cir. 1982).

Movant also lacks adequate protection as a result of Debtors failure to make payments on their

loan with Movant since July of 2019. Movant is under-secured and no payments have been in

eleven months. Movant hasn't received any assurances from Debtors indicating that Debtors

intend to cure prior missed payments or that Debtors will make any payments going forward.

Accordingly, relief from stay should be granted so that Movant may exercise its rights under

state law.

For all of these reasons, cause exists for the Court to grant relief from stay.

**B.**   **The Recovery of Reasonable Attorneys' Fees Incurred throughout**
**the Bankruptcy is Appropriate in Accordance with Loan Documents**

According to the Loan Documents executed by and between Movant and Debtor, Movant

is entitled to its costs and expenses in enforcing its interest to the extent not prohibited by

applicable law. Specifically, Page 2 Section 6(E) of the Notice which can be found in Exhibit A

states, "If the Note Holder has required me to pay immediately in full as described above, the

Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing

this Note to the extent not prohibited by applicable law. Those expenses include, for example,

reasonable attorneys' fees."

Movant is seeking $1,081 in attorney's fees as a result of the fees incurred in the filing of this motion. Part of those fees include a $181 filing fee while the remaining balance can be attributed to the amount incurred by Movant's attorneys in drafting this Motion.

As such, reasonable attorneys' fees are recoverable in accordance with the applicable loan documents.

### C.     The 14-day Stay of Bankruptcy Rule 4001(a)(3) Should be Waived

As indicated above, cause exists to grant relief from the automatic stay in order to preserve and protect the Property. If relief from the automatic stay is granted, the Court should waive the 14-day stay of Bankruptcy Rule 4001(a)(3) to allow MOVANT to avoid any further delay in exercising MOVANT'S rights and remedies under the Loan documents and applicable non-bankruptcy law. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

### CONCLUSION

**WHEREFORE**, based upon all of the above, Movant respectfully requests that this Court enter an order as follows:

a.     Granting relief from the automatic stay to allow MOVANT to exercise all available rights and remedies with respect to the real property collateral under the Promissory Note and Deed of Trust (and related documents) and applicable non-bankruptcy law;

b.     Establishing that the Order hereon be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code;

c.     Granting Movant the authority to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding

d.     Waiving the 14-day stay set forth in Bankruptcy Rule 4001(a)(3); and

e.     For such other and further relief as is just and appropriate in the circumstances of this case.

Date: February 12, 2020

By: /s/ Sean C. Ferry
SEAN C. FERRY

- 7 -                                    CASE NO. 18-42204
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

# EXHIBIT T

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

IN RE:                                          CASE NO.: 2:14-bk-29768-SK
                                                                CHAPTER 13
Royce Lamar Cobb and Nichole
Chaneece Pratt Cobb,

    Debtors.

_____/

## NOTICE OF APPEARANCE AND REQUEST FOR SERVICE

    **PLEASE TAKE NOTICE THAT** the undersigned counsel hereby appears on behalf of WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST ("Secured Creditor"). Pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, the undersigned requests all notices given or required to be given and all papers required to be served in this case to creditors, any creditors committees, and any other parties-in-interest, be sent to and served upon the undersigned counsel and the following be added to the Court's Master Mailing List:

### RAS CRANE, LLC
### 10700 ABBOTT'S BRIDGE ROAD, SUITE 170
### DULUTH, GA 30097

                    RAS Crane, LLC
                    Attorney for Secured Creditor
                    10700 Abbott's Bridge Road
                    Suite 170
                    Duluth, GA 30097
                    Telephone: 470-321-7112

                    By: /s/Sean Ferry
                        Sean Ferry, Esquire
                        Email: sferry@rasflaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 20, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

KIM LAW GROUP PC
3711 LONG BEACH BLVD. STE 710
LONG BEACH, CA 90807

KATHY A DOCKERY (TR)
801 FIGUEROA STREET, SUITE 1850
LOS ANGELES, CA 90017

U.S. TRUSTEE
915 WILSHIRE BLVD, SUITE 1850
LOS ANGELES, CA 90017

ROYCE LAMAR COBB
NICHOLE CHANEECE PRATT COBB
946 WEST 48TH STREET
LOS ANGELES, CA 90037

RAS Crane, LLC
Attorney for Secured Creditor
10700 Abbott's Bridge Road
Suite 170
Duluth, GA 30097
Telephone: 470-321-7112

By: /s/Sean Ferry
Sean Ferry, Esquire
Email: sferry@rasflaw.com

# EXHIBIT U

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

IN RE:                                                    CASE NO.: 8:18-bk-14425-SC
                                                          CHAPTER 11

**Wallace Raymond Steffen, Jr,**

   Debtor.

_____/

<u>**REQUEST FOR SERVICE OF NOTICES**</u>

  **PLEASE TAKE NOTICE THAT,** on behalf of USAA FEDERAL SAVINGS BANK

("Secured Creditor"), and pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure,

the undersigned requests all notices given or required to be given and all papers required to be

served in this case to creditors, any creditors committees, and any other parties-in-interest, be

sent to and served upon the undersigned counsel and the following be added to the Court's

Master Mailing List:

**RAS CRANE, LLC**
**BANKRUPTCY DEPARTMENT**
**10700 ABBOTT'S BRIDGE ROAD, SUITE 170**
**DULUTH, GA 30097**

        RAS Crane, LLC
        Authorized Agent for Secured Creditor
        10700 Abbott's Bridge Road, Suite 170
        Duluth, GA 30097
        Telephone: 470-321-7112
        Facsimile: 404-393-1425
        By: /s/Theron S. Covey
        Theron S. Covey, Esquire
        Email: tcovey@rasflaw.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on April 15, 2019, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, and a true and correct copy has been served

via CM/ECF or United States Mail to the following parties:

LAKE FOREST BANKRUPTCY
PO BOX 515381 #97627
LOS ANGELES, CA 90051-6681

WALLACE RAYMOND STEFFEN, JR
24742 VIA CARLOS
LAGUNA NIGUEL, CA 92677-7600

> RAS Crane, LLC
> Authorized Agent for Secured Creditor
> 10700 Abbott's Bridge Road, Suite 170
> Duluth, GA 30097
> Telephone: 470-321-7112
> Facsimile: 404-393-1425
> By: /s/Theron S. Covey
> Theron S. Covey, Esquire
> Email: tcovey@rasflaw.com

# EXHIBIT V

# ADJUSTABLE RATE NOTE

**(LIBOR Six Month Index (as Published in *The Wall Street Journal*) - Rate Caps)**
2 YEAR RATE LOCK, 5 YEAR INTEREST ONLY PERIOD

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.**

| June 24, 2006 | EL Sobrante | California |
|---|---|---|
| (Date) | (City) | (State) |

**1120 Parkridge Drive, EL Sobrante, CA  94803**

(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 520,600.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **New Century Mortgage Corporation**.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **6.975%**. The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest by making a payment every month. Beginning on the Amortization Start Date, I will pay principal each month in addition to interest.

I will make my monthly payment on the first day of each month beginning on **August 1, 2006** .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **07/01/2036** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612** or at a different place if required by the Note Holder.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)

Page 1 of 5

**(B) Amount of My Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$3,025.99** . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Withholding**

If I am a non-resident alien, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature. If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of **July, 2008** and on the same day of every 6th month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date."

**(B) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Five And Ninety-five Hundredth(s)** percentage points (**5.950%**) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

> **(i) Interest-Only Period.** The "Interest-Only Period" is the period from the date of this Note through **July 1, 2011**, called the "Amortization Start Date." During the Interest-Only Period, my monthly payments will only pay the interest I owe. During the Interest-Only Period, the Note Holder will calculate the amount of my monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the then applicable interest rate. The result of this calculation will be the amount of my monthly payment until changed.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)

**(ii) Amortization Period.** Beginning on the Amortization Date my monthly payments will include principal. Starting on the Amortization Start Date and continuing until the Maturity Date, on each Interest Rate Change Date the Note Holder will calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date at the new interest rate, assuming, for purposes of each calculation, that the interest rate did not change again. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

### (D) Limit on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **8.975** % or less than **6.975** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **13.975** % or less than **6.975%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)

Page 3 of 5

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** or $5.00, whichever is greater of my overdue monthly payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

*If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.*

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amount owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor, and further waive all relief under any valuation and appraisement laws. "Presentment" means the right to

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)

Page 4 of 5

require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. GOVERNING LAW - SECURED NOTE

This Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note.  *That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:*

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CAUTION**

**IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE YOU SIGN IT.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

| | |
|---|---|
| **JULIE TORRES**                - Borrower | - Borrower |
| - Borrower | - Borrower |
| - Borrower | - Borrower |
| - Borrower | - Borrower |

(Sign Original Only)

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)                    Page 5 of 5

# EXHIBIT W

Recording Requested By:
**New Century Mortgage
Corporation**
Return To:
**New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612**

Prepared By:
**New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612**

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2006-0215523-00**

Check Number
**Friday, JUL 07, 2006 13:49:00**
MIC    $1.00 MOD    $23.00 REC    $27.00
TCF    $22.00 DAF    $1.80 REF    $0.20
**Ttl Pd    $75.00**    Nbr-0003314340
ENG/R4/1-23

Financial Title

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **June 24, 2006**
together with all Riders to this document.
**(B) "Borrower"** is **JULIE TORRES,An Unmarried Woman**

Borrower's address is **1120 Parkridge Dr , El Sobrante, CA 94803**
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **New Century Mortgage Corporation**

Lender is a **Corporation**
organized and existing under the laws of **California**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3005  1/ 01

VMP -6(CA) (0207)
Page 1 of 15    Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA 92612**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **Financial Title Co.**

**(E) "Note"** means the promissory note signed by Borrower and dated **June 24, 2006**
The Note states that Borrower owes Lender **FIVE HUNDRED TWENTY THOUSAND SIX HUNDRED
AND 00/100**                                                                          Dollars
(U.S. $**520,600.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **07/01/2036**.
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [x] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | **Prepayment Rider** |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP®-6(CA) (0207)                                Page 2 of 15                       Initials: _____             Form 3005  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | Contra Costa | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: **426-341-005-4**                              which currently has the address of
**1120 Parkridge Drive**                                                        [Street]
**EL Sobrante**                    [City], California **94803**        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

*VMP*®-6(CA) (0207)                              Page 3 of 15                          Initials: _____                      Form 3005   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6(CA) (0207)                    Page 5 of 15                    Initials: _____                    **Form 3005**   **1/01**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 -6(CA) (0207)                    Page 6 of 15                 Initials:                     **Form 3005   1/01**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   **8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(CA) (0207)                                   Page 8 of 15                   Initials: _____           Form 3005   1/01

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6(CA) (0207)    Page 9 of 15    Initials: _____    Form 3005   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(CA) (0207)                   Page 10 of 15                   Initials: _____                   Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6(CA) (0207)                    Page 11 of 15         Initials:         Form 3005   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0207)                    Page 12 of 15                    Initials: _____                    Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VMP® -6(CA) (0207)                          Page 13 of 15                          Initials: ___                          Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            JULIE TORRES                      -Borrower


_____          _____ (Seal)
                                                                              -Borrower


_____ (Seal)    _____ (Seal)
                     -Borrower                                   -Borrower


_____ (Seal)    _____ (Seal)
                     -Borrower                                   -Borrower


_____ (Seal)    _____ (Seal)
                     -Borrower                                   -Borrower


VMP® -6(CA) (0207)                Page 14 of 15                Form 3005   1/01

State of ~~California~~ Nevada
County of Clark                                                    } ss.

On   June 24, 2006   before me,  Gingerlei A. Puni  **NOTARY PUBLIC**
                                                              personally appeared

Julie Carmen Torres

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed
to the within instrument and acknowledged to me that ~~he~~/she/they executed the same in ~~his~~/her/~~their~~
authorized capacity(ies), and that by ~~his~~/her/~~their~~ signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

GINGERLEI A. PUNI
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 02-28-2009
Certificate No: 05-96379-1

-6(CA) (0207)                    Page 15 of 15          Initials:          Form 3005   1/01

Page No. 2
Order No: █████████████

███████████████

# LEGAL DESCRIPTION

**The land referred to in this Report is described as follows:**

All that certain real property situated in the City of Richmond, County of Contra Costa, State of California, described as follows:

Lot 5, Block 1, as shown on the Map entitled, "Subdivision 3886 ", filed for record May 20, 1970, in Book 130 of Maps, Page 42.

███████████████

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **24th** day of **June, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **New Century Mortgage Corporation**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **1120 Parkridge Drive, EL Sobrante, CA 94803**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as

**Hilltop Green**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER**- Single Family -  **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3150 1 /01
                         Page 1 of 3                    Initials:
**-7R** (04 11)      VMP Mortgage Solutions, Inc. (800)5 21-72 91

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

VMP®-7R (0411)                Page 2 of 3                Form 3150  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
JULIE TORRES                -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                            -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                            -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                            -Borrower                                -Borrower


VMP®-7R (0411)                    Page 3 of 3                    Form 3150  1/01